# Norris McLaughlin &Marcus, P.A.
ATTORNEYS AT LAW


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/21/16

875 Third Avenue
8th Floor
New York, NY 10022
T: 212-808-0700
F: 212-808-0844

*Direct Dial: 917-369-8867*
*Email: jdeutsch@nmmlaw.com*

October 21, 2016

**VIA FACSIMILE: (212-805-6382)**

The Hon. Victor Marrero, U.S.D.J.
United States Courthouse
500 Pearl Street, Suite 1040
New York, NY 10007

Re: <u>C.D.S. Inc. v. Zetler et al., Case Number: 1:16-cv-03199-VM-JLC</u>

Dear Judge Marerro:

We are counsel for CDS, Inc. (plaintiff and counterclaim defendant) and CDS, SARL, Jerome Marechaux, Christelle Riot, Christophe Racle, Jerome Viollon, and Diane Treat (with Inc., "counterclaim defendants"). We write in response to the Zetler Defendants' letter of yesterday requesting that the Court enter a temporary restraining order prohibiting the continued development of a new software product. The Court should reject this application. It is built not on "sheer luck" but rather on a gossamer-thin tissue of incorrect assumptions and unsupported speculation about the facts and also lacks merit as a matter of law.[1] We respond merely to the letter seeking a TRO and not to the full application for other injunctive relief and reserve the right to submit a full response as may be necessary or appropriate.

The Zetler Defendants have the facts wrong and the counterclaim defendants are ready to substantiate every factual point by declaration. The Zetler Defendants have attempted to lump all of the parties together as one undifferentiated entity; this is inappropriate. CDS, Inc., the U.S. corporation who sought and was granted injunctive relief, is *not* developing any new product of any kind nor conducting any development work of any kind outside of JIRA (any development work is only on its product, Agencypad, and is fully transparent to the Zetler Defendants). CDS SARL, a French corporate entity, is developing a new product and has been doing so for well over a year. Neither Ms. Treat (Inc.'s president) nor Mr Gugnishev (Inc.'s software developer) have anything to do with or any involvement of any kind with SARL's new product. CDS SARL's new product is *not* a new version of Agencypad and *no* part of the Agencypad code has been used in connection with this new product. No one from Inc. has shared any part of the Agencypad code with anyone from SARL, SARL has no access to the repository (Bitbucket) where the Agencypad code is stored, and the new product is *not* even written in the same programming language as Agencypad. The new product is *not* set to launch next month. It will require many months

---

[1] The facts will show with respect to the meeting in London that Mr. Roussel in fact did give F4F an Agencypad demonstration but that F4F declined to buy it because it had its own proprietary in-house booking system so it had no interest in Agencypad. Mr. Roussel did tell F4F that CDS SARL was developing a new product but never said it would launch in the next month nor did he demonstrate it for F4F.

Norris McLaughlin & Marcus, P.A.

October 21, 2016
Page 2

of work still. It was *not* commenced post-termination of Mr. Zetler. Rather, it was commenced in Paris in or about June 2015 with the intention that it would be sold first in Europe and then might be made available for sale in other markets. It was commenced because of the resistance that CDS SARL has experienced in the European market to sales of Agencypad and because of the increased competition in Europe from Mediaslide, another company who had a product that was enjoying greater success in the European market. Much like how Rapid Systems had developed new products and later shared them with CDS Global (*i.e.*, Castingpad), that was how the new product came to be created.

CDS, Inc., despite the Zetler Defendants' urgings to the contrary, have neither stopped trying to sell Agencypad (and has done its best to follow up on the sales leads generated by the Zetler Defendants, no matter how illusory) nor stopped payment on Mr. Zetler's commissions. CDS SARL has attempted to compromise his commissions but has never disavowed their payment.

In creating this new product, CDS SARL did not "abuse the Court's equity", despite the urging of Mr. Zetler to the contrary. This new product pre-dates the injunctive relief proceeding by almost exactly a year, no information obtained in connection with the injunction has been used for anything other than fulfilling the mandate under the terms of the Special Master's Report and Recommendations, and the new product is being created by a company who was not even a party to this litigation until sued many months later as a counterclaim defendant. The grant of the injunction by this Court in June 2016 has functioned precisely as drafted: a narrow remedy to provide co-equal access to permit CDS, Inc. to survive as a business while the competing ownership claims to Agencypad are sorted out. It is no secret that the Zetler Defendants do not like this remedy: this is roughly the sixth attack they have launched on this injunction and this new attack slots neatly into their strategy of delay to derail the trial schedule in this matter. It is, however, ironic to hear the Zetler Defendants complain of CDS SARL's lack of maintenance of the *status quo* with respect to the injunction CDS, Inc. obtained given the Zetler Defendants' admission at the hearing on June 3 that they hired a developer for Agencypad and conducted development work, all in flagrant disregard of their obligations to maintain the *status quo* (see Docket #54 at 320-22). The Zetler Defendants complain that they are not being permitted to undertake major development of the Agencypad product and that's correct, they are not permitted to do so since they have not established that they own it. CDS, Inc. owns Agencypad and, until such time as a determination at trial dictates otherwise, it would create a tangled mess that might prove impossible to untangle were the Zetler Defendants permitted to modify and develop Agencypad now. Mr. Zetler's claim that he'd like to undertake major development of Agencypad, without any details at all as to how, is pure pretext since Mr. Zetler undertook no such new development as CDS, Inc.'s President when it would have been his right (and duty) to do so.

