10/26/2016 WED 13:20 FAX                                                    ☒002/004

# Norris McLaughlin & Marcus, P.A.
ATTORNEYS AT LAW


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/27/16

875 Third Avenue
8th Floor
New York, NY 10022
T: 212-808-0700
F: 212-808-0844

*Direct Dial: 917-369-8867*
*Email: jedeutsch@nmmlaw.com*

October 26, 2016


RECEIVED
OCT 26 2016
CHAMBERS OF
JUDGE MARRERO

**VIA FACSIMILE: (212-805-6382)**

The Hon. Victor Marrero, U.S.D.J.
United States Courthouse
500 Pearl Street, Suite 1040
New York, NY 10007

Re: <u>C.D.S. Inc. v. Zetler et al. Case Number: 1:16-cv-03199-VM-JLC</u>

Dear Judge Marrero:

    We are counsel for CDS, Inc. (plaintiff and counterclaim defendant) and CDS, SARL, Jerome Marechaux, Christelle Riot, Christophe Racle, Jerome Viollon, and Diane Treat (with Inc., "counterclaim defendants"). We write in response to the Zetler Defendants' letter of October 25 which appears to be simultaneously an impermissible reply letter to our letter of October 21 and a letter requesting permission to serve yet another amended counterclaim (this time purportedly and improbably sounding in fraud on the part of Mr. Marechaux). Despite the Zetler Defendants' urging to the contrary, none "of the facts in this case are cast in an entirely new light" and the Zetler Defendants' arguments to the contrary are fantasy. No one has defrauded either the Court or Mr. Zetler

    Despite the Zetler Defendants' attempts at obfuscation, it is important to remember that this case was commenced on behalf of CDS, Inc. in order to provide CDS, Inc. with access to Agencypad (the program it created and owned) so that it could serve its clients after Mr. Zetler, its former President, walked out the door with all of the CDS, Inc.'s assets. Without the injunction, CDS, Inc. would never have been able to service Agencypad and would have been out of business. CDS, Inc. has been diligently exercising its rights under the injunction in order to stay in business. Agencypad is still being sold by CDS, Inc. and being serviced by CDS, Inc. It is the central asset owned by CDS, Inc. The Zetler Defendants' claims to the contrary are false.

    The claim that Mr. Marechaux has breached his fiduciary duty to CDS, Inc. by CDS SARL's development of the new product is false. Mr. Zetler, during the relevant period commencing in June 2015 until March 2016, was the President and sole officer of CDS, Inc. with full managerial, financial, and operational control over CDS, Inc. to the exclusion of anyone else right up until the time he was fired and sued for his multiple breaches of fiduciary duties. Mr. Marechaux was not the "controlling" shareholder of CDS, Inc. – control was vested in Mr. Zetler. Further, the new product is neither a "product intended to replace Agencypad" nor a product that incorporates any part of any of the Agencypad code; rather, it is a product that was intended to reply to new competition in the European market where Agencypad

Norris McLaughlin & Marcus, P.A.

October 26, 2016
Page 2

penetration had not been as successful. CDS, Inc., putting the hysterical allegations to one side that everyone was somehow undermining CDS, Inc. by developing a new product to compete in Europe, does not sell Agencypad in Europe – that is where CDS SARL does business. No fiduciary duties have been breached by Mr. Marechaux.

The Zetler Defendants offer merely unsupported speculation in arguing that Mr. Racle had access to the Agencypad and Portfoliopad source code because he came to New York and did some unspecified information technology support at which time "he could have easily taken copies ... [of the] source code[s]". He took nothing – this is pure fantasy. Instead, all he did was work on CDS, Inc. local network issues and security, as Mr. Zetler well knows and as Mr. Racle is prepared to swear. Similarly, they argue that that Ms. Treat must have been told about the new product when she went to Paris on a trip for which Mr. Zetler claims he never understood the purpose. Again, there is no support for this speculation and it is not true. Mr. Zetler knew very well that Ms. Treat was going to discuss worldwide sales strategy for Agencypad (and she will swear to this). They offer further speculation about Mr. Marechaux's supposed plotting and intentions in removing Mr. Zetler (ignoring the simplest of explanations that Mr. Zetler was removed because of his serial and ongoing breaches of fiduciary duties) as part of some paranoid scheme to allow CDS SARL to somehow disadvantage CDS, Inc. (in a market where CDS SARL does not compete, presumably, outside of Europe).

