**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| C.D.S. Inc.,<br><br>*plaintiff*,<br><br>- against -<br><br>Bradley Zetler; CDS, LLC; Rapid Systems CC; *and* John Does 1-5,<br><br>*defendants*,<br><br>- and -<br><br>Amazon Web Services, Inc.; *and* Rackspace US, Inc.,<br><br>*nominal defendants.* | 16 Civ. 3199 (VM) (JLC)<br><br>ECF CASE<br><br><br>**DEEFENDANTS'**<br>**SECOND AMENDED**<br>**ANSWER,**<br>**COUNTERCLAIMS AND**<br>**JURY DEMAND** |
| Rapid Systems CC; CDS LLC; *and* Bradley Zetler,<br><br>*counterclaim plaintiffs*,<br><br>- against -<br><br>C.D.S. Inc.; Diane Treat; Jerome Viollon; Christelle Riot; Christophe Racle; Jerome Marechaux; *and* CDS SARL,<br><br>*counterclaim defendants.* | |

<u>**DEFENDANTS' SECOND AMENDED ANSWER**</u>

Defendants Rapid Systems CC, CDS LLC, and Bradley Zetler, upon personal knowledge and upon information and belief, answer plaintiff's Complaint as follows:

1.      Defendants deny the allegations in paragraph 1.

2.      Defendants deny the allegations in paragraph 2.

3.      Defendants deny the allegations in paragraph 3.

4.      Paragraph 4 purports to describe the Complaint and no response thereto is required.

5.    Defendants deny the allegations in paragraph 5 except admit that plaintiff is a corporation formed in or about November 14, 1994 pursuant to the laws of Delaware, that plaintiff's principal place of business is in the City, County and State of New York, that plaintiff, as a distributor, sells software applications to modeling agencies primarily, and that Jerome Marechaux holds a 55% equity stake in plaintiff.

6.    Defendants deny the allegations in paragraph 6 except admit that Bradley Zetler is a dual national of the Republic of South Africa and the United States of America, that he acted under the title "President" of C.D.S. Inc. from 2005 until March 2016, and that he holds a 45% equity stake in C.D.S. Inc.

7.    Defendants deny the allegations in paragraph 7 except admit that CDS LLC was formed in 2003 under the laws of Delaware, that its principal place of business is in North Carolina, that it is wholly owned by Bradley Zetler, and that it has acted as Rapid Systems' agent since its formation.

8.    Defendants deny the allegations in paragraph 8 except admit that Rapid Systems is a close corporation formed under the laws of the Republic of South Africa, that its principal place of business is in the Republic of South Africa, and that it does business with plaintiff.

9.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.

10.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11.    Paragraph 11 purports to describe the Complaint and no response thereto is required.

12.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 12 and deny the remaining allegations in paragraph 12 except refer to the engagement letter for a complete and accurate statement of its contents.

13.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 13 and deny the remainder of the allegations in paragraph 13.

14.     Paragraph 14 states conclusions of law and no response thereto is required.

15.     Paragraph 15 states conclusions of law and no response thereto is required.

16.     Paragraph 16 states conclusions of law and no response thereto is required.

17.     Paragraph 17 states conclusions of law and no response thereto is required.

18.     Paragraph 18 states conclusions of law and no response thereto is required.

19.     Paragraph 19 states conclusions of law and no response thereto is required.

20.     Paragraph 20 states conclusions of law and no response thereto is required.

21.     Paragraph 21 states conclusions of law and no response thereto is required.

22.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 except admits that a software application called "CDS6" currently remains in service.

25.     Defendants deny the allegations in paragraph 25 except admit that CDS6 had the functionality alleged in paragraph 25, with the functionality of invoicing clients, performing accounting and tax reporting, and integrating with an external accounting application having been copied from Rapid Systems CC's proprietary software known as "Chart Wizard."

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

28.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28.

29.     Paragraph 29 states conclusions of law and no response thereto is required. To the extent a response is required, the allegations are denied.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 except deny the characterization of Rapid Systems' products as an "imaging system" and as "rudimentary."

31.     Defendants admit the allegations in paragraph 31 except deny the allegations in the last sentence of paragraph 31.

32.     Defendants deny the allegations in paragraph 32 except admit that in 2003 Rapid Systems CC and CDS SARL entered the "Franchise Contract" and refer to that document for a complete and accurate statement of its contents.

33.     Paragraph 33 states conclusions of law and no response thereto is required. To the extent a response is required, defendants admit that C.D.S. Inc. and CDS SARL have distributed Castingpad and Productionpad.

34.     Defendants deny the allegations in paragraph 34 except refer to the 2001 Distributorship Agreement for a complete and accurate statement of its contents.

35.     Defendants deny the allegations in paragraph 35 except admit that Bradley Zetler assumed the title "President" of C.D.S. Inc. in 2005, that Jerome Marechaux was supposed to provide substantial assistance in managing C.D.S. Inc., and that eventually Mr. Zetler found himself carrying the bulk of the work without the assistance of which Jerome Marechaux had assured him.

36.     Defendants deny the allegations of paragraph 36.

37.     Defendants deny the allegations of paragraph 37 except admit that Rapid Systems protected the source code for its products, such as Portfoliopad and Agencypad, as trade secrets.

38.     Defendants deny the allegations of paragraph 38 except admit that Jerome Viollon has acted as C.D.S. Inc.'s bookkeeper.

39.     Defendants deny the allegations of paragraph 39.

40.     Defendants deny the allegations of paragraph 40 except admit that in 2005 Bradley Zetler acquired from Susan Funk a 45% stake in C.D.S. Inc., that Bradley Zetler acted under the title "President" of C.D.S. Inc. from 2005 until March 2016, and that Bradley Zetler was not an employee of C.D.S. Inc.

41.     Defendants deny the allegations of paragraph 41 except admit that certain expenses of Bradley Zetler's were reimbursed by C.D.S. Inc.

42.     Defendants deny the allegations of paragraph 42 except admit that Jerome Marechaux managed certain C.D.S. Inc. employees, played a role in strategic decision-making for C.D.S. Inc., and had expenses reimbursed by C.D.S. Inc.

43.     Defendants deny the allegations in paragraph 43.

44.     Defendants admit that CDS LLC was formed in 2003 and that CDS LLC received payments for Rapid Systems CC under the 2001 Distributorship Agreement.

45.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 except admit that David Kanfer and Morrison Cohen LLP was engaged in or about August 2015, refer to the engagement letter for a complete and accurate statement of its contents, admit that David Kanfer had previously worked at Tannenbaum Helpern Syracuse & Hirschtritt LLP.

46.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 except admit that in early 2016 David Kanfer and Morrison Cohen LLP advised C.D.S. Inc. in connection with a subpoena.

47.     Defendants deny the allegations in paragraph 47 except admit that the product called "Agencypad" began to be developed in 2009 or 2010.

48.     Defendants deny the allegations in paragraph 48 except admit that Agencypad operates as an extension of Portfoliopad and that for a time Rapid Systems forbore the 30% commission due under the 2001 Distributorship Agreement for sales of Agencypad in C.D.S. Inc.'s and CDS SARL's territories, and accepted a 15% commission.

49.     Defendants deny the allegations of paragraph 49 except admit that Bradley Zetler, as manager of Rapid Systems CC, supervised and controlled the making of Agencypad.

50.     Defendants deny the allegations in paragraph 50 except admit that Agencypad had "teething problems" when it was newly launched.

51.     Defendants deny the allegations in paragraph 51.

52.     Defendants deny the allegations of paragraph 52 except admit that on March 4, 2016, Bradley Zetler was e-mailed documents entitled "Written Stockholder Consent of C.D.S. Inc." and "Written Consent in Lieu of a Meeting of the Board of Directors of C.D.S. Inc." and refers to those documents for a complete and accurate statement of their contents.

