UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| C.D.S. Inc.,<br><br>    *plaintiff*,<br><br>    - against -<br><br>Bradley Zetler; CDS, LLC; Rapid Systems CC; *and* John Does 1-5,<br><br>    *defendants*,<br><br>    - and -<br><br>Amazon Web Services, Inc.; *and* Rackspace US, Inc.,<br><br>    *nominal defendants*. | 16 Civ. 3199 (VM) (JLC)<br><br>ECF CASE |
| Rapid Systems CC, CDS LLC *and* Bradley Zetler,<br><br>    *counterclaim plaintiffs*,<br><br>    - against -<br><br>C.D.S. Inc.; Diane Treat; Jerome Viollon; Christelle Riot; Christophe Racle; Jerome Marechaux; *and* CDS SARL,<br><br>    *counterclaim defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF
RAPID SYSTEMS' MOTION FOR RECONSIDERATION**

THE LAW OFFICE OF IHSAN DOGRAMACI
1120 Avenue of the Americas, 4th Floor
New York, New York 10036
tel: (212) 309-7580
fax: (646) 568-3727

*Counsel for Rapid Systems CC, CDS LLC, and Bradley Zetler*

February 1, 2017

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 4

    I.    Issues of French Law in This Litigation ................................................................ 4

    II.   The Stipulated Protective Order ........................................................................... 7

    III.  After the Stipulated Protective Order Was Entered, Rapid Systems Discovered the Marechaux Parties' Secret Project to Replace Agencypad ........................................ 8

    IV.  The Secret Project Appears Relevant to Claims that the Marechaux Parties Said Can *Only* Be Pursued in the Commercial Court of Paris ................................................. 9

    V.   The Court's Order ................................................................................................. 9

ARGUMENT ........................................................................................................................ 10

    I.    Reconsideration is Appropriate ............................................................................ 10

    II.   Legal Standard Governing Availability of Discovery for Use in Other Proceedings ................................................................................................................. 12

    III.  Legal Standard Governing Modification of the Protective Order ........................ 12

    IV.  On Reconsideration, the Court Should Modify the Protective Order .................... 15

        A.   The Court Should Modify Paragraphs 6(a) and 7(a) ......................................... 15

        B.   The Court Should Modify Paragraph 5 ............................................................. 16

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Dove v. Atlantic Capital Corp.*,
 963 F.2d 15 (2d Cir. 1992) .................................................................................. 12, 16

*In re Best Payphones, Inc.*,
 450 F. App'x 8 (2d Cir. 2011) ..................................................................................... 11

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
 255 F.R.D. 308 (D. Conn. 2009) ........................................................................ 13, 14, 15

*In re Parmalat Sec. Litig.*,
 258 F.R.D. 236 (S.D.N.Y. 2009) .............................................................................. 12, 16

*Martindell v. Int'l Tel. & Tel. Corp.*,
 594 F.2d 291 (2d Cir. 1979) ........................................................................................ 13

*S.E.C. v. TheStreet.com*,
 273 F.3d 222 (2d Cir. 2001) ........................................................................................ 13

*The Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*,
 287 F.R.D. 130 (S.D.N.Y. 2012) ....................................................................... 13, 14, 15

*Tradewinds Airlines, Inc. v. Soros*,
 Nos. 08 Civ. 5901, 10 Civ. 8175, 2016 WL 3951181
 (S.D.N.Y. July 20, 2016) ................................................................................. 13, 14, 15

**PRELIMINARY STATEMENT**

Rapid Systems[1] requests reconsideration of the Court's Order of January 20, 2017 (ECF No. 189). That Order denied Rapid Systems request to "de-designate" documents the Marechaux Parties[2] had marked "ATTORNEYS' EYES ONLY" under the Stipulated Protective Order in this case. Rapid Systems does not seek reconsideration of that decision. But the Order also, treating Rapid Systems' pre-motion letter as itself a motion, denied Rapid Systems' request to change the language of the Stipulated Protective Order (ECF No. 128). Rapid Systems hereby moves for reconsideration of that. The Court did not allow Rapid Systems to file the anticipated motion, nor did the Court entertain a pre-motion conference. The Court's rules regarding pre-motion letters therefore prevented Rapid Systems from stating the full argument in favor of Rapid Systems' request to change the language of the Stipulated Protective Order.

