# The Law Office of Ihsan Dogramaci

1120 Avenue of the Americas, 4th Floor
New York, NY 10036

Tel: (212) 309 7580
Fax: (646) 568 3727

Sender's e-mail:
idogramaci@idlawoffice.net

February 8, 2017

**BY ECF**

Hon. James L. Cott
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 1360
New York, NY 10007

    Re:    *C.D.S. Inc. v. Zetler et al.*, No. 16 Civ. 3199 (VM) (JLC)

Dear Judge Cott:

    We represent defendants/counterclaim plaintiffs Rapid Systems CC, CDS LLC, and Bradley Zetler (collectively, "Rapid Systems") in this case. We write to state Rapid Systems' position on a request that was communicated to us last night by plaintiff/counterclaim defendant C.D.S. Inc. and counterclaim defendants Jerome Marechaux, Christelle Riot, Jerome Viollon, Christophe Racle, and CDS SARL (collectively, the "Marechaux Parties").

    The Marechaux Parties stated to us that they intend to hire an independent firm to conduct a forensic investigation of what has happened to their electronic documents. They requested that all due dates be adjourned for approximately three weeks while the independent firm investigates and reports.

    This request will principally affect the depositions of the Marechaux Parties. Most of the Marechaux Parties have still not appeared for their depositions, because their new counsel requested and was granted time to familiarize themselves with the case. For its part, Rapid Systems has brought Bradley Zetler to New York from Cape Town, South Africa, and Mr. Zetler has given his second deposition in this case. Rapid Systems has also made personnel available remotely for depositions, and three of those depositions have been taken. Only two depositions of Rapid Systems personnel remain.

    This morning Rapid Systems e-mailed the Marechaux Parties, stating three conditions on Rapid Systems' consenting to the Marechaux Parties' request. Agreement has been reached except on the following important condition: that the Marechaux Parties instruct their French software developers to cooperate and to make available to the independent investigators all

documents in the developers' possession, custody or control that relate to the secret, new software application which gave rise to various counterclaims against them. In particular, there are two software vendors that the Marechaux Parties have used: one is called "23Prod." The other is an individual named Jonathan da Costa.

These software developers are in France: A subpoena directed to them would have to be served according to the procedure set forth in the Hague Evidence Convention, 23 U.S.T. 2555; T.I.A.S. No. 7444; 847 U.N.T.S. 231, *reproduced in* 28 U.S.C.A. following § 1781. We have been advised by Legal Language services, a firm that specializes in assisting with service of process and of subpoenas overseas (*see* https://www.legallanguage.com/), that the timeframe for obtaining discovery from a person or entity in France under the Hague Evidence Convention would necessarily be seven to nine months. The Marechaux Parties have only recently produced discovery from which Rapid Systems could glean the identities or existence of these third party software developers. Thus, Rapid Systems, through no fault of its own, has been left with insufficient time in this case's discovery schedule to subpoena these French software developers.

It is important that the Marechaux Parties instruct 23Prod and Jonathan da Costa to cooperate because the evidence to date strongly indicates that the Marechaux Parties have not produced highly material documents relating to their secretly developed, new software. As I explained in my e-mail of this morning to the Marechaux Parties' counsel (emphasis supplied):

> [T]here is evidence that CDS has not produced highly material documents relating to its new software. **First,** the software that has been produced appears to be in a rudimentary stage of production, but 23Prod has invoiced CDS for amounts that it would be impossible to invoice for merely rudimentary work, and Gael Roussel has written to prospects that the product will be ready for use within months. **Second,** we have been told that 23Prod maintained no version history of its work, but this is not credible. It would be a departure from the most basic industry practice and professional standards. **Third,** we have been told that there are no specification documents for this new product — neither technical specifications or functional specifications. Again, this is not credible. It would be a departure from the most basic industry practice. **Fourth,** we can see that the following urls have been registered by CDS SARL: cds-onlinebooking.com and cds-bookingonline.com, but no documents have been produced about those urls. **Fifth,** I attach a screenshot taken in October 2016 of an Internet browser that had been directed to the address demo.cdsparis-dev.com. Apparently, this site was live, but now it has been taken down. It was even live as recently as during the time that the Special Master wrote his report on the new product, but the Special Master's report makes no mention of it. Now a similar page can be found at https://app.webforfashion.com/login. It is inexplicable that this would not have been provided to the

The Law Office of **Ihsan Dogramaci**

Page 3
> Special Master. For all these reasons, Rapid Systems insists that your clients instruct 23Prod to cooperate with the independent firm and make all documents relating to the new product that are in its possession, custody or control available to the independent firm.

The same reasoning applies to the other software developer, Jonathan da Costa.

Furthermore, the one witness for the Marechaux Parties who has given a deposition in the past six weeks – the Marechaux Parties' New York-based software developer, who gave his deposition two days ago – has now testified that he has never received any sort of written document preservation notice and was never even orally told anything about preserving documents until mid-January of this year. Meanwhile, his mobile phone and computer workstation were set to automatically delete text messages and Skype chats every 30 and 14 days, respectively, because (he testified) he himself adjusted their settings that way. Furthermore, it has been discovered that the Marechaux Parties' representation to your Honor at the conference conducted on February 3 – that their e-mail accounts do not use any offsite server – was simply not true. We have discovered that the Marechaux Parties do use a cloud-based e-mail service. More recently, the Marechaux Parties have represented to us that the cloud-based provider they use does not offer the possibility of preserving e-mails for more than 30 days. This representation is simply not credible. Indeed, based on our investigation of information available online, it appears to be another false representation. Counsel for the Marechaux Parties have also represented to us they have been relying on counterclaim defendant Christophe Racle (the project manager for their secret, new software) to identify the locations of relevant documents and to collect the documents from those locations. And we know that the Marechaux Parties have repeatedly made direct misrepresentations to this Court, as discussed in letters docketed as ECF Nos. 192 and 205. (And more recently, Mr. Gugnishev testified at his deposition that the Marechaux Parties' representation to this Court that Mr. Zetler "took . . . e-mail access away" from the Marechaux Parties, *see* ECF No. 134, at 2, is yet another of their numerous, direct misrepresentations to this Court.)

The Marechaux Parties have offered no basis for withholding their assent to Rapid Systems' simple demand that they instruct 23Prod and Jonathan da Costa to cooperate with the independent investigative firm and make available relevant documents in their possession, custody or control. Rapid Systems respectfully requests that the Court order the Marechaux Parties to comply.

Respectfully submitted,

*/s/ Ihsan Dogramaci*

Ihsan Dogramaci

cc: All counsel of record (by ECF)