**The Application for a TRO will Fail for Lack of Emergency or Irreparable Injury**

The Zetler Defendants seek to have this Court order an emergency halt to the development of this new product but cannot demonstrate, among other deficiencies, the single most important factor: irreparable, non-speculative injury.[2] The Zetler Defendants complain of a breach of fiduciary duty and a

---

[2] Instead of attempting to controvert counterclaim defendants' argument that the Zetler Defendants have and will suffer no irreparable injury (presumably because they cannot), the Zetler Defendants instead argue that the counterclaim defendants are judicially estopped from raising this argument. They are wrong; the counterclaim defendants are not taking an inconsistent argument from the arguments Inc.

Norris McLaughlin & Marcus, P.A.

October 21, 2016
Page 3

usurpation of a business opportunity (we assume that the Zetler Defendants are not planning to split their claims or their *fora* and will not be lodging breach of contract claims under the Distributorship Agreement in Paris -- that would be bad faith – just to attempt to elide the issue of irreparable injury). Any damages (and there are none) suffered will be and are easily measured by money damages. *Biocon Ltd. v. Abraxis Bioscience, Inc.* 2016 WL 5817002 (S.D.N.Y. Sept. 26, 2016). Because of this, there is no reason to order a halt to development work on a product that is not a new Agencypad and will not be ready for testing for many months (likely after the trial on this matter has finished). Further, the harm about which they complain is speculative, devoid of any showing, and cannot support a finding of irreparable harm. *Passlogix, Inc. v. 2FA Tech., LLC* 2010 WL 2505628, *10 (S.D.N.Y. June 21, 2010). Finally, no emergency has been identified as the Zetler Defendants sat on their hands for almost three weeks after their supposed "lucky" discovery.

This motion for a temporary restraining order should be denied. If anything, despite their lack of showing, the Zetler Defendants should be allowed to amend, yet again, their counterclaims, seek discovery, and have the issues decided at trial in this matter.

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by plaintiff. The Court will schedule a telephone conference to review
SO ORDERED. The matter further and determine whether further action may be warranted.

10-21-16
DATE    VICTOR MARRERO, U.S.D.J.

Respectfully submitted,

NORRIS, McLAUGHLIN & MARCUS, P.A.

Jeremy E. Deutsch

CC (via email): Magistrate Judge James L. Cott, Special Master Daniel Garrie, Ihsan Dogramaci, Esq.

---

urged on Inc.'s application. The nature and type of injury alleged here is completely different from that which was presented on Inc.'s application. Inc.'s irreparable injury stemmed from a total lack of access to its product and a complete inability under those circumstances to service its clients. Thus, for Inc., it was a matter of basic survival for the entire business and preventing irreparable harm to Inc.'s reputation in the marketplace where Mr. Zetler, the faithless fiduciary, locked Inc. out of the email server, the website, and the entire program that Inc. itself had developed as a work made for hire and owned. By contrast, the Zetler Defendants merely speculate about the possibility of some lost sales at some unspecified time in the future from some unidentified customers. Indeed the single entity they've identified (F4F), is not even an Agencypad customer. If the Zetler Defendants suffer a loss (derivatively or otherwise) from lost sales, such would be compensable by a quantifiable money damages award. This "harm" that the Zetler Defendants are concerned about has no relationship to the harm that Inc. faced. The arguments are different because the nature and type of injury are different and there is nothing "wholly inconsistent" with any aspect of the position taken by CDS, Inc. and the other counterclaim defendants here. *In re Trace Int'l Holdings, Inc.*, 2009 WL 1810112 *2-3 (S.D.N.Y. June 25, 2009). Further, the Zetler Defendants mischaracterize CDS, Inc.'s arguments in support of the injunction (see Closing Argument at p. 351-52, Docket #54) and incompletely and misleadingly quote from this Court's Decision and Order in order to even make this argument at all. But, even if there were a similarity in argument, the Court still has an obligation to conduct an analysis of all of the traditional four factors, much as it has that obligation even where the parties have a contract that provides for consent to injunctive relief. *A.X.M.S. Corp. v. Friedman*, 948 F.Supp 2d 319, 336-38 (S.D.N.Y. 2013).