There is no fraud claim against Mr. Marechaux here[1]. Certainly, it is not possible to discern from the letter how Mr. Zetler was defrauded, either personally or perhaps even derivatively through CDS, Inc., but that can await the interposition of the proposed new pleading and our motion to dismiss. The only "fact" that the Zetler Defendants now offer is the unsupported assertion that employees stopped using CDS GLOBAL email because that CDS SARL registered a domain name in CDS-OFFICIAL four months prior to terminating Mr. Zetler. The registration was never hidden – it is in the public domain and yet no questions were posed by Mr. Zetler's counsel of Mr. Marechaux about that at deposition, likely because the employees did continue to use CDSGLOBAL up until the time that Mr. Zetler took that email access away. All that said, even while we do not believe that there is a fraud claim that can be articulated, if the Zetler Defendants wish to amend their counterclaims, yet again, we do not object (although had the Zetler Defendants consulted with us in advance of sending their pre-motion letter, we likely would have consented much as we said we would do in our letter of October 21). All of their claims can be presented and determined at trial, although we reserve the right to move to dismiss the new amended pleading.

There has been no "fraud on the court" and there are no grounds upon which to modify the preliminary injunction which has permitted CDS, Inc. to operate in the face of a well-founded fear that its predatory former fiduciary would kill it to his own advantage (the same former fiduciary who now claims to be qualified to bring derivative claims on its behalf). The Zetler Defendants have argued that the existence of the new product being developed by CDS SARL (a non-party to the injunctive relief

---

[1] Certainly, from a futility standpoint, this motion for leave to serve an amended counterclaim alleging fraud could be denied. Mr. Zetler fails to make allegations that describe scienter on the part of Mr. Marechaux, reliance on the part of Mr. Zetler, damages to Mr. Zetler, or even representations of fact or misrepresentations of fact by Mr. Marechaux to Mr. Zetler upon which Mr. Zetler reasonably relied. Moreover, that the Zetler Defendants assert that there has been a breach of contract premised upon the very same facts that they offer as some breathless proof of fraud is yet another illustration of the fatal weakness of this claim. Simply using the word "fraud" does not satisfy the pleading obligations under Rule 8 or Rule 9. *United States of America ex rel Schurf v. Camelot Counseling*, 2016 WL 5416494 (S.D.N.Y. Sept. 28, 2016).

Norris McLaughlin & Marcus, P.A.

October 26, 2016
Page 3

proceeding) – a product that is months away from being rolled out – is somehow a game-changer and then the Zetler Defendants offer two examples of how the Court has been defrauded. First, they argue that the mere existence of the new product is "probative" evidence that CDS, Inc. does not own Agencypad. That's absurd: the development of the new product by CDS SARL does not illuminate the question of whether CDS, Inc. owns Agencypad. Plaintiff CDS, Inc. does not claim ownership rights in the new product and nor does the developer of the new product, counterclaim defendant CDS SARL, claim ownership over Agencypad. The two concepts have no connection and, other than the bald assertion that they do and their repeated lumping all of the counterclaim defendants into one undifferentiated group, the Zetler Defendants cannot articulate a logical connection. The second point raised is that Rapid Systems is somehow harmed by being constrained while CDS SARL (again, a non-party to the injunction and not a plaintiff in this action) "races" ahead in developing a product in France for sale in Europe such that the analysis of the harms and balance of the hardships changes. This is a flat misrepresentation of the injunction granted to CDS, Inc. and the analysis performed by the Court. The injunction was never sought to permit non-party CDS SARL to continue to develop a product that it had already commenced a year earlier. Rather, it was sought to allow CDS, Inc. to survive in business. Indeed, there was no need for CDS SARL to benefit from the CDS, Inc. injunction since no access to Agencypad was needed for the new product – the two programs share no code whatsoever. The Zetler Defendants imply that our letter of October 21, 2016, by neglecting to mention the Portfolio database, is somehow a concession that the purpose of the injunction was to create improper access to the database for the new product. Allow us to be unequivocally clear: no access to the Portfolio database has taken place in connection with the new product and nor is any access required. Database access for the new product had nothing to do with the injunction – that access was sought solely for the preservation of CDS, Inc. and its continued existence. The Zetler Defendants have not been harmed (much less alleged damages) and the balance of the hardships still tips in plaintiff's favor.

Mr. Zetler's application (and improper letter in reply) consists of supposition built upon speculation wherein the "harm" complained of changes by the hour and apparently as a result of whatever new advantage Mr. Zetler thinks he can seize in the litigation to derail and delay this case. His motivation is thus completely tactical and utterly insincere. For example, he previously asserted that CDS SARL (and thus Mr. Racle) had access to the Agencypad code because of the injunction (Zetler Brief at p. 1) but now has apparently abandoned that claim. Instead, he now asserts that Mr. Racle, having access to customer service complaints, has caused harm in some undefined and unspecified manner to the Zetler Defendants. We await his amended pleading. Respectfully, the application should be denied in all respects other than the prompt service of yet another amended counterclaim.

Respectfully submitted,

NORRIS, McLAUGHLIN & MARCUS, P.A.

By: _____

Jeremy E. Deutsch

CC (via email): Magistrate Judge James L. Cott, Special Master Daniel Garrie, Ihsan Dogramaci, Esq.

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by plaintiff.

SO ORDERED.

10-27-16
DATE                VICTOR MARRERO, U.S.D.J.