53.     Defendants deny the allegations of paragraph 53.

54.     Defendants deny the allegations of paragraph 54.

55.     Paragraph 55 violates Federal Rule of Civil Procedure 10(b) by failing to state its allegations in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Defendants deny the allegations

of paragraph 55 except admit that at times certain expenses were shifted from CDS

LLC/Rapid Systems CC to C.D.S. Inc. with full disclosure to, and the consent of, the

other shareholder/manager of C.D.S. Inc., that a transaction that was originally intended

to be among Bradley Zetler, Jerome Marechaux and Michael Bunker failed to come to

fruition, and that certain payments designated "consulting fee" were made by C.D.S. Inc.

to CDS LLC with the full consent of the other shareholder/manager of C.D.S. Inc.

56.     Defendants deny the allegations of paragraph 56.

57.     Paragraph 57 violates Federal Rule of Civil Procedure 10(b) by

failing to state its allegations in "numbered paragraphs, each limited as far as practicable

to a single set of circumstances." Fed. R. Civ. P. 10(b). Defendants deny the allegations

of paragraph 57 except admit that an application to register the Agencypad trademark for

CDL LLC was filed with the U.S. Patent and Trademark Office in 2016 and that

Morrison Cohen advised CDS LLC in that matter; that Rapid Systems CC has registered

copyrights in connection with Agencypad; that in April 2016 Rapid Systems CC took

specific steps to generally terminate C.D.S. Inc.'s access to servers on which Portfoliopad

and Agencypad code is developed and runs; and that in March 2016 content belonging to

Rapid Systems CC was moved from a Rackspace account controlled by C.D.S. Inc. to a

Rackspace account controlled by Rapid Systems CC.

58.     Defendants deny the allegations of paragraph 58.

59.     Defendants lack knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 59.

60.     Defendants deny the allegations of paragraph 60 except admit that

an application to register the Agencypad trademark for CDL LLC was filed with the U.S.

Patent and Trademark Office in 2016 and that Morrison Cohen advised CDS LLC in that matter.

61.      Defendants deny the allegations of paragraph 61.

62.      Defendants deny the allegations of paragraph 62.

63.      In response to paragraph 63, defendants repeat and re-allege the preceding.

64.      Defendants deny the allegations of paragraph 64 except admit that C.D.S. Inc. is a distributor of Agencypad under the 2001 Distributorship Agreement.

65.      Defendants deny the allegations of paragraph 65 except admit that Agencypad is a cloud-based software application, that it is an addition to Portfoliopad, and that it allows customers to organize bookings of their affiliated fashion models.

66.      Defendants deny the allegations of paragraph 66 except admits that Alex Gugnishev's services were used in the creation of Agencypad.

67.      Defendants deny the allegations of paragraph 67 except admit that Rapid Systems CC claims to own all intellectual property relating to Agencypad.

68.      Defendants admit the allegations in paragraph 68.

69.      Defendants deny the allegations in paragraph 69.

70.      Paragraph 70 states legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

71.      Paragraph 71 states legal conclusions to which no response is required.

72.      Paragraph 72 purports to describe the relief requested by plaintiff and no response thereto is required.

73.     In response to paragraph 73, defendants repeat and re-allege the preceding.

74.     Defendants deny the allegations in paragraph 74 except admit that Agencypad launched in 2012 and that C.D.S. Inc. is a distributor of Agencypad.

75.     Defendants deny the allegations in paragraph 75 except admit that C.D.S. Inc. is a distributor of Agencypad throughout the United States.

76.     Paragraph 76 states legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

77.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77.

78.     Defendants deny the allegations in paragraph 78.

79.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79.

80.     Defendants deny the allegations of paragraph 80 except admit that CDS LLC has claimed ownership rights in the Agencypad mark.

81.     Defendants deny the allegations of paragraph 81 except admit that CDS LLC filed a trademark application with the United States Patent and Trademark Office for "Agencypad" and refer to that application for a complete and accurate statement of its contents.

82.     Paragraph 82 states legal conclusions to which no response is required.

83.     Defendants deny the allegations of paragraph 83.

84.     Paragraph 84 states legal conclusions to which no response is required.

85.     Paragraph 85 purports to describe the relief requested by plaintiff and no response thereto is required.

86.     In response to paragraph 86, defendants repeat and re-allege the preceding.

87.     Defendants deny the allegations of paragraph 87 except admit that CDS LLC agreed with Amazon Web Services regarding the use of hosting and related services for Portfoliopad, Agencypad, and other software.

88.     Defendants deny the allegations of paragraph 88.

89.     Defendants admit the allegations in paragraph 89.

90.     Defendants deny the allegations of paragraph 90 except admit that CDS LLC agreed with Amazon Web Services regarding the use of hosting and related services for Portfoliopad, Agencypad, and other software.

91.     Defendants admit the allegations of paragraph 91.

92.     Defendants admit the allegations of paragraph 92.

93.     Defendants deny the allegations of paragraph 93 except admit that C.D.S. Inc. was unable to access the servers provided by Amazon Web Services to CDS LLC.

94.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 94.

95.     Paragraph 95 states legal conclusions to which no response is required.

96.     Paragraph 96 purports to describe the relief requested by plaintiff and no response thereto is required.

97.     In response to paragraph 97, defendants repeat and re-allege the preceding.

98.     Defendants deny the allegations in paragraph 98 except admit that CDS LLC opened an account with Rackspace in 2008 to provide hosting service for e-mails, for Portfoliopad, and for related software.

99.     Defendants deny the allegations of paragraph 99 except admit that a Rackspace account opened in 2011 has been held in C.D.S. Inc.'s name and hosts certain domains for C.D.S. Inc. or CDS SARL.

100.    Defendants deny the allegations of paragraph 100 except admit that there was a time when the fee for the Rackspace account opened in 2008 was paid by C.D.S. Inc.

101.    Defendants deny the allegations of paragraph 101.

102.    Defendants admit the allegations of paragraph 102.

103.    Defendants deny the allegations of paragraph 103.

104.    Defendants deny the allegations of paragraph 104.

105.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105.

106.    Paragraph 106 states conclusions of law and no response thereto is required.

107.    Paragraph 107 purports to describe the relief requested by plaintiff and no response thereto is required.

108.    In response to paragraph 108, defendants repeat and re-allege the preceding.

109.    Paragraph 109 states conclusions of law and no response thereto is required.

110.    Paragraph 110 states conclusions of law and no response thereto is required. To the extent a response is required, the allegations are denied.

111.    Paragraph 111 states conclusions of law and no response thereto is required. To the extent a response is required, the allegations are denied.

112.    Paragraph 112 states conclusions of law and no response thereto is required. To the extent a response is required, the allegations are denied.

113.    Defendants deny the allegations of paragraph 113.

114.    Defendants deny the allegations of paragraph 114.

115.    Defendants deny the allegations of paragraph 115.

116.    Defendants deny the allegations of paragraph 116.

117.    Defendants deny the allegations of paragraph 117.

118.    In response to paragraph 118, defendants repeat and re-allege the preceding.

119.    The allegations of paragraph 119, that Bradley Zetler "dominated the management of Inc.," are vague and therefore defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

120.    Paragraph 120 states conclusions of law and no response thereto is required.

121.     Paragraph 121 states conclusions of law and no response thereto is required.

122.     Paragraph 122 states conclusions of law and no response thereto is required.

123.     Paragraph 123 violates Federal Rule of Civil Procedure 10(b) by failing to state its allegations in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Defendants deny the allegations of paragraph 123 except admit that at times certain expenses were shifted from CDS LLC/Rapid Systems CC to C.D.S. Inc. with full disclosure to, and the consent of, the other shareholder/manager of C.D.S. Inc.

124.     Defendants deny the allegations of paragraph 124.

125.     Paragraph 125 purports to describe the relief requested by plaintiff and no response thereto is required.

126.     In response to paragraph 126, defendants repeat and re-allege the preceding.

127.     The allegations of paragraph 127, that Bradley Zetler "dominated the management of Inc.," are vague and therefore defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations.