The Court's Order appears to misapprehend the request that Rapid Systems intended to make in the anticipated motion. The Order appears to see a single request for modification of the Stipulated Protective Order, but in fact the requested changes fall into two categories—

**First Category of Requested Changes**

The *first* category of requested changes includes a modification of Paragraph 7(a) of the Stipulated Protective Order. Paragraph 7(a) currently reads as follows:

---

[1] "Rapid Systems" refers to Rapid Systems CC, CDS LLC, and Bradley Zetler.

[2] The "Marechaux Parties" are counterclaim defendants Jerome Marechaux, Christelle Riot, Jerome Viollon, Christophe Racle, Diane Treat and CDS SARL and plaintiff/counterclaim defendant C.D.S. Inc.

> 7. . . . [U]nless as otherwise ordered by the Court,
> Litigation Materials designated as "CONFIDENTIAL –
> ATTORNEYS' EYES ONLY" shall not be disclosed to
> any person other than:
> > a. the outside attorneys for the Parties . . .

(ECF No. 128, at 9.) Rapid Systems requests that this language be changed to restrict the meaning of the term "attorneys" in Paragraph 7(a) so that the term will not refer to "attorneys" who have not appeared in this civil action – like so:

> 7. . . . [U]nless as otherwise ordered by the Court,
> Litigation Materials designated as "CONFIDENTIAL –
> ATTORNEYS' EYES ONLY" shall not be disclosed to
> any person other than:
> > a. the outside attorneys <u>of record in this action</u>
> for the Parties . . .

This first category of requested changes includes one other change, intended only to clarify the existing meaning of Paragraph 6(a) in the Stipulated Protective Order. Paragraph 6(a) currently reads:

> 6. . . . [U]nless as otherwise ordered by the Court,
> Litigation [M]aterials designated as "CONFIDENTIAL"
> shall not be disclosed to any person other than:
> > a. the attorneys for the Parties . . . .

(ECF No. 128, at 8.) Rapid Systems requests adding language to confirm the plain meaning of the term "attorneys for the Parties" and to differentiate this language from the revised language of Paragraph 7(a). Rapid Systems requests inserting a phrase like so:

> 6. . . . [U]nless as otherwise ordered by the Court,
> Litigation [M]aterials designated as "CONFIDENTIAL"
> shall not be disclosed to any person other than:
> > a. the attorneys for the Parties <u>(including
> without limitation attorneys in foreign jurisdictions)</u> . . . .

This clarification is also important because the Marechaux Parties have lately disputed that Paragraph 6(a) means what it plainly says.

## Second Category of Requested Changes

The *second* category of requested changes addresses a separate issue. This category requests the deletion of the word "this" in paragraph 5 of the Stipulated Protective Order, as follows:

> 5. Any Litigation Materials . . . may be used only for purposes of ~~this~~ litigation and not for any other purpose, including without limitation for any business or trade purpose. As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in connection with any mediation or other alternative dispute resolution procedure that this or any other court may order or that the Parties may agree to.

(ECF No. 128, at 7.) The Court may reject this change even if the first category of changes is accepted.

The Order of January 20, 2017, did not distinguish between the two categories of changes Rapid Systems requests. Rapid Systems respectfully submits that the first category of requested changes should be beyond dispute because this litigation necessarily involves regular consultation with French lawyers on issues of French law arising in this litigation. As for the second requested change – deleting the word "this" – the Court erred by giving undue deference to the existing language of the Stipulated Protective Order. Giving the Stipulated Order's language only the limited deference that is appropriate, the Court should effectuate the federal policy of allowing discovery to be used in other proceedings if the discovery was obtained in good faith for its relevance in the instant proceeding.

## BACKGROUND

**I.      Issues of French Law in This Litigation**

At the heart of this case is a contract governed by French law: the Exclusive Distributorship Agreement dated June 1, 2001. (*See* **Exhibit 1.**)[3] This contract, the "EDA," has a French governing law clause. (EDA § 26.) Under the EDA, Rapid Systems granted CDS SARL and C.D.S. Inc. – companies controlled by Jerome Marechaux, a citizen of France domiciled in France – an exclusive license to sell Rapid Systems' product called "Portfoliopad." (EDA § 4.1.)