128.     Paragraph 128 states conclusions of law and no response thereto is required.

129.     Paragraph 129 states conclusions of law and no response thereto is required.

130.     Paragraph 130 violates Federal Rule of Civil Procedure 10(b) by failing to state its allegations in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Defendants deny the allegations of paragraph 130 except admit that at times certain expenses were shifted from CDS LLC/Rapid Systems CC to C.D.S. Inc. with full disclosure to, and the consent of, the other shareholder/manager of C.D.S. Inc.; that a transaction that was originally intended to be among Bradley Zetler, Jerome Marechaux and Michael Bunker failed to come to fruition; and that certain payments designated "consulting fee" were made by C.D.S. Inc. to CDS LLC with the full consent of the other shareholder/manager of C.D.S. Inc.

131.     Defendants deny the allegations of paragraph 131.

132.     Paragraph 132 states conclusions of law and no response thereto is required. To the extent a response is required, defendants deny the allegations of paragraph 132.

133.     In response to paragraph 133, defendants repeat and re-allege the preceding.

134.     Defendants deny the allegations of paragraph 134.

135.     Defendants deny the allegations of paragraph 135 except admit that Rapid Systems protected the source code for its products, such as Portfoliopad and Agencypad, as trade secrets.

136.     Defendants deny the allegations of paragraph 136 except admit that Rapid Systems protected the source code for its products, such as Portfoliopad and Agencypad, as trade secrets.

137.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137 except deny the characterization of Rapid Systems' property as "Inc. Trade Secrets."

138.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 138 except deny the characterization of Rapid Systems' property as "Inc. Trade Secrets."

139.     Defendants deny the allegations of paragraph 139.

140.     Defendants deny the allegations of paragraph 140.

141.     Defendants deny the allegations of paragraph 141.

142.     Paragraph 142 purports to describe the Complaint and no response thereto is required.

143.     In response to paragraph 143, defendants repeat and re-allege the preceding.

144.     Defendants deny the allegations in paragraph 144.

145.     Defendants deny the allegations in paragraph 145.

146.     Defendants deny the allegations in paragraph 146.

147.     Defendants deny the allegations in paragraph 147.

148.     Defendants deny the allegations in paragraph 148.

149.     Defendants deny the allegations in paragraph 149.

150.     Defendants deny the allegations in paragraph 150.

151.     Defendants deny the allegations in paragraph 151.

152.     Defendants deny the allegations in paragraph 152.

153.     Defendants deny the allegations in paragraph 153.

154.    Defendants deny the allegations in paragraph 154.

155.    Defendants admit the allegations in paragraph 155.

156.    Defendants deny the allegations in paragraph 156.

157.    Defendants deny the allegations in paragraph 157.

158.    Defendants deny the allegations in paragraph 158.

159.    Defendants deny the allegations in paragraph 159.

160.    Defendants deny the allegations in paragraph 160.

161.    Defendants deny the allegations in paragraph 161.

162.    Defendants deny the allegations in paragraph 162.

163.    Defendants deny the allegations in paragraph 163.

164.    Defendants deny the allegations in paragraph 164.

165.    Defendants deny the allegations in paragraph 165.

166.    Paragraph 166 purports to describe the Complaint and no response thereto is required.

167.    In response to paragraph 167, defendants repeat and re-allege the preceding.

168.    Defendants deny the allegations in paragraph 168.

169.    Defendants deny the allegations in paragraph 169.

170.    Defendants deny the allegations in paragraph 170.

171.    Defendants deny the allegations in paragraph 171.

172.    Defendants deny the allegations in paragraph 172.

173.    Defendants deny the allegations in paragraph 173.

174.    In response to paragraph 174, defendants repeat and re-allege the preceding.

175.    Defendants deny the allegations in paragraph 175.

176.    Defendants deny the allegations in paragraph 176.

177.    Defendants deny the allegations in paragraph 177.

178.    Defendants deny the allegations in paragraph 178.

179.    Defendants deny the allegations in paragraph 179.

180.    Defendants deny the allegations in paragraph 180.

181.    Defendants deny the allegations in paragraph 181.

182.    Defendants deny the allegations in paragraph 182.

183.    Defendants deny the allegations in paragraph 183.

184.    Defendants deny the allegations in paragraph 184.

185.    Defendants deny the allegations in paragraph 185.

186.    Defendants deny the allegations in paragraph 186.

187.    Defendants deny the allegations in paragraph 187.

188.    Defendants deny the allegations in paragraph 188.

189.    Defendants deny the allegations in paragraph 189.

190.    Defendants deny the allegations in paragraph 190.

191.    Defendants deny the allegations in paragraph 191.

192.    Defendants deny the allegations in paragraph 192.

193.    Defendants deny the allegations in paragraph 193.

194.    Defendants deny the allegations in paragraph 194.

195.     Paragraph 195 states legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## AFFIRMATIVE DEFENSES

Defendants allege the following affirmative defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof where the burden of proof rests on plaintiff:

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are barred, in whole or in part, by applicable statutes of limitations.

### Third Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### Fourth Defense

Plaintiff cannot invoke equitable remedies because of its unclean hands.

### Fifth Defense

Plaintiff's claims are barred because defendants did not breach any duty owed to plaintiff.

### Sixth Defense

Without admitting any breach of any duty, defendant Bradley Zetler asserts the exculpation provisions of plaintiff's certificate of incorporation.

### Seventh Defense

Without admitting plaintiff suffered any damages, any damages suffered by plaintiff were caused by the acts or omissions of plaintiff's shareholder and manager Jerome Marechaux.

<u>Eighth Defense</u>

Defendants are entitled to be indemnified and/or receive contribution for any liability they incur.

<u>Ninth Defense</u>

The Complaint should be dismissed to the extent that the claims are barred by ratification.

<u>Tenth Defense</u>

Plaintiff knew of and participated in the transactions alleged in the Complaint.

<u>Eleventh Defense</u>

Plaintiff had no board of directors and was managed directly by its two shareholders, Bradley Zetler and Jerome Marechaux. Plaintiff's expenses were recorded and books of account were kept by Jerome Viollon, who reports directly to Jerome Marechaux. All transactions were disclosed and were agreed by Jerome Marechaux.

<u>Twelfth Defense</u>

Plaintiff is barred from the relief sought in the Complaint by the doctrines of waiver or estoppel or acquiescence.

<u>Thirteenth Defense</u>

At all relevant times, defendants acted in good faith and with justification.

<u>Fourteenth Defense</u>

Plaintiff's duty of loyalty claims are barred because the transactions complained of are entirely fair.

Fifteenth Defense

Plaintiff is obliged by the 2001 Exclusive Distributorship Agreement "never to challenge, contest or call into question the validity or [Rapid Systems'] ownership of" any intellectual property relating to Portfoliopad or Agencypad. The 2001 Exclusive Distributorship Agreement has an exclusive forum selection clause requiring enforcement of it in France, and Rapid Systems is presently seeking its enforcement against C.D.S. Inc. in that forum. Rapid Systems believes this action should be stayed pending a decision in the forum selected in the 2001 Distributorship Agreement. The defense is asserted here as a precaution, in the event this action is not stayed. Defendants hereby give notice pursuant to Federal Rule of Civil Procedure 44.1 of an issue of foreign law, because the 2001 Exclusive Distributorship Agreement is governed by the law of France.

Sixteenth Defense

Federal law preempts certain of plaintiff's state law claims.

Seventheenth Defense

Defendants raise the defense of equitable estoppel.

Eighteenth Defense

Agencypad and Portofoliopad including the Portfoliopad database, and all intellectual property associated with them, are owned by Rapid Systems CC. Defendants hereby give notice pursuant to Federal Rule of Civil Procedure 44.1 of an issue of foreign law: Under *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir.

1998), initial ownership of the copyright in Portfoliopad (including the database) and Agencypad is governed by the law of South Africa.