In this litigation, the parties are disputing ownership of what they call "Agencypad." The EDA is at the heart of this dispute over Agencypad because the EDA provides that any *evolution* of Portfoliopad belongs to Rapid Systems:

> [C.D.S. Inc. and CDS SARL] acknowledge and agree that the Intellectual Property Rights shall remain the property of [Rapid Systems]. . . . Any intellectual property rights in any new inventions, designs or processes which evolve in the Portfoliopad Software and/or the Source Code and/or the Portfoliopad System . . . shall vest in, remain and be the sole property of [Rapid Systems], notwithstanding that same have been commissioned or developed by [C.D.S. Inc. or CDS SARL].

(EDA § 15.1.) Agencypad is a "new invention[], design[] or process[] which evolve[d] in the Portfolipad Software and/or the Source Code and/or the Portfoliopad System."

Thus, § 15.1 of the EDA is the basis of Rapid Systems' Nineteenth Defense in Defendants' Second Amended Answer, Counterclaims and Jury Demand:

---

[3] In this Memorandum, all references to exhibits are references to exhibits to the accompanying Declaration of Ihsan Dogramaci dated February 1, 2017.

4

Nineteenth Defense

> Plaintiff's claims are barred by operation of Section 15.1 of the 2001 Exclusive Distributorship Agreement, which provides: "Any intellectual property rights in any new inventions, designs or processes which evolve in the Portfoliopad Software and/or the Source Code and/or the Portfoliopad System, whether pursuant to the provisions of this Agreement or otherwise shall vest in, remain and be the sole property of [Rapid Systems CC], notwithstanding that same have been commissioned or developed by" C.D.S. Inc. or CDS SARL. The intellectual property rights claimed by plaintiff either are rights in "the Portfoliopad Software and/or the Source Code and/or the Portfoliopad System" or are rights in "new inventions, designs or processes which evolve[d]" from that.

(ECF No. 139, at 22.) The Nineteenth Defense goes on to flag the controlling force of French law: "Defendants hereby give notice pursuant to Federal Rule of Civil Procedure 44.1 of an issue of foreign law, because the 2001 Exclusive Distributorship Agreement is governed by the law of France." (*Id.*)

In addition, the EDA includes a no-contest clause, under which C.D.S. Inc. and CDS SARL "undert[ook] and agree[d] never to challenge, contest or call into question the validity or ownership of the Intellectual Property Rights pertaining to [the Portfoliopad Software and the Portfoliopad System]." (EDA § 15.2.) This is the basis of Rapid Systems' Fifteenth Defense, which also invokes French law. (ECF No. 139, at 21.)[4]

Furthermore, Rapid Systems' survival depends on the EDA's provision for regular payments by C.D.S. Inc. and CDS SARL to Rapid Systems. (*See* ECF No. 7,

---

[4] Section 15.2 of the EDA is also the basis of a proceeding Rapid Systems instituted in the Commercial Court of Paris, a court that C.D.S. Inc., CDS SARL and Rapid Systems agreed is the exclusive forum for resolving disputes "arising with" the EDA. (EDA § 26.) The Commercial Court of Paris rendered a decision in November 2016 that is on appeal.

Letter from Ihsan Dogramaci to Hon. Victor Marrero dated May 4, 2016, at 2 (in opposition submitted in letter form as requested by the Court, representing that "Rapid Systems depends on C.D.S. Inc. and CDS SARL for 75% of its revenue").) When C.D.S. Inc. successfully applied to this Court for a preliminary injunction, C.D.S. Inc. represented that it would continue to make regular payments to Rapid Systems as required by the French law-governed EDA. (*See* ECF No. 54, Tr. of Hr'g conducted June 3, 2016, at 354:8-9.)

Besides the EDA, there is another French law-governed contract that is important to this case. The so-called "Franchise Contract" of April 1, 2003. (*See* **Exhibit 2.**) This French law-governed agreement authorized Rapid Systems to use the trademark "CDS" for a time. Questions about the significance of the Franchise Contract have often arisen in this litigation. For example, at the parties' very first appearance for oral argument, on May 6, 2016, Rapid Systems expressed a concern that the Marechaux Parties were asking this Court for relief that would push Rapid Systems into a situation where the Marechaux Parties would claim trademark infringement against Rapid Systems based on Rapid Systems' use of the "CDS" brand that was licensed by the Franchise Contract. (*See* ECF No. 28, Tr. of Hr'g conducted May 6, 2016, at 32:12-16.) Indeed, the Marechaux Parties, through their French counsel, later did just that. (*See* ECF No. 54, Tr. of Hr'g conducted June 3, 2016, at 313:13 - 316:9.)