Nineteenth Defense

Plaintiff's claims are barred by operation of Section 15.1 of the 2001 Exclusive Distributorship Agreement, which provides: "Any intellectual property rights in any new inventions, designs or processes which evolve in the Portfoliopad Software and/or the Source Code and/or the Portfoliopad System, whether pursuant to the provisions of this Agreement or otherwise shall vest in, remain and be the sole property of [Rapid Systems CC], notwithstanding that same have been commissioned or developed by" C.D.S. Inc. or CDS SARL. The intellectual property rights claimed by plaintiff either are rights in "the Portfoliopad Software and/or the Source Code and/or the Portfoliopad System" or are rights in "new inventions, designs or processes which evolve[d]" from that. Defendants hereby give notice pursuant to Federal Rule of Civil Procedure 44.1 of an issue of foreign law, because the 2001 Exclusive Distributorship Agreement is governed by the law of France.

Twentieth Defense

Defendants refer to and incorporate herein the Declaration of Bradley Zetler executed May 17, 2016, and filed on the electronic docket in this case as ECF document number 32.

Defendants reserve the right to assert other defenses as discovery proceeds.

**DEMAND FOR JURY TRIAL**

Defendants demand a trial by jury on all issues so triable.

22

## SECOND AMENDED COUNTERCLAIMS

Defendant-counterclaim plaintiffs Rapid Systems CC, CDS LLC, and Bradley Zetler hereby assert counterclaims, upon personal knowledge as to their own actions and upon information and belief as to other matters, as follows:

### NATURE OF THE ACTION

196.    Counterclaim plaintiff Rapid Systems CC asserts counterclaims to enforce the intellectual property rights it holds in Portfoliopad and Portfoliopad's extension Agencypad. The 2001 Exclusive Distributorship Agreement to which Rapid Systems CC and C.D.S. Inc. are parties has an exclusive forum selection clause requiring enforcement of it in France, and Rapid Systems CC is presently seeking its enforcement against C.D.S. Inc. in that forum. Rapid Systems CC believes this action should be stayed pending a decision in the forum selected in the 2001 Distributorship Agreement. Rapid Systems CC asserts these counterclaims here solely as a precaution, to protect its rights in the event that this action is not stayed and proceeds to a judgment before the proceeding in France to enforce the 2001 Exclusive Distributorship Agreement proceeds to a judgment.

197.    Counterclaim plaintiffs Rapid Systems CC, CDS LLC, and Bradley Zetler also seek a remedy for fraudulent acts perpetrated by counterclaim defendants, as described below.

198.    In addition, counterclaim plaintiff Bradley Zetler, a shareholder in C.D.S. Inc., asserts counterclaims derivatively, on behalf of C.D.S. Inc. and for the benefit of C.D.S. Inc. Pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure, certain of the derivatively asserted counterclaims, as indicated below, are asserted solely

in the alternative, in the hypothetical event that Agencypad is not established as the property of Rapid Systems CC.

## THE PARTIES

199.    Counterclaim plaintiff Rapid Systems CC is a "close corporation" formed under the laws of South Africa.

200.    Counterclaim plaintiff Bradley Zetler is an individual residing in South Africa.

201.    Counterclaim plaintiff CDS LLC is a limited liability company formed under the laws of Delaware and wholly owned and managed by Bradley Zetler

202.    Counterclaim defendant C.D.S. Inc. is a corporation formed under the laws of Delaware, with a principal place of business in New York City. For many years it operated without a board of directors and was directly managed by Jerome Marechaux and Bradley Zetler, its two shareholders since 2005. In March 2016, however, Jerome Marechaux unilaterally appointed a board of directors comprised of just three members: Jerome Viollon, Christelle Riot and Christophe Racle. Since that time, these three persons have continued to comprise the entirety of C.D.S. Inc.'s board of directors.

203.    Counterclaim defendant CDS SARL is a company formed under the laws of France, with a principal place of business in Paris, France. It is majority-owned and controlled by Jerome Marechaux.

204.    Counterclaim defendant Jerome Marechaux is a citizen and resident of France. He is the controlling shareholder of C.D.S. Inc. as well as of CDS SARL. He has an approximately 92% ownership interest in CDS SARL and, since 2005,

has owned 55% of the outstanding stock of C.D.S. Inc. He draws personal income for himself from CDS SARL in amounts determined at his own discretion.

205.    Counterclaim defendant Jerome Viollon is a citizen and resident of France. He is employed by Jerome Marechaux's company CDS SARL and has an approximately 3% ownership interest in CDS SARL. He is provided a salary by CDS SARL in an amount at Jerome Marechaux's discretion. In March 2016, Jerome Marechaux appointed him to the board of directors of C.D.S. Inc.

206.    Counterclaim defendant Christelle Riot is a citizen and resident of France. She is employed by Jerome Marechaux's company CDS SARL and has an approximately 5% ownership interest in CDS SARL. She is provided a salary by CDS SARL in an amount at Jerome Marechaux's discretion. In March 2016, Jerome Marechaux appointed her to the board of directors of C.D.S. Inc.

207.    Counterclaim defendant Christophe Racle is a citizen and resident of France. He is employed by Jerome Marechaux's company CDS SARL. He is provided a salary by CDS SARL in an amount at Jerome Marechaux's discretion. In March 2016, Jerome Marechaux appointed him to the board of directors of C.D.S. Inc.

208.    Upon information and belief, counterclaim defendant Diane Treat is a resident of New York State. In March 2016, within minutes of their appointment by Jerome Marechaux to the board of directors of C.D.S. Inc., Jerome Viollon, Christelle Riot, and Christophe Racle appointed Diane Treat to the office of "President" of C.D.S. Inc.

209.    Counterclaim defendants Jerome Marechaux, Jerome Viollon, Christelle Riot, Christophe Racle, and Diane Treat are hereafter collectively referred to as the "Individual Counterclaim Defendants."

## JURISDICTION AND VENUE

210.    This Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. §§ 1331, 1367, and 1338.

211.    C.D.S. Inc. is subject to personal jurisdiction in this Court because its principle place of business is within this judicial district.

212.    Upon information and belief, Diane Treat is a domiciliary of this State and therefore subject to jurisdiction pursuant to New York C.P.L.R. § 301.

213.    This Court has personal jurisdiction over the Individual Counterclaim Defendants because they conduct substantial business in New York.

214.    The Individual Counterclaim Defendants are additionally subject to personal jurisdiction in this Court because of their tortious acts causing injury to C.D.S. Inc. in this judicial district (as detailed herein) and because of their control over tortious acts committed by C.D.S. Inc. in this judicial district, control that is exercised by Jerome Marechaux as a controlling shareholder, is exercised by Jerome Viollon, Christelle Riot, and Christophe Racle as directors of C.D.S. Inc., and is exercised by Diane Treat as an officer of C.D.S. Inc., and because the claims against them arise from or relate to their contacts with New York.

215.    CDS SARL is subject to personal jurisdiction in this Court because its acts have caused injury to C.D.S. Inc. in this judicial district (as detailed herein), CDS

SARL derives substantial revenue from its business in this judicial district, and the claims against CDS SARL arise from or relate to CDS SARL's contacts with New York.

216.    Venue is proper under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

217.    In 2000, Rapid Systems was created as a "close corporation" under the law of South Africa.

218.    In 2001, Rapid Systems began marketing a software application called "Portfoliopad."

219.    The principal target market for Portfoliopad was, and still is, modeling agencies.

220.    Modeling agencies use Portfoliopad as, among other things, a substitute for the traditional "portfolio book."

221.    The traditional portfolio book is a means of promoting models. When a potential client expresses an interest in booking a model for an event, the modeling agency has a portfolio book printed for each of its affiliate models that the agency wants to promote for the engagement. Each model's portfolio book displays a series of photographs of the model. The modeling agency then ships the portfolio books to the potential client, in order to pitch the models for the potential engagement.

222.    If a modeling agency has subscribed to Portfoliopad, however, then portfolio books will not be necessary to pitch models for potential engagements. Instead, the modeling agency uses Portfoliopad's cloud-computing service.

223.    Having subscribed to Portfoliopad, the modeling agency is provided with login credentials: a unique username and password. The modeling agency

then uses an Internet connection and a Web browser (such as Internet Explorer, Safari, Firefox of Google Chrome) to connect to Portfoliopad by pointing the Web browser to the Internet address portfoliopad.com. At that webpage, the modeling agency uses its username and password to log in to Portfoliopad.