Necessarily, therefore, the parties are advised by French lawyers concerning issues that are at the heart of this litigation. It has always been so. Rapid Systems' very first filing in this case – a letter of May 3, 2016, to Judge Marrero (ECF No. 7-1) – emphasizes the centrality of the French law-governed EDA.

**II.     The Stipulated Protective Order**

On October 19, 2016, the parties submitted to the Court the document that the Court then endorsed and entered on the docket as the Stipulated Protective Order (ECF No. 128). This Stipulated Protective Order is "two-tiered": A party receiving documents marked "CONFIDENTIAL" may disclose them to persons listed in Paragraph 6, and a party receiving documents marked "CONFIDENTIAL – ATTORNEYS' EYES ONLY" may disclose them to persons listed in Paragraph 7. In each of Paragraphs 6 and 7, the list begins by referencing the parties' attorneys: Paragraph 6(a) allows documents to be shown to "the attorneys for the Parties," and Paragraph 7(a) is more restrictive, allowing documents to be shown only to "the outside attorneys for the Parties." (*Id.*, at 8-9.)

Nowhere does the Stipulated Protective Order say that "attorneys for the Parties" means *attorneys who have appeared before this District Court.* Of course, the parties may be advised by more lawyers than those who have appeared and represent them before the Court. That is natural and to be expected – even if the case had involved solely issues of United States law. And in a case like this it is not only natural, it is necessary, because issues of French law are at the heart of this case. Rapid Systems has been regularly advised by French lawyers, and Rapid Systems has shared discovery in this case (but not documents marked "Attorneys' Eyes Only") with its French lawyers so that Rapid Systems can be advised of its rights in this litigation.

In December of last year, when the parties were about to produce to one another commercially sensitive computer source code, Rapid Systems proposed to the Marechaux Parties that documents produced with an "ATTORNEYS' EYES ONLY" stamp should not be shown to lawyers outside of the United States. Counsel for Rapid

Systems was surprised to hear, in response, that even documents marked "CONFIDENTIAL," according to the Marechaux Parties, should not be shown to lawyers outside of the United States. This is simply wrong. It is not what the Stipulated Protective Order says. If the Stipulated Protective Order said that, then the Stipulated Protective Order would hobble Rapid Systems' ability to protect its rights in this litigation.

Whether "attorneys for the Parties" means *attorneys who have appeared before this District Court* (contrary to the plain meaning of the phrase "attorneys for the Parties") is one issue. An entirely separate issue is whether Rapid Systems can use documents obtained by discovery in this case in related French court proceedings. On this point, as the Court's Order of January 20, 2017, notes, the Stipulated Protective Order says that "Litigation Materials . . . may be used only for purposes of *this* litigation." (ECF No. 128, at 7 (emphasis supplied).) But the parties are litigating in multiple fora. And the Stipulated Protective Order goes on to state that "litigation" means "any . . . judicial proceeding" and "any mediation or other alternative dispute resolution procedure that this *or any other court* may order or that the Parties may agree to." (*Id.* (emphasis supplied).)

### III.   After the Stipulated Protective Order Was Entered, Rapid Systems Discovered the Marechaux Parties' Secret Project to Replace Agencypad

After the Stipulated Protective Order had been entered, the Marechaux Parties disclosed that since June 2015 they have been secretly working on a software application that would replace Agencypad. (*See* ECF No. 132, Letter from Jeremy E. Deutsch to Hon. Victor Marrero dated Oct. 21, 2016; *see also* ECF No. 133, Letter from Ihsan Dogramaci to Hon. Victor Marrero dated Oct. 25, 2016.) Then the Court granted Rapid Systems leave to amend its Answer to add counterclaims based on the discovery of

this secret project. (ECF No. 138 (Order), at 9; *see also* ECF No. 139 (Defs.' Sec. Am. Ans., Counterclaims and Jury Demand).) Those counterclaims were unknown when the parties submitted the Stipulated Protective Order to the Court.

Furthermore, the discovery of this secret project cast in an entirely new light the claims that had already been asserted. For the Marechaux Parties' secret project to replace Agencypad strongly indicates that the Marechaux Parties always knew Agencypad does not belong to them.