224.    After logging in to Portfoliopad, a modeling agency can upload photographs and video clips of its affiliated models to a server used by Portfoliopad. Then, when a potential client expresses an interest in booking a model for an event, the modeling agency can simply e-mail the potential client a hyperlink to a webpage at which the potential client can view photographs and video clips of the promoted models – online portfolios rather than physical portfolio books.

225.    In fact, other businesses than modeling agencies can make good use of Portfoliopad. For example, location scouts can use Portfoliopad to show film producers or event planners possible locations for a film scene or for an event. But since its launch in 2001, modeling agencies have remained the principal market for Portfoliopad.

226.    Modeling agencies also use Portfoliopad to keep track of and organize information about their affiliated models. For example, for each model whose photographs and videos are uploaded to it, Portfoliopad can also keep track of information about clients who have hired a particular model. As another example, Portfoliopad is a searchable database of the modeling agency's clients and affiliated models, allowing the agency to keep track of what models were put forward for what job and to see whether the agency's client has viewed the presentation that was put forward.

227.    Upon its launch, Portfoliopad was an immediate success in South Africa. Rapid Systems CC's owner and manager, Bradley Zetler, sought opportunities to expand Portfoliopad's market outside South Africa. Rapid Systems CC decided to expand Portfoliopad's reach by entering an agreement with two companies owned and controlled by Jerome Marechaux.

228.    This agreement is entitled "Exclusive Distributorship Agreement." It is dated June 1, 2001. The two Marechaux-controlled companies that are parties to it (along with Rapid Systems CC) are counterclaim defendants C.D.S. Inc. and CDS SARL.

229.    Under this distributorship agreement, CDS SARL and C.D.S. Inc. sell Portfoliopad to modeling agencies in Europe, the United States, and other regions. Rapid Systems maintains Portfoliopad and makes Portfoliopad available to these European, U.S. and other customers. Those customers pay CDS SARL and C.D.S., Inc.; then Rapid Systems receives a 30% commission from CDS SARL's and C.D.S. Inc.'s sales revenue.

230.    In this 2001 agreement, CDS SARL and C.D.S. Inc. acknowledged Rapid Systems' ownership of Portfoliopad, even in the event that they arrange for, or themselves provide, improvements to the Portfoliopad product.

231.    In 2012, CDS SARL, C.D.S. Inc. and Rapid Systems CC began selling Portfoliopad together with a newly built extension of it that they called "Agencypad."

232.    Sales of Agencypad by C.D.S. Inc. and CDS SARL are made pursuant to the 2001 Exclusive Distributorship Agreement.

233.    As a temporary accommodation to C.D.S. Inc. and CDS SARL, however, Rapid Systems CC has forborne from insisting on the 30% commission for sales of Agencypad and has accepted a 15% commission.

234.    Some of the labor involved in developing and maintaining Agencypad has been provided by C.D.S. Inc. But on April 21, 2016, Rapid Systems CC communicated to C.D.S. Inc. that C.D.S. Inc. should no longer be involved in the development or maintenance of Agencypad or of any other part of Portfoliopad. Rapid Systems CC demanded that C.D.S. Inc. and its agents cease copying any parts of the source code for Portfoliopad, including Agencypad, and destroy any copies in their possession.

235.    Upon information and belief, C.D.S. Inc. refused to comply with this demand.

236.    C.D.S. Inc.'s refusal to comply with that demand was orchestrated by the Individual Counterclaim defendants.

**FIRST CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT**
**(by Rapid Systems CC against C.D.S. Inc. and CDS SARL)**

237.    Rapid Systems CC repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

238.    Rapid Systems CC owns copyrights in the computer program – including the source code, database, scripts and stored procedures – that is Portfoliopad and Agencypad.

239.    Under the 2001 Exclusive Distributorship Agreement, C.D.S. Inc. bound itself to acknowledge Rapid Systems CC's ownership of these copyrights.

Additionally, Rapid Systems CC is the initial owner of these copyrights as provided by the law of South Africa.

240.    Furthermore, any intellectual property rights in any part of Portfoliopad and Agencypad of which Rapid Systems CC would not have been the initial owner absent an agreement are owned by Rapid Systems CC by operation of Section 15.1 of the 2001 Exclusive Distributorship Agreement, which provides:

> Any intellectual property rights in any new inventions, designs or processes which evolve in the Portfoliopad Software and/or the Source Code and/or the Portfolipad System, whether pursuant to the provisions of this Agreement or otherwise shall vest in, remain and be the sole property of RS [*i.e.*, Rapid Systems CC], notwithstanding that same have been commissioned or developed by the Distributors [*i.e.*, C.D.S. Inc. or CDS SARL].

The 2001 Exclusive Distributorship Agreement is governed by the law of France.

241.    Rapid Systems CC has registered each such copyright, and received a Certificate of Copyright Registration from the United States Copyright Office, for versions of these works from 2001, 2011, 2012 and 2016. The registration numbers are registration nos. TXu001987200, TXu001987324, TXu001987405, TXu001987327, TXu001987323, TXu001987326, TXu001987325, TXu001987318, TXu001987384, TXu001987358, TXu1989524, TXu1989523, and TXu001987927. A true and correct copy of each certificate is attached as Exhibit A.

242.    Rapid Systems CC's copyrights in Portfoliopad and Agencypad are valid and enforceable.

243.    C.D.S. Inc. has infringed Rapid Systems CC's copyrights by reproducing copies of the Portfoliopad and Agenypad source code that had been stored on personal computers by C.D.S. Inc. employees, and by preparing derivative works

31

based upon them, after Rapid Systems CC, in the April 21, 2016 letter, had withdrawn any authorization for C.D.S. Inc. to do so.

244.   Following Rapid Systems CC's withdrawal of any authorization for C.D.S. Inc. to copy the Portfoliopad and Agencypad computer program, C.D.S. Inc. has additionally infringed Rapid Systems CC's copyrights by reproducing copies of the works and preparing derivative works based upon them pursuant to a preliminary injunction entered on June 6, 2016, in this action. In support of the preliminary injunction, C.D.S. Inc. testified to a list of "bug fixes" and improvements it purportedly needed to implement immediately in order to avoid irreparable harm and to survive, and for which the preliminary injunction was necessary. Months after the implementation of the preliminary injunction, however, C.D.S. Inc. has made no effort to implement any of those "bug fixes" or improvements that it listed in testimony to the Court.

245.   In the alternative, if Agencypad is not an extension of Portfoliopad, then the Agencypad source code is a "derivative work" within the meaning of 17 U.S.C. § 101, based upon the Portfoliopad source code, which could not be prepared without Rapid Systems CC's authorization, and which infringes Rapid Systems CC's copyright in the Portfoliopad source code.

246.   Furthermore, CDS SARL has infringed Rapid Systems CC's copyrights by using Portfoliopad (including Agencypad) as the basis for a new cloud-based booking application it began secretly developing in 2015 and has continued to develop during the pendency of the action.

247.   C.D.S. Inc.'s and CDS SARL's infringement of Rapid Systems CC's copyrights has been willful.

248. Rapid Systems CC is entitled to recover damages sustained as a result of C.D.S. Inc.'s and CDS SARL's unlawful conduct or, alternatively at Rapid Systems CC's election, statutory damages.

**SECOND CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT**
**(by Rapid Systems CC against the Individual Counterclaim Defendants)**

249. Rapid Systems CC repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

250. The C.D.S. Inc. board of directors appointed by Jerome Marechaux in March 2016 is beholden to and directly controlled by Jerome Marechaux. Each of the three directors – counterclaim defendants Viollon, Riot and Racle – is an employee of Jerome Marechaux's French company CDS SARL and is paid a salary by CDS SARL as determined by Jerome Marechaux.

251. At Jerome Marechaux's direction, and as previously agreed with him, the C.D.S. Inc. board of directors appointed by Marechaux caused C.D.S. Inc. to hire as its chief executive and "President" counterclaim defendant Diane Treat, who was uninformed about the development of Portfoliopad and Agencypad, who is unqualified, by any reasonable standard, to maintain the operation of Portfoliopad and Agencypad, and whose decisions and conduct as President of C.D.S. Inc. continue to be directly managed by Jerome Marechaux.