In December 2016, the Marechaux Parties began producing to Rapid Systems documents concerning the design, development and marketing of their secret, new software that Rapid Systems had discovered only after the entry of the Stipulated Protective Order. Rapid Systems had sought these documents for their relevance to the new claims in this litigation. For example, they demonstrate Jerome Marechaux's and other individual defendants' breach of their fiduciary duty to C.D.S. Inc. if, as they claim, C.D.S. Inc. owns Agencypad.

## IV. The Secret Project Appears Relevant to Claims that the Marechaux Parties Said Can *Only* Be Pursued in the Commercial Court of Paris

Documents relating to the Marechaux Parties' secret project to create a replacement of Agencypad have obvious relevance to Rapid Systems' rights under the EDA. For example, the EDA has a non-compete provision. (EDA § 18.) But the Marechaux Parties agreed to an exclusive forum selection clause in the EDA. They selected the Commercial Court of Paris as the exclusive forum for the French law-governed contract. (EDA § 26.)

## V. The Court's Order

On January 12, 2017, Rapid Systems submitted a five-page letter to the

9

Court with two purposes. First, the letter requested, pursuant to Paragraph 11 of the Stipulated Protective Order, an "expedited decision" on whether the Marechaux Parties had improperly designated certain documents "Attorneys' Eyes Only." Secondly – with one page remaining in the five-page limit for letters to the Court – Rapid Systems requested, pursuant to Section II.B of the Court's Individual Practices and Paragraph 20 of the Stipulated Protective Order, a pre-motion conference in contemplation of a motion to modify the Stipulated Protective Order.

On January 17, 2017, the Marechaux Parties sent the Court a letter opposing both of Rapid Systems' requests. Regarding the requested changes to the language of the Stipulated Protective Order, the Marechaux Parties argued that discovery produced by an adversary should not be shown to the Commercial Court of Paris – the exclusive forum for resolving disputes "arising with" the EDA or "concerning" the Franchise Contract. They also defended the surprising position they had expressed in December 2016, that "attorneys for the Parties," as the phrase is used in the Stipulated Protective Order, means *attorneys who have appeared before this District Court.*

On January 20, 2017, the Court issued its Order denying Rapid Systems' request without entertaining a pre-motion conference or allowing Rapid Systems an opportunity to file its motion.

## ARGUMENT

### I. Reconsideration is Appropriate

Reconsideration of the Court's January 20, 2017 Order is appropriate because the Order was issued without providing Rapid Systems an opportunity to brief its motion. Rapid Systems' letter of January 12, 2017, served two purposes. **First,** Rapid Systems' wrote pursuant to paragraph 11 of the Stipulated Protective Order, which says

10

that a dispute about a producing party's designation of a document "may be presented to the Court by letter motion for expedited decision." (ECF No. 128, at 11.) Accordingly, the first four pages of Rapid Systems' January 12, 2017 letter requests an expedited decision on a dispute about the Marechaux Parties' designation of certain documents. ***Secondly,*** however, Rapid Systems wrote to request "a small modification of the Stipulated Protective Order's language." (Letter from Ihsan Dogramaci to Hon. James L. Cott dated Jan. 12, 2017, at 1.) Rapid Systems' letter stated that this second request was made "pursuant to Section II.B of your Honor's Individual Practices and Paragraph 20 of the Stipulated Protective Order." (*Id.*, at 1.)

Section II.B of the Individual Practices of Magistrate Judge James L. Cott (the "Individual Practices") requires a conference prior to filing the motion, which shall be requested by a pre-motion letter. Paragraph 20 of the Stipulated Protective Order says, "a Party may at any time apply to the Court for modification of this Protective Order pursuant to a motion brought in accordance with the rules of the Court." (ECF No. 128, at 16.) Accordingly, approximately one page-worth of text in Rapid Systems' January 12, 2017 letter describes the motion Rapid Systems would make. Section I.A of the Individual Practices caps letters to the Court at five-pages, and Rapid Systems stayed within that cap by limiting the length of its request for a pre-motion conference.

District courts may construe a letter as a motion if the letter contains sufficient detail on the relevant issues but otherwise must allow a party to file a motion. *See In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011). Here, Rapid Systems' pre-motion letter did not afford an opportunity to set forth sufficient detail on the relevant issues. The Court therefore should not have treated the letter as a motion on the matter of

11

the proposed changes to the Stipulated Protective Order's language. Accordingly, reconsideration is appropriate.