252. The conduct of other C.D.S. Inc. employees is controlled by counterclaim defendants Treat as President and chief executive of C.D.S. Inc., and by Marechaux as the controlling shareholder of C.D.S. Inc., who directly manages Treat's decisions and conduct as President of C.D.S. Inc.

253.   For years, Marechaux requests that Treat copy him on all e-mails of any significance concerning C.D.S. Inc. business.

254.   At all times, the Individual Counterclaim Defendants have known of C.D.S. Inc.'s and CDS SARL's infringing conduct.

255.   The Individual Counterclaim Defendants induced, caused and materially contributed to the infringing conduct of C.D.S. Inc. and CDS SARL.

256.   The Individual Counterclaim Defendants willfully participated in the infringing conduct.

257.   Jerome Marechaux personally benefits from C.D.S. Inc.'s and CDS SARL's unlawful conduct because he is the controlling shareholder of C.D.S. Inc. and his own personal income is derived from business conducted by C.D.S. Inc. and CDS SARL. The other Individual Counterclaim Defendants are beholden to Marechaux and act at his direction.

258.   Rapid Systems CC is entitled to recover damages sustained as a result of the Individual Counterclaim Defendants' unlawful conduct or, alternatively at Rapid Systems CC's election, statutory damages.

**THIRD CLAIM FOR RELIEF: TRADE SECRET MISAPPROPRIATION**
**(by Rapid Systems CC against C.D.S. Inc. and CDS SARL)**

259.   Rapid Systems CC repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

260.   The source code, stored procedures, scripts and database for Portfoliopad (including Agencypad) were developed by Rapid Systems CC at significant expense and are the foundation of Rapid Systems CC's business activities.

261.     At all times, Rapid Systems CC has taken prudent measures to protect the secrecy of the source code, stored procedures, scripts and database for Portfoliopad (including Agencypad).

262.     For approximately ten years, Rapid Systems CC's manager Bradley Zetler co-managed C.D.S. Inc. together with C.D.S. Inc.'s other shareholder Jerome Marechaux. During this time, Rapid Systems CC trusted C.D.S. Inc. by allowing C.D.S. Inc. to assist with the development of Portfoliopad.

263.     C.D.S. Inc. abused this trust and breached its duty to Rapid Systems CC by refusing to destroy or return to Rapid Systems CC the source code, stored procedures, scripts and database for Portfoliopad (including Agencypad), and by continuing to use such property, after C.D.S. Inc.'s authorization to use it had been revoked – including by letting CDS SARL use, or by itself using, Portfoliopad (including the Agencypad part of Portfoliopad) to create a new online booking software during the pendency of this action.

264.     CDS SARL wrongly took advantage of the access provided to C.D.S. Inc. before April 21, 2016, and after the entry of a preliminary inunction in this action, to use not only Portfoliopad and Agencypad's source code, but also information about Portfoliopad and Agencypad customers and their reactions to and requests of Portfoliopad and Agencypad, as material for a secret project to develop a rival online booking software.

### FOURTH CLAIM FOR RELIEF: CIVIL CONSPIRACY
### (by Rapid Systems CC against the Individual Counterclaim Defendants)

265.     Rapid Systems CC repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

266.    In the months leading up to March 2016, the Individual Defendants devised a scheme whereby they would misappropriate Portfoliopad (including Agencypad). The underlying tort on which this conspiracy is predicated is the third claim for relief state above.

267.    The Individual Counterclaim Defendants took several active steps in furtherance of the conspiracy, in that, *inter alia*: they pursued a secret project to create a rival online booking software that would compete with Agencypad; Jerome Marechaux appointed to C.D.S. Inc. a board of directors entirely beholden to himself and acting according to his instructions, even after C.D.S. Inc. had been managed directly, without any board of directors, by himself and Bradley Zetler for approximately ten years; the newly-appointed board of directors, as previously agreed among them and Jerome Marechaux, immediately resolved to remove Bradley Zetler from the management of C.D.S. Inc.; and the newly-appointed board of directors and Jerome Marechaux placed Diane Treat in the office of "President" of C.D.S. Inc., though she had no significant knowledge of C.D.S. Inc.'s operations outside of the sales department and, even now, continues to act as instructed by Jerome Marechaux.

268.    As a result of the Individual Counterclaim Defendants' wrongful acts, Rapid Systems CC has suffered harm, including damages and loss of customer relationships and good will. Accordingly, as the Individual Counterclaim Defendants' acts directly and proximately caused injury to Rapid Systems CC, Rapid Systems CC is entitled to money damages in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF: FRAUD**
**(by Bradley Zetler, CDS LLC, and Rapid Systems CC against Marechaux, Riot, Racle, Viollon and CDS SARL)**

269.     Rapid Systems CC repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

270.     On or about June 2015, Jerome Marechaux, Christelle Riot, Christophe Racle, Jerome Viollon, and CDS SARL began to develop a software application to compete with Agencypad.

271.     Marechaux, Riot, Racle, Viollon and CDS SARL deliberately concealed from counterclaim plaintiffs their effort to develop a competitor to Agencypad.

272.     Had counterclaim plaintiffs known of the secret project to develop a competitor to Agencypad, counterclaim plaintiffs would have ceased to do business with counterclaim defendants and may have taken appropriate legal action.

273.     As a result of Marechaux's, Riot's, Racle's, Viollon's, and CDS SARL's deceptive conduct, however, counterclaim plaintiffs continued to do business with counterclaim defendants. As a result, counterclaim defendants continued secretly to develop the replacement for Agencypad, even while profiting from Agencypad sales and exploiting confidential information relating to Agencypad. Counterclaim plaintiffs have been injured thereby, because, *inter alia,* by continuing to do business with counterclaim defendants they have had to share with counterclaim defendants the earnings from Rapid Systems CC's products and services, and they have unwittingly supported a competitor's future sales in competition with Rapid Systems CC.

274.     Marechuax, Riot, Racle, Viollon and CDS SARL continued to conceal their secret project to replace Agencypad even after causing C.D.S. Inc. to commence this action alleging that Agencypad belongs to C.D.S. Inc. and causing C.D.S.

Inc. to apply for a temporary restraining order and a preliminary injunction against counterclaim plaintiffs based on that allegation. As a result, counterclaim plaintiffs have suffered harm from, *inter alia*, costs and expenses incurred under the preliminary injunction entered by this Court and from loss of customer relationships and good will.

### SIXTH CLAIM FOR RELIEF: AIDING AND ABETTING FRAUD
### (by Bradley Zetler, CDS LLC, and Rapid Systems CC against Treat and C.D.S. Inc.)

275.    Rapid Systems CC repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

276.    C.D.S. Inc. and Diane Treat knew of the above-described fraudulent acts by Marechaux, Riot, Racle, Viollon and CDS SARL.

277.    C.D.S. Inc. and Diane Treat substantially assisted the perpetration of the fraud by keeping the fraud secret from counterclaim plaintiffs.

278.    They maintained the secret even while C.D.S. Inc. commenced this action alleging that Agencypad belongs to C.D.S. Inc. and C.D.S. Inc. applied for a temporary restraining order and a preliminary injunction against counterclaim plaintiffs based on that allegation.

279.    Counterclaim plaintiffs have been injured thereby, because, *inter alia,* by continuing to do business with counterclaim defendants they have had to share with counterclaim defendants the earnings from Rapid Systems CC's products and services, and they have unwittingly supported a competitor's future sales in competition with competition with Rapid Systems CC. Counterclaim plaintiffs have also suffered harm from, *inter alia*, costs and expenses incurred under the preliminary injunction entered by this Court and from loss of customer relationships and good will.

38

## DERIVATIVE ALLEGATIONS

280.    The following counterclaims are asserted derivatively on behalf of

C.D.S. Inc. by counterclaim plaintiff Bradley Zetler, who presently owns, and for over

ten years has owned, 45% of C.D.S. Inc.'s outstanding shares. This action is not a

collusive one to confer jurisdiction that the Court would otherwise lack.