## II. Legal Standard Governing Availability of Discovery for Use in Other Proceedings

Setting aside the issue of what deference is owed to the already-entered Stipulated Protective Order, Second Circuit precedent holds that Rule 26 should not prevent discovery obtained in good faith (*i.e.*, for use in the litigation at hand) from being used in other actions. In *Dove v. Atlantic Capital Corp.*, 963 F.2d 15 (2d Cir. 1992), the defendant sought discovery from a non-party against whom it had brought an action in the United Kingdom. *Id.* at 16-17. The defendant made no secret "that it intended to use any relevant discovery material in the UK litigation." *Id.* at 17. The non-party, requesting a protective order to prevent use of the discovery in the UK litigation, "presented to the district court a letter from a London solicitor indicating that there is no established practice in the UK of examining potential witnesses under oath prior to trial." *Id.* But the district court refused the non-party's request for a protective order, and the Second Circuit affirmed. According to the Second Circuit: "[W]here the discovery sought is relevant to a good faith defense in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order." *Id.* at 19; *accord In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 246 (S.D.N.Y. 2009) (rejecting the "assertion that the use of discovery materials in a foreign jurisdiction with less permissive discovery rules is an improper motive or otherwise constitutes good cause to keep such discovery under seal.").

## III. Legal Standard Governing Modification of the Protective Order

The applicable standard governing modification of an already-entered protective order differs depending on whether the parties have reasonably relied on the

already-entered protective order. If there has been reasonable reliance, then the so-called "*Martindell* standard" applies. *See, e.g.*, *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 318 (D. Conn. 2009) (referring to "the *Martindell* standard"). In that event, under *Martindell*, the protective order can be modified only on "a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)).

But the standard is less stringent if there has not been "reasonable reliance" on the already-entered protective order. In that case, the Court need not find a "compelling need" or "extraordinary circumstance" as required by *Martindell* but may modify the Stipulated Protective Order simply by "balancing the parties' interests." *In re EPDM Antitrust Litig.*, 255 F.R.D. at 318.

Typically, four factors are weighed to determine whether there has been reasonable reliance: "(1) the scope of the protective order; (2) the language of the protective order; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *See In re EPDM Antitrust Litig.*, 255 F.R.D. at 318 (modifying protective order to allow use of discovery in Canadian litigation); *accord Tradewinds Airlines, Inc. v. Soros*, Nos. 08 Civ. 5901, 10 Civ. 8175, 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016); *The Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 287 F.R.D. 130, 132 (S.D.N.Y. 2012).

Here, all four factors show that there has not been reasonable reliance. First, regarding the scope of the Stipulated Protective Order, it applies to all "Litigation

Materials." It is "a 'blanket' order covering all documents produced during the litigation, not a targeted order covering only certain documents." *Tradewinds Airlines*, 2016 WL 3951181, at *2. Therefore the first factor weighs against a finding of reasonable reliance. *Id.*; *see also Charter Oak Fire Ins.*, 287 F.R.D. at 132 (same); *In re EPDM Antitrust Litig.*, 255 F.R.D. at 319-320 (same).

Second, regarding the language of the Stipulated Protective Order, it explicitly provides that it may be modified:

> The provisions of this Protective Order may be modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this Protective Order pursuant to a motion brought in accordance with the rules of the Court.

(ECF No. 128, at 16.) It also repeatedly refers to the possibility that matters may be "otherwise ordered by the Court." (*Id.*, at 8, 9). This establishes that the second factor weighs against a finding of reasonable reliance. *See Tradewinds Airlines*, 2016 WL 3951181, at *2 ("[T]he language of the Order supports permitting modification because it specifically provides that either party may seek changes to the Order."); *Charter Oak Fire Ins.*, 287 F.R.D. at 132 (noting that the protective order "specifically provides that '[a]ny party may at any time make a motion requesting that the Court modify this Order . . . .'"); *In re EPDM Antitrust Litig.*, 255 F.R.D. at 321 (noting that the protective order contemplated the possibility of its future modification by the court).

Third, regarding the "level of inquiry the court undertook before granting the order," this factor weighs against finding reasonable reliance because the protective order was stipulated, and "[a] protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good

14

cause." *In re EPDM Antitrust Litig.*, 255 F.R.D. at 321; *accord Tradewinds Airlines*, 2016 WL 3951181, at *2 ("The level of inquiry undertaken before the Order was entered also weighs in favor of modification because the Court 'so ordered' the parties' stipulation without having cause to determine whether all the documents covered actually warranted protection."); *Charter Oak Fire Ins.*, 287 F.R.D. at 133 (same).