## DEMAND IS FUTILE

281.    Demand on C.D.S. Inc.'s board of directors to pursue these claims

on behalf of C.D.S. Inc. would have been a futile and useless act, because the

wrongdoing alleged herein was perpetrated by the Individual Counterclaim Defendants

themselves, in the face of repeated exhortations to place the interests of C.D.S. Inc. ahead

of their own personal interests. The Individual Counterclaim Defendants' conduct

described herein could not have been the product of legitimate business judgment. Rather,

it was intentional and disloyal conduct.

### SEVENTH CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY/CORPORATE WASTE BY FAILURE TO PURSUE SALES OF RAPID SYSTEMS PRODUCTS AND SERVICES
**(by Bradley Zetler, derivatively on behalf of C.D.S. Inc., against the Individual Counterclaim Defendants)**

282.    Bradley Zetler repeats, realleges, and incorporates the allegations

in the foregoing paragraphs as though fully set forth herein.

283.    Since at least July 2016, the Individual Counterclaim Defendants

have executed a strategy under which C.D.S. Inc. deliberately fails to pursue

opportunities to sell products or services, such as Portfoliopad or website development,

that would lead to revenue realization not only by C.D.S. Inc. but also by Rapid Systems

CC under the 2001 Exclusive Distributorship Agreement.

284.   Even after potential new customers of these products or services have inquired and expressed interest in the products or services, the Individual Counterclaim Defendants have caused C.D.S. Inc. not to respond to these inquiries and not to pursue these potential new customers.

285.   This strategy executed by the Individual Counterclaim Defendants cannot be attributed to any rational business purpose.

286.   This strategy directly injures C.D.S. Inc. by squandering C.D.S. Inc.'s business opportunities for no economic advantage whatsoever.

287.   Each of the Individual Counterclaim Defendants owes to C.D.S. Inc. duties of care, of loyalty, and of good faith.

288.   By causing C.D.S. Inc. to squander business opportunities for no economic advantage whatsoever, the Individual Counterclaim Defendants have breached their duties to C.D.S. Inc.

**EIGHTH CLAIM FOR RELIEF: BREACH OF FIDUCIAR DUTY/CORPORATE WASTE BY FAILURE TO ASSERT RIGHTS OVER CDS6 SOFTWARE
(by Bradley Zetler, derivatively on behalf of C.D.S. Inc., against the Individual Counterclaim Defendants)**

289.   Bradley Zetler repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

290.   C.D.S. Inc. has developed and marketed a software application that, in its current version, is known as "CDS6." This software application is marketed to modeling agencies, which use it to keep track of engagements booked by their affiliated models and for other office management tasks.

291.   As a developer of CDS6, C.D.S. Inc. is an owner of the copyright inhering in the source code for CDS6.

292. For many years since C.D.S. Inc. developed it, CDS6 has been sold to customers in Europe by CDS SARL.

293. C.D.S. Inc. does not demand and does not receive any compensation or consideration from CDS SARL for CDS SARL's sales of CDS6.

294. Jerome Marechaux personally benefits from C.D.S. Inc.'s failure to demand or receive any such compensation or consideration because Jerome Marechaux owns CDS SARL and draws his personal income from CDS SARL.

295. The other Individual Counterclaim Defendants are each beholden to Jerome Marechaux, who has appointed them to their positions at C.D.S. Inc., who determines their salaries (whether as employees of C.D.S. Inc. or of CDS SARL), and who monitors and directs their actions as directors and officers of C.D.S. Inc.

296. The Individual Counterclaim Defendants are in breach of their duties to C.D.S. Inc. by failing to arrange any compensation or consideration to C.D.S. Inc. from CDS SARL for CDS SARL's sales of CDS6.

**NINTH CLAIM FOR RELIEF: UNJUST ENRICHMENT BY SALES OF CDS6
(by Bradley Zetler, derivatively on behalf of C.D.S. Inc., against CDS SARL)**

297. Bradley Zetler repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

298. By selling CDS6 at a profit without providing any compensation or consideration to C.D.S. Inc., CDS SARL has been enriched at C.D.S. Inc.'s expense.

299. It is against equity and good conscience for CDS SARL to retain the benefits it has obtained at C.D.S. Inc.'s expense in connection with sales of CDS6.

**TENTH CLAIM FOR RELIEF, ASSERTED SOLELY IN THE ALTERNATIVE:
BREACH OF FIDUCIARY DUTY/CORPORATE WASTE BY FAILURE TO
ASSERT RIGHTS OVER AGENCYPAD SOFTWARE
(by Bradley Zetler, derivatively on behalf of C.D.S. Inc., against the Individual
Counterclaim Defendants)**

300.     Bradley Zetler repeats, realleges, and incorporates the allegations

in the foregoing paragraphs as though fully set forth herein.

301.     C.D.S. Inc. has wrongly claimed to own Agencypad, a software

application actually owned by Rapid Systems CC and sold by C.D.S. Inc. and CDS

SARL pursuant to an Exclusive Distributorship Agreement dated June 1, 2001. This tenth

claim for relief, a derivative claim on behalf of C.D.S. Inc., is pleaded solely in the

alternative, in the event that C.D.S. Inc. succeeds in its claim against Rapid Systems CC

regarding ownership of Agencypad.

302.     Since 2012, when Agencypad was first launched, CDS SARL has

sold Agencypad to customers in Europe without providing consideration to C.D.S. Inc.

that any business person of ordinary, sound judgment could conclude is adequate

consideration.

303.     Jerome Marechaux personally benefits from C.D.S. Inc.'s failure to

demand or receive adequate consideration for CDS SARL's sales of Agencypad because

Jerome Marechaux owns CDS SARL and draws his personal income from CDS SARL.

304.     The other Individual Counterclaim Defendants are each beholden

to Jerome Marechaux, who has appointed them to their positions at C.D.S. Inc., who

determines their salaries (whether as employees of C.D.S. Inc. or of CDS SARL), and

who monitors and directs their actions as directors and officers of C.D.S. Inc.

305.    The Individual Counterclaim Defendants are in breach of their

duties to C.D.S. Inc. by failing to arrange adequate consideration to C.D.S. Inc. from

CDS SARL for CDS SARL's sales of Agencypad.

**ELEVENTH CLAIM FOR RELIEF, ASSERTED SOLELY IN THE
ALTERNATIVE: UNJUST ENRICHMENT BY SALES OF AND USE OF
AGENCYPAD SOFTWARE
(by Bradley Zetler, derivatively on behalf of C.D.S. Inc., against CDS SARL)**

306.    Bradley Zetler repeats, realleges, and incorporates the allegations

in the foregoing paragraphs as though fully set forth herein.

307.    This eleventh claim for relief is a derivative claim on behalf of

C.D.S. Inc., and, like the tenth claim for relief, is pleaded solely in the alternative, in the

event that C.D.S. Inc. succeeds in its claim against Rapid Systems CC regarding

ownership of Agencypad.

308.    By selling Agencypad at a profit without providing any

compensation or consideration to C.D.S. Inc., CDS SARL has been enriched at C.D.S.

Inc.'s expense.

309.    Furthermore, during the pendency of this action, CDS SARL has

used Portfoliopad (including the Agencypad part of Portfoliopad) to create a new cloud-

based booking software that it intends to sell instead of Agencypad.

310.    It is against equity and good conscience for CDS SARL to retain

the benefits it has obtained at C.D.S. Inc.'s expense in connection with its sales of and

use of Agencypad.

**TWELFTH CLAIM FOR RELIEF, ASSERTED SOLELY IN THE
ALTERNATIVE: BREACH OF FIDUCIARY DUTY AND USURPATION OF
CORPORATE OPPORTUNITIES RELATED TO AGENCYPAD SOFTWARE
(by Bradley Zetler, derivatively on behalf of C.D.S. Inc., against the Individual
Counterclaim Defendants)**

311.    Bradley Zetler repeats, realleges, and incorporates the allegations

in the foregoing paragraphs as though fully set forth herein.