As for the fourth and final factor, that also weighs against a finding of reasonable reliance, because the documents that have been produced are relevant to the claims and defenses in this Court, and therefore would have to have been produced regardless. *See Tradewinds Airlines*, 2016 WL 3951181, at *2 ("[T]he nature of the reliance on the Order weighs in favor of modification because there is no indication that the [d]efendants relied on the Order to produce documents they would not have otherwise disclosed."); *Charter Oak Fire Ins.*, 287 F.R.D. at 133-34 (same); *In re EPDM Antitrust Litig.*, 255 F.R.D. at 323 (same).

Consequently, the strict *Martindell* standard does not apply in this case.

**IV.   On Reconsideration, the Court Should Modify the Protective Order**

    A.    *The Court Should Modify Paragraphs 6(a) and 7(a)*

The first category of modifications requested by Rapid Systems will stop the Marechaux Parties' surprise attempt to modify the Stipulated Protective Order by twisting the words "attorneys for the Parties" so that those words mean *attorneys who have appeared before this District Court.* As discussed above, the Marechaux Parties' construction of the Stipulated Protective Order is not only contrary to what the language plainly means, it is also contrary to what the parties must have intended because issues of French law are at the heart of *this* litigation pending in this Court. As soon as the Marechaux Parties produced documents in this case, Rapid Systems shared certain of

those documents with its French lawyers, because French law determines rights and obligations in *this* litigation. Given the central place of French law in *this* litigation, the parties would be prevented from fairly litigating their dispute if the Marechaux Parties' unreasonable and arbitrary view were to prevail.

It is the Marechaux Parties' position that would require a modification of the Stipulated Protective Order's language. Indeed, Rapid Systems' application seeks a modification precisely to effectuate the Marechaux Parties' position – but only with respect to documents marked "ATTORNEYS' EYES ONLY." Rapid Systems has not shared documents marked by the Marechaux Parties as "ATTORNEYS' EYES ONLY" with its French lawyers. And Rapid Systems learned of the Marechaux Parties' position only after proposing to the Marechaux Parties that no "ATTORNEYS' EYES ONLY" documents be shared with lawyers outside the United States.

B.   *The Court Should Modify Paragraph 5*

As for the second category of modifications requested by Rapid Systems – modifications that would let documents discovered in this litigation be used in the French court having exclusive jurisdiction over disputes arising under the parties in this litigation's French law-governed contracts – this is justified because otherwise the Marechaux Parties may succeed in avoiding responsibility for the audacious disregard of their contractual obligations.

Given that Rapid Systems obtained the relevant discovery material in good faith – because the material is relevant to claims and defenses in this litigation – and given that there has been no "reasonable reliance" on the already-entered Stipulated Protective Order, the Court should follow the precedents set by *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992), and *In re Parmalat Securities Litigation*, 258

F.R.D. 236, 246 (S.D.N.Y. 2000), and allow the documents to be used in the exclusive forum selected by C.D.S. Inc. and CDS SARL in the French law-governed EDA. Indeed, even if the more onerous *Martindell* standard is applied, "courts within this circuit have found there to be a 'compelling need' or 'extraordinary circumstance' warranting modification where a blanket protective order is entered without a showing of good cause." *Tradewinds Airlines*, 2016 WL 3951181, at *2 (citing *Charter Oak Fire Ins.*, 287 F.R.D. at 132). Here, the Court could not possibly have found good cause for entering the Stipulated Protective Order because the Marechaux Parties' secret project to replace Agencypad was not yet known.

## CONCLUSION

For the reasons stated above, the Court should reconsider its Order and modify the Stipulated Protective Order.

Dated: New York, New York
      February 1, 2017

Respectfully submitted,

    */s/ Ihsan Dogramaci*
Ihsan Dogramaci
  e-mail: idogramaci@idlawoffice.net
THE LAW OFFICE OF IHSAN DOGRAMACI
1120 Avenue of the Americas, 4th Floor
New York, NY 10036
tel: (212) 309-7580
fax: (646) 568-3727

*Counsel for Rapid Systems CC, CDS LLC, and Bradley Zetler*