312.    This twelfth claim for relief is a derivative claim on behalf of

C.D.S. Inc., and, like the tenth and eleventh claims for relief, is pleaded solely in the

alternative, in the event that C.D.S. Inc. succeeds in its claim against Rapid Systems CC

regarding ownership of Agencypad.

313.    C.D.S. Inc. would have been able to exploit these opportunities,

which are within C.D.S. Inc.'s line of business, and which properly belonged to C.D.S.

Inc. By usurping these opportunities, the Individual Counterclaim Defendants placed

themselves at odds with their duties as fiduciaries of C.D.S. Inc.

314.    By creating a competing product to Agencypad prior to and during

the pendency of this action and seeking to profit from sales by CDS SARL of the

competing product, the Individual Counterclaim Defendants, each of whom is a fiduciary

to C.D.S. Inc., have improperly breached their fiduciary duties and usurped corporate

opportunities belonging to C.D.S. Inc.

315.    It is against equity and good conscience for the Individual

Counterclaim Defendants to retain the benefits they might obtain at C.D.S. Inc.'s expense

and to profit from their disloyal acts.

**THIRTEENTH CLAIM FOR RELIEF, ASSERTED SOLELY IN THE
ALTERNATIVE: AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES
RELATED TO AGENCYPAD SOFTWARE
(by Bradley Zetler, derivatively on behalf of C.D.S. Inc., against CDS SARL, Treat,
Riot, Racle and Viollon)**

316.    Bradley Zetler repeats, realleges, and incorporates the allegations

in the foregoing paragraphs as though fully set forth herein.

317.    This thirteenth claim for relief is a derivative claim on behalf of

C.D.S. Inc., and, like the tenth through twelfth claims for relief, is pleaded solely in the

alternative, in the event that C.D.S. Inc. succeeds in its claim against Rapid Systems CC

regarding ownership of Agencypad.

318.    By knowingly assisting in the creation of a competing product to

Agencypad, CDS SARL, Treat, Riot, Racle and Viollon aided and abetted Jerome

Marechaux's breach of his fiduciary duties as majority and controlling shareholder in

C.D.S. Inc.

319.    It is against equity and good conscience for Jerome Viollon,

Christelle Riot, Christophe Racle, Diane Treat and CDS SARL to retain the benefits they

might obtain at C.D.S. Inc.'s expense and to profit from their aiding and abetting of

Jerome Marechaux's disloyal acts.

**FOURTEENTH CLAIM FOR RELIEF, ASSERTED SOLELY IN THE
ALTERNATIVE: BREACH OF DUTY OF GOOD FAITH
(by Bradley Zetler, derivatively on behalf of C.D.S. Inc., against Treat, Riot, Racle
and Viollon)**

320.    Bradley Zetler repeats, realleges, and incorporates the allegations

in the foregoing paragraphs as though fully set forth herein.

321.    This fourteenth claim for relief is a derivative claim on behalf of

C.D.S. Inc., and, like the tenth through thirteenth claims for relief, is pleaded solely in the

alternative, in the event that C.D.S. Inc. succeeds in its claim against Rapid Systems CC regarding ownership of Agencypad.

322.    By failing to take any steps to remedy Marechaux's wrongful development of an online software application intended to compete with Agencypad, Treat, Riot, Racle and Viollon consciously disregarded their responsibilities. Their intentional dereliction of duty constitutes a violation of their duty of good faith.

## PRAYER FOR RELIEF

WHEREFORE, defendants request that judgment be entered in their favor against plaintiff:

A.    dismissing the Complaint with prejudice;

B.    granting defendants the costs of defending this action, including attorneys' fees and expenses to the full extent permitted by law; and

C.    granting such other relief as the Court deems just and proper; and

WHEREFORE, counterclaim plaintiffs further requests that judgment be entered in their favor against counterclaim defendants:

D.    awarding Rapid Systems CC its damages or, alternatively at Rapid Systems CC's election, statutory damages, as a result of the Individual Counterclaim Defendants', C.D.S. Inc.'s, and CDS SARL's infringement of Rapid Systems CC's copyrights, including punitive damages;

E.    awarding Rapid Systems CC its damages as a result of the Individual Counterclaim Defendants' and C.D.S. Inc.'s misappropriation of and conspiracy to misappropriate Rapid Systems CC's trade secrets;

F.      ordering counterclaim defendants to abandon and return the trade secrets they have misappropriated from Rapid Systems CC;

G.      ordering the counterclaim defendants to abandon and destroy the products wrongfully and secretly developed before and during the pendency of this litigation to compete with Agencypad;

H.      awarding counterclaim plaintiffs damages as a result of counterclaim defendants' fraudulent acts and aiding and abetting fraudulent acts, including past and future compensatory damages and punitive damages;

I.      ordering the counterclaim defendants to disgorge all profits wrongly received by them;

J.      granting counterclaim plaintiffs the cost of maintaining these counterclaims, including reasonable attorneys' fees as provided by law;

K.      awarding counterclaim plaintiffs pre-judgment and post-judgment interest on their damages; and

L.       granting counterclaim plaintiffs such other and further relief as may be just and proper.

WHEREFORE Bradley Zetler further requests that judgment be entered against the Individual Counterclaim Defendants and CDS SARL:

M.      awarding C.D.S. Inc. damages in an amount to be determined at trial, including past and future compensatory damages and punitive damages;

N.      awarding C.D.S. Inc. pre-judgment and post-judgment interest on such damages;

O.     awarding Bradley Zetler the cost of maintaining the derivative counterclaims, including his attorneys' fees;

P.     ordering the Individual Counterclaim Defendants and CDS SARL to abandon and destroy the products wrongfully developed during the pendency of this litigation;

Q.     ordering the Individual Counterclaim Defendants to return all compensation received by them from C.D.S. Inc. during their dereliction of their duty to C.D.S. Inc.;

R.     ordering the Individual Counterclaim Defendants and CDS SARL to disgorge all profits wrongly received by them; and

S.     granting such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Trial by jury of all issues so triable is hereby demanded.

Dated: November 7, 2016

THE LAW OFFICE OF IHSAN DOGRAMACI

_/s/ Ihsan Dogramaci_

Ihsan Dogramaci
  e-mail: idogramaci@idlawoffice.net
1120 Avenue of the Americas, 4th Fl.
New York, NY 10036
tel: (212) 309-7580
fax: (646) 568-3727

_Counsel for Rapid Systems CC, CDS LLC, and Bradley Zetler_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

C.D.S. Inc.,

*plaintiff,*

- against -

Bradley Zetler; CDS, LLC; Rapid Systems CC; *and*
John Does 1-5,

*defendants,*

- and -

Amazon Web Services, Inc.; *and* Rackspace US,
Inc.,

*nominal defendants.*

---

Rapid Systems CC *and* Bradley Zetler,

*counterclaim plaintiffs,*

- against -

C.D.S. Inc.; Diane Treat; Jerome Viollon; Christelle
Riot; Christophe Racle; Jerome Marechaux; *and*
CDS SARL,

*counterclaim defendants.*

---

16 Civ. 3199 (VM) (JLC)

ECF CASE

JURY TRIAL DEMANDED

**VERIFICATION OF**
**DEFENDANTS'**
**SECOND AMENDED**
**<u>COUNTERCLAIMS</u>**

BRADLEY ZETLER declares:

1.  I am defendant and counterclaim plaintiff in this case. I am also the

owner and manager of defendant CDS LLC and defendant/counterclaim plaintiff Rapid

Systems CC. From 2005 until this year I was the President of C.D.S. Inc.

2.  Since 2005, I have been a shareholder of C.D.S. Inc, continuously

holding 45% of the outstanding shares.

3.  I have reviewed the allegations in the Second Amended

Counterclaims dated November 7, 2016, I know them to be true as to my own actions,

and as to other matters I believe them to be true upon information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Cape Town, South Africa

On 7 November 2016

Bradley Zetler