**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| C.D.S. Inc., | |
| *plaintiff*, | |
| - against - | 16 Civ. 3199 (JSR) |
| Bradley Zetler; CDS, LLC; Rapid Systems CC; *and* John Does 1-5, | ECF CASE |
| *defendants*, | |
| - and - | |
| Amazon Web Services, Inc.; *and* Rackspace US, Inc., | |
| *nominal defendants.* | |

| |
|---|
| Rapid Systems CC, CDS LLC *and* Bradley Zetler, |
| *counterclaim plaintiffs*, |
| - against - |
| C.D.S. Inc.; Diane Treat; Jerome Viollon; Christelle Riot; Christophe Racle; Jerome Marechaux; *and* CDS SARL, |
| *counterclaim defendants.* |

**RAPID SYSTEMS' PROPOSED JURY INSTRUCTIONS**

## TABLE OF CONTENTS

I.   PROPOSED INSTRUCTIONS FOR THE BEGINNING OF THE TRIAL ...................................................... 1
   A.   OPENING INSTRUCTIONS ................................................................................................................. 1
   B.   "COUNSEL," "COURT" AND RULINGS ON OBJECTIONS ......................................................................... 3
   C.   RESPONSIBILITIES OF THE JURY ......................................................................................................... 3
   D.   NATURE OF THE EVIDENCE .............................................................................................................. 4
   E.   DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................................................................................... 5
   F.   CREDIBILITY OF WITNESSES .............................................................................................................. 6
   G.   DEPOSITIONS ................................................................................................................................ 6
   H.   STIPULATIONS ............................................................................................................................... 6
   I.   JUDICIAL NOTICE .......................................................................................................................... 7
   J.   WHAT IS NOT EVIDENCE ................................................................................................................. 7
   K.   NOTE-TAKING PERMITTED .............................................................................................................. 8
   L.   ORDER OF THE TRIAL ..................................................................................................................... 8

II.   PROPOSED INSTRUCTIONS FOR DURING THE TRIAL ............................................................... 9
   A.   DEPOSITION IN LIEU OF LIVE TESTIMONY .......................................................................................... 9
   B.   EXPERT OPINION ........................................................................................................................ 10

III.   PROPOSED INSTRUCTIONS FOR AFTER THE CLOSE OF EVIDENCE ............................................. 10
   A.   GENERAL INSTRUCTIONS .............................................................................................................. 10
      1.   Witness Credibility ............................................................................................................. 10
      2.   Witness Impeachment By Inconsistent Statement or Conduct ........................................... 11
      3.   Failure to Produce Available Evidence ............................................................................... 12
      4.   Suppression of Evidence ..................................................................................................... 12
   B.   BASICS OF CORPORATE GOVERNANCE ............................................................................................ 12
   C.   RAPID SYSTEMS' CLAIM OF COPYRIGHT INFRINGEMENT AND C.D.S. INC.'S CLAIM FOR DECLARATORY RELIEF
   RELATING TO THE COPYRIGHTS .............................................................................................................. 15
      1.   Copyright defined ............................................................................................................... 15
      2.   Nature of the action ........................................................................................................... 16
      3.   The word "copying" is shorthand ....................................................................................... 16
      4.   Copyright protects the expression of the idea, not the idea expressed ............................. 17
      5.   How copyright is obtained .................................................................................................. 17
      6.   The two works that Rapid Systems claims were unlawfully copied .................................... 18
      7.   Presumption created by registration of the copyright ....................................................... 19
      8.   Infringement generally ....................................................................................................... 19
      9.   Ownership of a valid copyright ........................................................................................... 20
      10.   The element of originality .................................................................................................. 20
      11.   Authorship of the original work: The case of Portfoliopad .................................................. 21
      12.   Authorship of the original work: The case of Agencypad .................................................... 22
      13.   The first possibility: Agencypad is unprotectable if it is a derivative work that is entirely
      pervaded by Portfolipoad and it is not owned by Rapid Systems ................................................... 23
      14.   The second possibility: Agencypad's copyright is wholly owned by Rapid Systems .............. 24
         a.   Whether Rapid Systems CC owns Alex Gugnishev's Contributions ........................................... 25

      b.     Whether Rapid Systems CC was Alex Gugnishev's employer within the meaning of the Copyright Act ...............25
      c.     Whether Rapid Systems owns Mr. Nagel's, Mr. van Zyl's and Mr. Zetler's contributions to Agencypad...............27
    *15.*    *Whether Rapid Systems CC and C.D.S. Inc. were both employers of Alex Gugnishev within the meaning of the Copyright Act* ............................................................................................ **29**
    *16.*    *Joint ownership* ................................................................................................ **30**
    *17.*    *The fourth possibility: The copyright for some parts of Agencypad is owned by C.D.S. Inc. and for other parts is owned by Rapid Systems CC.* ................................................... **32**
    *18.*    *The fifth possibility: Agencypad's copyright is wholly owned by C.D.S. Inc.* ........................... **32**
    *19.*    *Rapid Systems' Affirmative Defense of Equitable Estoppel* ..................................... **34**
    *20.*    *Unauthorized copying* ...................................................................................... **35**
    *21.*    *Calculation of damages* .................................................................................... **36**
    *22.*    *Damages – willful infringement* ........................................................................ **37**
D.    THE MEANING OF INDIRECT COPYRIGHT INFRINGEMENT ....................................................... **37**
E.    RAPID SYSTEMS CC'S CLAIM OF CONTRIBUTORY COPYRIGHT INFRINGEMENT .............................. **38**
F.    RAPID SYSTEMS CC'S CLAIM OF VICARIOUS COPYRIGHT INFRINGEMENT ..................................... **38**
G.    C.D.S. INC.'S CLAIM REGARDING THE AGENCYPAD TRADEMARK ........................................... **39**
H.    BRADLEY ZETLER'S, MAINBOARD LLC'S AND RAPID SYSTEMS CC'S CLAIM OF FRAUD ..................... **39**
I.    BRADLEY ZETLER'S, MAINBOARD LLC'S AND RAPID SYSTEMS CC'S CLAIM OF AIDING AND ABETTING FRAUD...... **41**
J.    COMPENSATORY DAMAGES FOR FRAUD OR AIDING AND ABETTING FRAUD ................................. **42**
K.    PUNITIVE DAMAGES FOR FRAUD OR AIDING AND ABETTING FRAUD ......................................... **43**
L.    C.D.S. INC.'S CFAA CLAIM ...................................................................................... **45**
M.    C.D.S. INC.'S TRADE SECRET MISAPPROPRIATION CLAIM ................................................... **47**
N.    C.D.S. INC.'S CONVERSION CLAIM .............................................................................. **48**
O.    C.D.S. INC.'S UNJUST ENRICHMENT/CONSTRUCTIVE TRUST CLAIM ....................................... **49**
P.    C.D.S. INC.'S FIDUCIARY DUTY CLAIMS AGAINST BRADLEY ZETLER ........................................ **49**
Q.    VARIOUS AFFIRMATIVE DEFENSES ASSERTED BY RAPID SYSTEMS ......................................... **50**
    *1.*    *Mr. Zetler's Affirmative Defense of Acquiescence* ............................................... **50**
    *2.*    *Mr. Zetler's Affirmative Defense of Ratification* .................................................. **51**
    *3.*    *Mr. Zetler's Affirmative Defense of Participation* ................................................. **51**
    *4.*    *Rapid Systems' Affirmative Defense of Waiver* ................................................... **51**
    *5.*    *Rapid Systems' Affirmative Defense of Unclean Hands* ......................................... **52**
    *6.*    *Affirmative Defense: Laches* ............................................................................ **53**
    *7.*    *Statute of Limitations Defense: Breach of Fiduciary Duty* ..................................... **55**
    *8.*    *Statute of Limitations: Conversion* .................................................................... **55**
    *9.*    *Statute of Limitations: Unjust Enrichment/Constructive Trust* ............................... **55**
    *10.*    *Statute of Limitations: Trade Secret Misappropriation* ........................................ **55**
R.    DAMAGES AGAINST MR. ZETLER FOR BREACH OF FIDUCIARY DUTY ....................................... **55**
S.    NATURE OF DERIVATIVE CLAIMS ............................................................................... **56**
T.    INSTRUCTION ON PLEADING IN THE ALTERNATIVE ......................................................... **56**
U.    BRADLEY ZETLER'S DERIVATIVE CLAIMS ON behalf OF C.D.S. INC. FOR UNJUST ENRICHMENT (NINTH AND ELEVENTH COUNTERCLAIMS) ............................................................................. **57**
V.    C.D.S. INC.'S DAMAGES FOR UNJUST ENRICHMENT ....................................................... **58**
W.    BRADLEY ZETLER'S DERIVATIVE CLAIM FOR C.D.S. INC. OF CORPORATE WASTE (EIGHTH AND TENTH COUNTERCLAIMS) .................................................................................................. **59**

X.    Bradley Zetler's Derivative Claims  for C.D.S. Inc. of Breach of Fiduciary Duty by Misappropriating a Business Opportunity ................................................................................................................. 60

Y.    Bradley Zetler's Derivative Claims for C.D.S. Inc. of Aiding and Abetting another's Breach of Fiduciary Duty by Misappropriating a Business Opportunity .................................................... 62

Z.    Bradley Zetler's Derivative Claim for C.D.S. Inc. of Breach of the Duty of Good Faith ................... 62

AA.    C.D.S. Inc.'s Damages for Corporate Waste, for Misappropriation of a Business Opportunity, or for Breach of the Duty of Good Faith ................................................................................................. 63

Rapid Systems respectfully requests that the Court charge the jury using the following proposed instructions. These include proposed instructions for some general and procedural matters. Where the Court does not use those proposals, and for other general and procedural matters, such as selection of a foreperson, the jury's right to see exhibits, *etc.*, Rapid Systems respectfully requests that the Court charge the jury using its customary instructions.

## I.     Proposed Instructions for the Beginning of the Trial

### A.     Opening Instructions[1]

Members of the jury, we are about to begin the trial of this case, some details of which you heard about during the jury selection. Before the trial begins, certain instructions are essential for a clear understanding of what will be presented to you and how you should conduct yourselves during the trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you as well as the nature of this case.

The party who commenced this lawsuit is called plaintiff. There is one plaintiff in this case. It is a corporation. Its name is "C.D.S. Inc." This corporation was formed in Delaware and is headquartered here in Manhattan. As I am about to tell you, this is not the only entity with the letters "C," "D", "S" in its name. So please keep in mind that this first one, the plaintiff, is called "C.D.S." followed by "Inc.": "C.D.S. Inc."

The parties who "C.D.S. Inc." sued are called defendants. In this case, there are three defendants.

The first of the three is Bradley Zetler. He resides in Cape Town, South Africa.

---

[1] <u>Source</u>: Adapted with extensive modifications from 3 Kevin F. O'Malley, Jay E. Grenig &

The second of the three defendants is a South African corporation that Bradley Zetler owns. It is called "Rapid Systems CC." But for many years that you will hear about in this lawsuit it did business under the name "CDS Cape Town." So there, you see, is another company that called itself "CDS." Today, however, it does business under the name "Mainboard."

The third of the three defendants is another company that Bradley Zetler owns. It is a U.S. entity, formed in Delaware. Originally it was named "CDS LLC." Not "C.D.S. Inc." That is the name of the plaintiff. Rather, it was "CDS LLC." Today it is named "Mainboard LLC."

In sum, there are three defendants whom C.D.S. Inc. sued: first, Bradley Zetler, second, Bradley Zetler's South African corporation Rapid Systems CC (which used to do business under the name "CDS Cape Town" but today does business as "Mainboard"), and, third, Bradley Zetler's U.S. company Mainboard LLC (which used to be called "CDS LLC").

The defendants have, in turn, sued plaintiff and other parties. For that reason, defendants are also called counterclaim plaintiffs. And the persons they have sued are called counterclaim defendants. In this case, there are seven counterclaim defendants. First, C.D.S. Inc., the plaintiff, is a counterclaim defendant. Another counterclaim defendant is a French company named "CDS SARL." Not "C.D.S. Inc." And not "CDS LLC." This one is called "CDS SARL." The rest of the counterclaim defendants are individual persons. Their names are Jerome Marechaux, Diane Treat, Jerome Viollon, Christelle Riot, and Christophe Racle.

So those are the plaintiff, the defendants, and the counterclaim defendants. Sometimes, when it is clear who I mean, I will refer to not just Rapid Systems CC but also Mr. Zetler or Mainboard LLC as simply "Rapid Systems."

## B.    "Counsel," "Court" and Rulings on Objections[2]

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

You will occasionally hear counsel for both sides challenging tactics used or questions posed by opposing counsel. It is the duty of the lawyer on each side of the case to object when the other side offers testimony or other evidence that the lawyer believes is not admissible. When I "sustain" an objection, I am excluding that evidence from this trial for a good reason. When I "overrule" an objection, I am allowing that evidence to be admitted. When I say, "admitted into evidence" or "received into evidence," I mean that the particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

You should not be prejudiced against a lawyer or the lawyer's client because the lawyer has made objections. If I "sustain" an objection to a question and the question goes unanswered by the witness, you should not infer anything from that question. You should not infer from any ruling or other comment I may make that I have an opinion on the merits of the case favoring one side or the other. I do not favor one side or the other.

## C.    Responsibilities of the Jury[3]

By your verdict you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberations at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

---

[2] Source: Adapted from 3 O'Malley et al., *supra*, § 101:01.

[3] Source: Adapted from 3 O'Malley et al., *supra*, § 101:01.

3

While the trial is in progress you must not discuss the case in any manner among yourselves or with anyone else. Nor should you permit anyone to discuss the case in your presence.

The lawyers are not allowed to speak with you during this case. When you see them at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to speak with the lawyers out of your presence regarding questions of law that require consideration by the Court alone.

Because you will be asked to decide the facts of this case, it is crucial that you give careful attention to the testimony and evidence presented. I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express an opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

### D.    Nature of the Evidence[4]

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

To constitute evidence, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

---

[4] Source: Adapted from 4 Leonard B. Sand & John F. Siffert, *Modern Federal Jury Instructions*, Instruction 74-1.

E.      **Direct and Circumstantial Evidence**[5]

The law recognizes two types of evidence: direct evidence and circumstantial evidence. Direct evidence is where a person testifies as to what she herself saw or heard or that which she has knowledge of by virtue of her own senses. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact. Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on all the evidence presented.

---

[5] <u>Source</u>: Adapted from 4 Sand et al., *supra*, Instruction 74-2.

5

F.   **Credibility of Witnesses**[6]

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness's opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness's memory; the witness's appearance and manner while testifying; the witness's interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness's testimony; and the reasonableness of the witness's testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

G.   **Depositions**

At some point in this case, you will hear or see testimony that has previously been provided at a deposition. Depositions contain sworn testimony that was taken earlier, with the lawyers for both sides being entitled to ask questions. In some cases, a deposition may be played for you from a video recording. Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

H.   **Stipulations**[7]

A "stipulation" is an agreement between both sides that certain things are true – that they are facts. You must regard these as true – that is, as facts. I will tell you what the stipulated facts are that you should accept as fact.

---

[6] Source: Adapted from 3 O'Malley et al., *supra*, § 101:43.

[7] Source: Adapted from 4 Sand et al., *supra*, Instruction 74-4.

## I.     Judicial Notice[8]

I may take judicial notice of certain facts or events which are not subject to reasonable dispute. When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

## J.     What Is Not Evidence[9]

A lawyer's question is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer on cross-examination may incorporate into a question a statement which assumes certain facts to be true, and ask the witness if the statement is true. If the witness denies the truth of a statement, and if there is no evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question. On the other hand, if the witness acknowledges the truth of the statement, you may, of course, consider the witness's answer as evidence that the statement is, in fact, true.

Testimony that is stricken or excluded is not evidence and may not be considered by you when you render your verdict. If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored. Also, if certain testimony is received for a limited purpose – such as for the purpose of assessing a witness's credibility – then you must follow the limiting instructions I give you.

Arguments by lawyers are not evidence because the lawyers are not witnesses. What they say to you in their opening statements and in their closing statements is intended to

---

[8] Source: Adapted from 4 Sand et al., *supra*, Instruction 74-3.

[9] Source: Adapted from 4 Sand et al., *supra*, Instruction 74-1, and 3 O'Malley et al., *supra*, § 101:40.

help you understand the evidence to reach your verdict. If, however, your recollection of the facts differs from the lawyers' statements, it is your recollection that controls.

Finally, statements which I may make concerning the quality of the evidence do not constitute evidence.

You are to consider only the evidence in this case, but in your consideration of the evidence you are not limited to the statements of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. You may draw from the facts that you find have been proved such reasonable inferences or conclusions as you feel are justified in the light of your experience.

### K.    Note-Taking Permitted[10]

During the trial, I will permit you to take notes. Of course, you are not obliged to take notes. If you do not take notes, you should not be influenced by the notes of another juror, but should rely upon your own recollection of the evidence. Because many courts do not permit note-taking by jurors, a word of caution is in order. You must not allow your note-taking to distract you from the proceedings. Your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest assets when it comes time to decide this case.

### L.    Order of the Trial[11]

The case will proceed as follows:

---

[10] Source: Adapted from 3 O'Malley et al., *supra*, § 101:15.

[11] Source: Adapted from 3 O'Malley et al., *supra*, § 101:02.

First, the lawyers for each side may make opening statements. What is said in opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

Second, after the opening statements, the parties will present evidence in support of their claims. Each side may cross-examine a witness called by the other side.

Third, after the evidence is presented, the lawyers from each side may present closing arguments explaining what they believe the evidence has shown and what inference you should draw from that evidence. What is said in the closing argument is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

## II.     Proposed Instructions for During the Trial

### A.     Deposition in Lieu of Live Testimony[12]

Testimony will now be presented through a deposition. A deposition contains the sworn, recorded answers to questions asked a witness before the trial. A witness's testimony may sometimes be presented in the form of a deposition if the witness is not present or if the testimony in court contradicts the witness's deposition testimony. Before this trial, attorneys representing the parties questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read to you today. You must give this deposition testimony the same consideration as if the witness had been present and had testified from the witness stand in court.

---

[12] Source: 3 O'Malley et al., *supra*, § 102:23.

### B.      Expert Opinion[13]

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses give their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

## III.    Proposed Instructions for After the Close of Evidence

### A.      General Instructions

#### 1.      Witness Credibility[14]

You have had the opportunity to observe the witnesses who testified live at trial. It is now your job to decide how believable each witness was in his or her testimony.

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

---

[13] Source: Adapted from 3 O'Malley et al., *supra*, § 104:40.

[14] Source: Adapted from 4 Sand et al., *supra*, Instruction 76-1; *see also* O'Malley et al., *supra*, § 105:01.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor or manner while testifying.

Consider the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

Consider any relation each witness may have with either side of the case and the manner in which each witness might be affected by the verdict. If you believe that any witness has shown himself or herself to be biased or prejudiced, either for or against either side in this trial, you may consider and decide whether that bias or prejudice has colored the testimony of the witness so as to affect the witness's desire and capability to tell the truth.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

## 2.   Witness Impeachment By Inconsistent Statement or Conduct[15]

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness's present testimony.

---

[15] <u>Source</u>: Adapted from 3 O'Malley et al., *supra*, § 105:04.

If you belief any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness.

### 3.   Failure to Produce Available Evidence[16]

If a party fails to produce evidence under that party's control and reasonably available to that party and not reasonably available to the adverse party, then you may infer that the evidence is unfavorable to the party who could have produced it and did not.

Note: *Rapid Systems refers to its pending Motion for an Adverse Inference Charge to the Jury and additionally requests the jury charge described therein.*

### 4.   Suppression of Evidence[17]

If you should find that a party willfully suppressed evidence in order to prevent its being presented in this trial, you may consider such suppression in determining what inferences to draw from the evidence or facts in the case.

### B.   Basics of Corporate Governance

I will now begin to discuss the substantive law that is at issue in this case. The plaintiff, C.D.S. Inc., has asserted [two] legal claims against the defendants which you must decide, and the counterclaim defendants have asserted various legal claims against the counterclaim defendants which you must decide. For each one of these claims asserted in either direction, I am going to instruct you on the law.

---

[16] Source: Adapted from 3 O'Malley et al., *supra*, § 104.26.

[17] Source: Adapted from 3 O'Malley et al., *supra*, § 104.27.

Before I turn to those claims, however, I am going to instruct you on certain points of the law about how corporations operate. These points are important because the plaintiff in this case, C.D.S. Inc., did not operate as the law says that corporations must operate. You will have to consider the law relating to how corporations operate when you draw inferences in this case regarding, for example, the intent of the corporation C.D.S. Inc.

A corporation such as C.D.S. Inc. is required to have a board of directors. The board of directors is a group of persons – each one being a director – who meet and who together, by following certain rules, make decisions on behalf of the corporation.

The board of directors is elected. The persons who elect them are the corporation's shareholders. When the shareholders vote, each shareholder's vote is counted according to the number of shares that she or he owns.

Since 2005, C.D.S. Inc. has had two shareholders. They are Jerome Marechaux and Bradley Zetler. But for most of that time, the two shareholders did not elect a board of directors. This was simply a failure to operate the corporation according to what the law provides.[18]

The law provides that it is the board of directors, and not shareholders, that has ultimate responsibility for the management of the corporation.[19]

---

[18] <u>Source</u>: Del. Code Ann. tit. 8, § 141(a) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation.").

[19] <u>Source</u>: *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693 (Del. Ch. 2005). As stated by the Delaware Court of Chancery in that case:

> A fundamental precept of Delaware corporation law is that it is the board of directors, and neither shareholders nor managers, that has ultimate responsibility for the management of the enterprise. Of course, given the large, complex organizations through which modern multi-function business corporations often operate, the law

Another important role in the operation of corporations is the role of officers. They are important because generally it is impractical for a board of directors to meet every day and make decisions to manage the daily business of the corporation. The board of directors may account for its practical inability to manage the day-to-day business by having corporate officers appointed: The board of directors causes the corporation to employ officers whom the board will instruct on managing the daily business of the corporation. The board can satisfy its obligations to the corporation by thoughtfully appointing officers, establishing goals and plans, and monitoring the officers' performance.[20]

The law thus requires corporate shareholders to delegate the management of the corporation. But the persons to whom management has been delegated owe strict duties to the corporation. As I will instruct you later, the directors and officers of the corporation are required to act with attention and care for the interests of the corporation. Furthermore, they are obliged not to place their own personal interests over the interests of the corporation.

Normally, the corporation's shareholders have no obligation to the corporation, but there is an exception to that rule: The exception is when a corporate shareholder finds

---

> recognizes that corporate boards, comprised as they traditionally have been of persons dedicating less than all of their attention to that role, cannot themselves manage the operations of the firm, but may satisfy their obligations by thoughtfully appointing officers, establishing or approving goals and plans and monitoring performance. Thus Section 141(a) of [the Delaware General Corporation Law] expressly permits a board of directors to delegate managerial duties to officers of the corporation, except to the extent that the corporation's certificate of incorporation or bylaws may limit or prohibit such a delegation.

*Id.* at 761 n.490 (quoting *Chapin v. Benwood Found.*, 402 A.2d 1205, 1211 (Del.Ch.1979)).

[20] *Id.*

himself able to exercise power over the corporation's management and does exercise that power. Then that shareholder has the same obligations as the corporation's directors and officers have: He must act with attention and care for the interests of the corporation, and he must not place his own personal interests over the interests of the corporation.[21]

Now I will turn to the various claims that the parties have asserted against one another in this case and that you must decide. To understand the issues in those claims, you will need to keep in mind these principles about how corporations operate.

### C. Rapid Systems' Claim of Copyright Infringement and C.D.S. Inc.'s Claim for Declaratory Relief Relating to the Copyrights

Note: *Plaintiff's declaratory judgment claims relating to copyright are encompassed in the jury charge relating to Rapid Systems' copyright infringement claim.*

In this case, Rapid Systems CC claims that the counterclaim defendants have infringed its copyright in the computer programs Portfoliopad and Agencypad. For its part, C.D.S. Inc. claims that it is the sole owner of any copyright in Agencypad. We will begin with the copyright claims. Then we will move on to the other counterclaims.

#### 1. Copyright defined[22]

The term "copyright" is the name for the protection that the law extends against certain kinds of unauthorized appropriation of a work by others. The term is derived from the fact that the copyright owner has the exclusive right to copy the work, and therefore may exclude others from copying the work.

---

[21] *See, e.g.*, *Cinerama, Inc. v. Technicolor Inc.*, 1991 WL 111134, at *19 (Del. Ch. June 24, 1991) ("[W]hen a shareholder, who achieves power through the ownership of stock, exercises that power by directing the actions of the corporation, he assumes the duties of care and loyalty of a director of the corporation."), *aff'd in part and rev'd on other grounds*, *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 372 (Del. 1993).

[22] Source: Adapted from 4 Sand et al., *supra*, Instruction 86B-1.

### 2.   Nature of the action[23]

The owner of a copyright generally has the right to exclude any other person from doing any of the following for a specific period of time: reproducing, distributing, performing, displaying, or using the work covered by copyright. The owner also has the right to exclude other persons from preparing derivative works based on the copyrighted work. Someone who does one of these things during the term of the copyright, and who has not been licensed by the copyright owner, is said to infringe the copyright.

### 3.   The word "copying" is shorthand[24]

For simplicity, I may sometimes just refer to "copying." That is, I may say that the copyright owner has the right to exclude other persons from "copying." But that is just shorthand. It is a short way of referring to the specific things that the owner has the right to exclude others from doing.

In general, there are five or six specific things that the word "copying" may stand for. But in this case, the parties are only ever concerned with the following three specific things that would infringe the copyright:

> i.    First, a copyright owner can exclude others from reproducing the copyrighted work.[25]

---

[23] <u>Source</u>: Adapted from 3B O'Malley et al., *supra*, § 160.01.

[24] *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) ("'The word "copying" is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106 [of 17 U.S.C.]." (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.2001))).

[25] 17 U.S.C. § 106 ("Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . .").

ii.    Second, a copyright owner can exclude others from preparing a derivative work.[26] A derivative work would be a work that is based on the copyright owner's copyrighted work, though it incorporates enough new material that it is a different work than the one it is based on.[27]

iii.   Third, the copyright owner can exclude others from distributing the copyrighted work.[28]

So when I speak of "copying" a copyrighted work, I mean any of those three specific things that would infringe the copyright.

### 4.    Copyright protects the expression of the idea, not the idea expressed[29]

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted. What can be copyrighted is the way that a tangible work expresses facts or ideas.

### 5.    How copyright is obtained[30]

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. The owner of the copyright may register the copyright by

---

[26] *Id.* ("Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: . . . (2) to prepare derivative works based upon the copyrighted work . . . .").

[27] *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 210-211 (S.D.N.Y. 2009) (A derivative work is one that is based on a preexisting work but is independently copyrightable).

[28] 17 U.S.C. § 106. ("Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: . . . (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . .").

[29] <u>Source</u>: Adapted from 3B O'Malley et al., *supra*, § 160:1.

[30] <u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions § 17.1.

completing a registration form and depositing with the Copyright Office a copy of the copyrighted work (or a copy of a portion of it). After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

### 6.    The two works that Rapid Systems claims were unlawfully copied

Rapid Systems claims infringement of the copyright in two software applications: first, the Portfoliopad software application, and, second, the Agencypad application. Rapid Systems has applied for and obtained copyright registrations for each of these two software applications. For the parts of Portfoliopad other than the data model, Rapid Systems applied for and received two registrations – one corresponding to what Rapid Systems called the "front end" and the other corresponding to what Rapid Systems called the "back end" of the code." Similarly for Agencypad: Rapid Systems applied for and received one registration for what it called "the front end" and another for what it called the "back end" of Agencypad. Rapid Systems also applied for and received a registration for the entire data model with which both the Portfoliopad and the Agencypad source code operate.

The fact that, for example, Portfoliopad's source code was registered separately from the data model does not mean that you must look at the source code and the data model in isolation to decide whether the copyright in Portfoliopad was infringed.[31]

---

[31] *Cf. Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998). In this case, the Second Circuit held that a trivia quiz book based on the *Seinfeld* television series infringed the copyright owned by the producer of the television series. Comparing the quiz book to the television series, the Second Circuit "treat[ed] *Seinfeld* – a discrete, continuous television series – as a single work." *Id.* at 138. It did not matter that each individual episode was "separately copyrighted." *Id.*

### 7.   Presumption created by registration of the copyright[32]

A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright, although that presumption of ownership may be rebutted. The party challenging the validity of the copyright has the burden to prove the contrary.

### 8.   Infringement generally[33]

To establish its copyright infringement claims, Rapid Systems CC must prove by a preponderance of the evidence, separately for each copyright-protected work:

- first, that Rapid Systems owns a valid copyright in the work it claims was infringed;

- second, that there was copying by the counterclaim defendants of Rapid Systems' copyrighted works; and

- third, that any elements of the works that the defendants copied in fact represent original and protectable expression.

I am now going to instruct you on each of these points, starting with the first one: whether Rapid Systems owns a valid copyright in the work it claims was infringed.

---

[32] The language of this proposed instruction is lifted directly from *Hamil America, Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir 1999). The Copyright Act provides that this presumption applies only if the registration was "made before or within five years after first publication of the work." 17 U.S.C. § 410(c). This condition is satisfied because Portfoliopad and Agencypad, being trade secrets, have never been published.

[33] Source: 6 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, Form 39-4, Defendants' Proposed Instruction No. 5 (Matthew Bender, Rev. Ed.).

### 9.   Ownership of a valid copyright[34]

If the presumption created by Rapid Systems' registrations is rebutted, then you must decide whether Rapid Systems is the owner of a work protected by the Copyright Act. To make a finding that Rapid Systems owns a work, you must find the following:

First, the work in question is original.

Second, either Rapid Systems is the author, or Rapid Systems' relationship with the author permits it to claim ownership of the work.

I will discuss in turn each of these two elements.

### 10.   The element of originality

Note: *If Section 15.1 of the Exclusive Distributorship Agreement applies to the Portfoliopad data model, then according to the contract this issue must be decided in Rapid Systems CC's favor with respect to the Portfoliopad data model, and the jury should be so instructed. The following instruction is solely if the Court denies Rapid Systems' pending Motion for Reconsideration.*

Agencypad and Portfoliopad each have their own source code. There is no dispute in this case that the source code is original. So you need not decide that.

Agencypad and Portfoliopad also use a data model, and Rapid Systems CC is claiming ownership of the data model. C.D.S. Inc. is disputing that the data model is original. So you will have to decide whether the data model meets the originality requirement. Because the United States Copyright Office has issued registrations to Rapid Systems CC, you should presume the data model is original unless C.D.S. Inc. establishes otherwise.[35]

---

[34] Source: Adapted from 3B O'Malley et al., *supra*, § 160:22.

[35] *Corsearch, Inc. v. Thomson & Thomson*, 792 F. Supp. 305, 321-322, (S.D.N.Y. 1992) (citing 17 U.S.C. § 410(c) and holding: "The United States Copyright Office has issued a Certificate of

"Original" means only that the author independently created the work (as opposed to copied from other works), and the work possesses at least some minimal degree of creativity.

Rapid Systems CC is not claiming a copyright in the client data that has been entered in the database. Rather, Rapid Systems CC is claiming a copyright in the overall selection, coordination, and arrangements of the fields and entities in its data model, and the relations among the data model tables. That overall structure is original, according to Rapid Systems CC.

To determine whether the data model meets the originality requirement, you should consider the total number of options that the data model's authors had regarding the tables, fields and relationships they wrote in the model. If there were multiple ways to order and process the data, and the data model authors, by selecting a particular way, had to transcend the obvious, and were not forced by the nature of the data or by the nature of the fashion modeling industry or by practices that are ubiquitous in the programming industry to choose one particular way of structuring the data model, then you should find that the data model meets the originality requirement.[36]

### 11. Authorship of the original work: The case of Portfoliopad

Regarding the Portfoliopad software application, the Exclusive Distributorship Agreement bars any challenge to Rapid Systems' ownership of the Portfoliopad source code.

---

Copyright Registration . . . for [defendant's] . . . database. This certificate gives rise to a legal presumption that the . . . database is copyrightable."); see also *eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04 Civ. 4051, 2005 WL 2977569, at *14 (S.D.N.Y. Nov. 3, 2005) ("[C]opyright registration confers a presumption of validity" unless other evidence rebuts the presumption.).

[36] Source: *eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04 Civ. 4051, 2005 WL 2977569, at *16-17 (S.D.N.Y. Nov. 3, 2005).

Note: *This jury instruction will be affected by the Court's disposition of the pending Motion for Reconsideration. If the EDA is applied as it is written, so that it encompasses Portfoliopad's data model tables, then the EDA also bars any challenge to Rapid Systems' ownership of those data model tables.*

As for the Portfolipad data model, Rapid Systems owns it either if it was created by an employee of Rapid Systems or if the creator assigned its rights to Rapid Systems. Here, Rapid Systems claims both: The data model was created by an employee for purposes of copyright, and moreover there is a written assignment between the creator and Rapid Systems. It is a belt-and-suspenders argument.

Note: *If South African law governs ownership of these data model tables, then the question is not whether Mr. Nagel was an employee, but rather whether he was under the control of Mr. Zetler when he performed his work.*[37]

### 12.  Authorship of the original work: The case of Agencypad

Regarding Agencypad, the parties dispute who owns the copyright.

There are at least five possibilities, and you will have to determine which of these possibilities is best supported by the evidence.

- One possibility is that Agencypad is unprotectable by copyright.

- Another possibility is that Agencypad's copyright is wholly owned by Rapid Systems.

- A third possibility is that Agencypad's copyright is owned both by Rapid Systems and by C.D.S. Inc. As I will explain later, this could be because

---

[37] Under South African copyright law, the author of a computer program is "the person who exercises control over the making of the computer program." *Haupt vs. Brewers Marketing Intelligence (Pty) Ltd.*, Case No. 118/05, Supreme Court of Appeal of South Africa (Mar. 29, 2006) ¶ 38 (ECF No. 136-12, at 92-113).

Rapid Systems and C.D.S. Inc. both were employers of Alex Gugnishev. Or

it could be because Agencypad is a joint work made by two coauthors: C.D.S.

Inc. was one coauthor and Rapid Systems was the other coauthor.

• The fourth possibility is that the copyright for some parts of Agencypad is

owned by C.D.S. Inc. and for other parts is owned by Rapid Systems CC.

• The fifth possibility is that Agencypad's copyright is wholly owned by

C.D.S. Inc.

I will explain to you how the law could lead you to one or another of these five

possibilities, depending on what you find the facts to be.

### 13. The first possibility: Agencypad is unprotectable if it is a derivative work that is entirely pervaded by Portfolipoad and it is not owned by Rapid Systems

I will first address the possibility that Agencypad is unprotectable by copyright.

This possibility arises because Rapid Systems claims that Agencypad is a derivative work based

on Portfoliopad.

A derivative work is a work based upon a preexisting work.[38] Rapid Systems

contends that Agencypad is based upon the Portfoliopad data model. If you find that Agencypad

is based on the Portfoliopad data model, then you should find that Agencypad is a derivative

work.

Sometimes, the parts of a derivative work that are new can be severed from the

preexisting work on which it is based. In other cases, however, the derivative work is pervaded

by the preexisting work. To give you an example: An English translation of Tolstoy's *War and

Peace* is entirely pervaded by the original Russian text. The translator's work cannot be severed

---

[38] 17 US.C. § 101.

23

and removed from what Tolstoy created. So this is an example of a derivative work that is pervaded by the preexisting work on which it is based.

If the preexisting work pervades the derivative work, then the derivative work is unprotectable beyond what the owner of the preexisting work consented to.[39] To return to our illustration, the English translation of *War and Peace* would be unprotectable by copyright if the owner of the Russian original did not consent to the translation. In this case, Rapid Systems asserts it never consented to any use of Portfoliopad beyond what is provided in the EDA.

Therefore, if you find (i) that Agencypad is a derivative work, and you find (ii) the new parts of Agencypad – the parts of Agencypad that are different than Portfoliopad – are not owned by Rapid Systems, and furthermore you find (iii) that those parts of Agencypad are pervaded by, or inextricable from, Portfoliopad, then you should conclude that Agencypad is unprotectable by copyright.

### 14. The second possibility: Agencypad's copyright is wholly owned by Rapid Systems

Now I will address the possibility that Agencypad's copyright is wholly owned by Rapid Systems.

Agencypad was created by more than person. You have seen four of them testify in this trial: Alex Gugnishev, Robert Nagel, Tiaan van Zyl, and Bradley Zetler. To determine whether Rapid Systems wholly owns Agencypad's copyright, you have to consider the relation

---

[39] *Nimmer on Copyright*, *supra*, § 3.06 (Copyright protection is denied "to derivative works in which the pre-existing work tends to pervade the entire derivative work."); *see also id.* § 3.07[B] ("[I]f consent to use the underlying material is limited in time, then the owner of the derivative work may not exploit the underlying material beyond that time limit," and consequently the owner will be unable to exploit the derivative work if "the new material is inextricably intermingled with the underlying material.").

that each of these persons – Mr. Gugnishev, Mr. Nagel, Mr. van Zyl and Mr. Zetler – has to Rapid Systems.

> a.   *Whether Rapid Systems CC owns Alex Gugnishev's Contributions*

Let's start with Mr. Gugnishev. The law provides that the initial owner of Mr. Gugnishev's self-standing, tangible contributions to Agencypad is the author of them. But because Mr. Gugnishev was an employee who made his contributions to Agencypad within the scope of his employment, the law says that the author of Mr. Gugnishev's contributions is not Mr. Gugnishev; rather, the author is his employer. So the initial owner of Mr. Gugnishev's self-standing, tangible contributions to Agencypad is Mr. Gugnishev's employer.

Rapid Systems contends that it was Alex Gugnishev's employer with respect to Mr. Gugnishev's original contributions to Agencypad. If you find that Rapid Systems was Mr. Gugnishev's employer, and was his only employer, with respect to Mr. Gugnishev's contributions to Agencypad, then you should conclude that Rapid Systems wholly owns Mr. Gugnishev's contributions to Agencypad.

> b.   *Whether Rapid Systems CC was Alex Gugnishev's employer within the meaning of the Copyright Act*

To decide whether two persons are in an employer-employee relationship, you must consider a number of factors, giving each factor the weight that is appropriate under the circumstances. In this case, there is no dispute that Mr. Gugnishev performed his work in his capacity as an employee. What is disputed is Rapid Systems CC's status as his employer. To decide whether Rapid Systems CC held the role of employer of Mr. Gugnishev for purposes of creating Agencypad or adding to the data model, you should consider the intention of the corporate person, C.D.S. Inc., and you should consider whether Rapid Systems had the right to control the manner and means of Agencypad's and the data model's creation.

25

Concerning C.D.S. Inc.'s intent, as I have already commented, you should take note that C.D.S. Inc. did not have a board of directors during the years that Agencypad was made. You must therefore decide which individual persons' intent comprised the corporation's intent.

In determining C.D.S. Inc.'s intent, you may also consider how C.D.S. Inc. viewed Mr. Gugnishev's original contributions to another computer program, namely, to the CDS6 software. It is CDS SARL's and Jerome Marechaux's position that Mr. Gugnishev's contributions to the CDS6 software belong to CDS SARL, not to C.D.S. Inc. The law provides that this could only be so if Mr. Gugnishev made his contributions to CDS6 as an employee of CDS SARL. If C.D.S. Inc. viewed Mr. Gugnishev as an employee of CDS SARL for certain purposes, then you may consider that in finding whether C.D.S. Inc. viewed Mr. Gugnishev as an employee of Rapid Systems for other purposes.

You may also consider C.D.S. Inc.'s failure to demand any compensation from Rapid Systems CC for Rapid Systems CC's sales of Agencypad in South Africa and in East Asia.

You may consider the contributions made to Agencypad by Rapid Systems – through Mr. Nagel, Mr. Zetler and other Rapid Systems employees, and whether Mr. Zetler would have allowed those investments if he did not understand Mr. Gugnishev to be working as a Rapid Systems employee.

And you may consider whether Agencypad is a derivative work based on Portfoliopad. If Agencypad is a derivative work based on Portfoliopad, then Rapid Systems CC's consent was required for Agencypad to be created. Rapid Systems CC contends that it would not have granted its consent for the creation of Agencypad if Agencypad would not be Rapid Systems CC's work.

26

Other factors that you may consider include the fact that C.D.S. Inc.'s other shareholder and manager besides Mr. Zetler – namely, Jerome Marechaux – secretly commissioned a new software application that would compete with Agencypad and would be owned by Mr. Marechaux's company CDS SARL rather than by C.D.S. Inc. Rapid Systems contends that if C.D.S. Inc. owned Agencypad, then Mr. Marechaux's conduct would be directly contrary to C.D.S. Inc.'s interests, therefore Mr. Marechaux's conduct demonstrates that Mr. Marechaux believed C.D.S. Inc. did not own Agencypad.

Besides considering C.D.S. Inc.'s intent, you must also consider, as I have mentioned, whether Rapid Systems had the right to control the manner and means of Agencypad's and the data model's creation. If you find that Mr. Gugnishev was under the immediate supervision and control of Rapid Systems for purposes of creating Agencypad, this would show that Mr. Gugnishev was acting as Rapid Systems' employee.[40]

> c.   *Whether Rapid Systems owns Mr. Nagel's, Mr. van Zyl's and Mr.*
>      *Zetler's contributions to Agencypad*

To decide that Rapid Systems wholly owns Agencypad, you next must find that Rapid Systems also owns the contributions to Agencypad of Bradley Zetler and of Rapid

---

[40] At common law, someone who receives his compensation from one person may nonetheless be the employee of another under the so-called "loaned-servant doctrine." *See Shenker v. Baltimore & Ohio R.R. Co.*, 374 U.S. 1, 5-6 (1963) (Under "the loaned-servant doctrine, . . . when the nominal employer furnishes a third party with men to do the work, and places them under [the third party's] exclusive control in the performance of it, then those men become pro hac vice the servants of [the third party] to whom they are furnished." (internal quotation and edit marks omitted)). The key factor in determining whether someone qualifies as a "loaned servant" is whether he has been placed under "immediate control and supervision" of another. *Id.* at 6; *accord Kelley v. S. Pac. Co.*, 419 U.S. 318, 330 & n.10 (1974). The loaned-servant doctrine is applicable in the copyright work-for-hire context. *See U.S. Vinyl Mfg. Corp. v. Colour & Design, Inc.*, 32 F. Supp. 3d 1253, 1262-1265 (N.D. Ga. 2013) (in copyright case, applying "borrowed servant" doctrine and denying summary judgment because of an issue of fact as to whether creator of a copyrighted work qualified as "borrowed servant" for work-for-hire purposes); *Favela v. Fritz Cos.*, No. 92-2450, 1992 WL 651875, at *5-6 (C.D. Cal. Sept. 20, 1993) (applying loaned-servant doctrine in copyright work-for-hire context).

Systems' developers in South Africa. In this case, there is no dispute between those persons and

Rapid Systems CC that Rapid Systems CC owns their contributions to Agencypad, so you should

make your finding in accordance with their understanding and according to the presumption

established by the copyright registration issued to Rapid Systems CC by the U.S. Copyright

Office.[41]

---

[41] If the Court rejects Rapid Systems' contention and agrees with the Marechaux Parties' position that the Marechaux Parties may challenge Rapid Systems' ownership of Rob Nagel's contributions, then Rapid Systems respectfully requests that the jury be instructed on the work-for-hire doctrine as follows:

> You should consider the following factors in determining whether Mr. Nagel was an employee of Rapid Systems CC for purposes of his contributions to Agencypad:
>
> (1) The skills required to create the work. The higher the skills required, the more likely the creator was an independent contractor rather than an employee.
>
> (2) The source of the tools or instruments used to create the work. The more the creator had to use his or her own tools or instruments, the more likely the creator was an independent contractor rather than an employee.
>
> (3) Applicability of employee benefits, like a pension plan or insurance. The more the creator is covered by the benefit plans Rapid Systems CC offers to other employees, the less likely Mr. Nagel was an independent contractor rather than an employee.
>
> (4) Whether Mr. Nagel had discretion over when and how long to work. The more Mr. Nagel can control his or her work times, the more likely he was an independent contractor rather than an employee.
>
> (5) Whether Rapid Systems CC has the right to assign additional projects to Mr. Nagel. The more Mr. Nagel could refuse to accept additional projects unless additional fees were paid, the more likely Mr. Nagel was an independent contractor rather than an employee.
>
> (6) Duration of the relationship between Mr. Nagel and Rapid Systems CC. The more Nr. Nagel worked on a project basis for

**15.  Whether Rapid Systems CC and C.D.S. Inc. were both employers of Alex Gugnishev within the meaning of the Copyright Act**

Now I will address the third possibility – that Agencypad is owned both by Rapid

Systems and by C.D.S. Inc. One way this could happen is if Mr. Gugnishev worked for more

---

Rapid Systems CC, the more likely he was an independent contractor rather than an employee.

(7)  The method of payment. The more Mr. Nagel usually works on a commission or one-time-fee basis, the more likely he was an independent contractor rather than an employee.

(8)  Whether M.r Nagel hired (or could have hired) and paid his own assistants. The more Mr. Nagel hires and pays for his own assistants, the more likely he was an independent contractor rather than an employee.

(9)  Whether Rapid Systems CC is a business. If Rapid Systems CC is not a business, it is more likely that Mr. Nagel was an independent contractor rather than an employee.

Source: Adapted from 3B Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions § 160:24 (6th ed. 2008).

Note: *If the Court grants Rapid Systems' pending Motion for Reconsideration, Rapid Systems requests that the Court charge the jury on South African law regarding ownership of contributions made in South Africa. In that event, Rapid Systems proposes that the Court charge the jury as follows:*

Because Mr. Gugnishev did his work in the United States, whereas Mr. Nagel and Mr. van Zyl did their work in South Africa, Mr. Gugnishev needs to have a different kind of relationship with Rapid Systems for Rapid Systems to own Mr. Gugnishev's self-standing, tangible contributions to Agencypad.

If Mr. Nagel's and Mr. van Zyl's self-standing, tangible contributions to Agencypad were made by them under the control of Mr. Zetler, then Rapid Systems owns the copyright to those contributions and to Mr. Zetler's contributions to Agencypad.

Source: *Haupt vs. Brewers Marketing Intelligence (Pty) Ltd.*, Case No. 118/05, Supreme Court of Appeal of South Africa (Mar. 29, 2006) ¶ 38 (ECF No. 136-12, at 92-113). Further, under South African law ownership passes through Mr. Zetler to Rapid Systems CC because Mr. Zetler was an employee of Rapid Systems CC.

29

than one employer when he made his original contributions to Agencypad and to the data

model.[42] He may have been employed both by C.D.S. Inc. and by Rapid Systems with respect to

his work on Agencypad. The same factors you considered when deciding whether Rapid Systems

was Mr. Gugnishev's sole employer with respect to Agencypad should be considered here. If you

find that Mr. Gugnishev was employed by both Rapid Systems and by C.D.S. Inc. with respect to

his contributions to Agencypad, then, you should still conclude that Rapid Systems is an owner

of the copyright for Mr. Gugnishev's contributions to Agencypad. But then Rapid Systems is not

the only owner: C.D.S. Inc. is an owner as well.

### 16.  Joint ownership[43]

There is another way that Agencypad could have two owners. You may also

decide that Agencypad is a "joint work." A joint work is a work that has been prepared by two or

more authors. Each of the authors of a joint work must have:

> i.   intended that his or her contributions be merged into inseparable or
>      interdependent parts of a unitary whole, and
>
> ii.  contributed material to the joint work.

Each of the authors of a joint work shares an undivided interest in the entire joint

work. The owner of a copyright in a joint work may enforce the right to exclude others from

copying the work.

If you find that Alex Gugnishev did not make his original contributions to

Agencypad as an employee of Rapid Systems CC, but rather as an employee of C.D.S. Inc., then

---

[42] *Cf. Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 134 (D.N.J. 2000) (citing cases).

[43] <u>Source</u>: Adapted from 3B O'Malley et al., *supra*, § 160:47; *see also 16 Casa Duse, LLC v. Merkin*, 791 F. 3d 247, 255 n.3 (2d Cir. 2015) (discussing meaning of the "independently copyrightable" condition stated in *Childress v. Taylor*, 945 F.2d 500 (2d Cir. 1991)).

you may still find that Agencypad is a joint work and that Rapid Systems CC is one of its authors. If Agencypad is a joint work, then the two coauthors, C.D.S. Inc. and Rapid Systems CC, both have rights to Agencypad.[44]

You have to find two things to find that Agencypad is a joint work. These are the two things:

(i)     First, you must find that Rapid Systems CC contributed material to Agencypad that it authored,[45] through personnel in Cape Town, South Africa, and

(ii)    secondly you must find that Rapid Systems CC and C.D.S. Inc. each intended their contributions to be merged into inseparable or interdependent parts of a unitary whole.

---

[44] "Joint authorship entitles the co-authors to equal undivided interests in the whole work – in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made." *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998).

[45] This wording deviates from the Second Circuit's standard formulation of the first prong of the test for coauthorship. According to the standard formulation, the test is whether "each of the putative co-authors . . . made independently copyrightable contributions to the work." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 252, 255 (2d Cir. 2015) (quoting *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998)). This formulation originally comes from *Childress v. Taylor*, 945 F.2d 500, 507-508 (2d Cir. 1991). But in *16 Casa Duse*, the Second Circuit noted:

> It seems likely that by 'copyrightable' the *Childress* court meant only to say that the coauthor's contribution must be the product of authorship, i.e., expression. The court did not mean that in order to be a coauthor one must be able to obtain a copyright on his or her separate contribution.

*16 Casa Duse*, 791 F.3d at 255 n.3 (internal quotation and edit marks omitted). Thus, even an intangible contribution that cannot be separated out from the entire work – for example, in *16 Casa Duse*, a movie director's contribution to raw film footage – is a contribution that meets this prong of the test for coauthorship.

31

If you make both of those findings, then you must find that Rapid Systems and C.D.S. Inc. are each a co-owner of Agencypad, each having an undivided interest in it.

When considering C.D.S. Inc.'s intent, recall that C.D.S. Inc. had no board of directors. You must decide, therefore, how to determine C.D.S. Inc.'s intent. In making a finding as to C.D.S. Inc.'s intent, you may consider Bradley Zetler's understanding of his business relationship with Mr. Marechaux.

### 17.   The fourth possibility: The copyright for some parts of Agencypad is owned by C.D.S. Inc. and for other parts is owned by Rapid Systems CC.

Now I will address the fourth possibility: that the copyright for some parts of Agencypad is owned by C.D.S. Inc. and for other parts is owned by Rapid Systems CC.

To come to this conclusion, you must find that Agencypad is not a joint work. You must also find that Alex Gugnishev contributed to Agencypad free-standing, tangible works that he created as an employee solely of C.D.S. Inc. And you must find Mr. Nagel and Mr. van Zyl contributed free-standing, tangible works to Agencypad to which Rapid Systems owns the copyright. If you make these findings, then you should find that C.D.S. Inc. owns the copyright to the parts of Agencypad that are free-standing, tangible works contributed by Alex Gugnishev and Rapid Systems owns the parts of Agencypad that are free-standing, tangible works contributed by Robert Nagel and Tiaan van Zyl.[46]

### 18.   The fifth possibility: Agencypad's copyright is wholly owned by C.D.S. Inc.

Finally, I will address the fifth possibility: that Agencypad's copyright is wholly owned by C.D.S. Inc. This is C.D.S. Inc.'s contention. To make this finding, you must first find that Agencypad is not a joint work. Next, you must find that the separate contributions to

---

[46] Alternatively, Rapid Systems requests that the Court charge the jury on whether Agencypad is a "collective work" within the meaning of a Copyright Act.

Agencypad made by Alex Gugnishev, Robert Nagel and Tiaan van Zyl are inextricable from one another. That is, none of these three developers made contributions to Agencypad that are, in themselves, free-standing, tangible works that can be isolated from the rest of Agencypad. Rapid Systems contends that, to the contrary, Rob Nagel and Tiaan van Zyl made contributions to Agencypad that are tangible, free-standing works that can be isolated from Alex Gugnishev's contributions to Agencypad. If, however, you find that Agencypad is not a joint work and you find that the contributions of each of the three developers is inextricable from the others' contributions, then you should find that either C.D.S. Inc. or Rapid Systems wholly owns the copyright to Agencypad, depending on which of them was the dominant author.

To determine which entity was the dominant author, you must consider all the facts. Among the factors you should consider are the following. First, whether C.D.S. Inc. or Rapid Systems had decisionmaking authority over the creation of Agencypad. Having decisionmaking authority is an indication of being the dominant author. Secondly, whether C.D.S. Inc. and Rapid Systems publicly credited itself or credited the other as the owner of Agencypad. Being publicly credited as the owner is an indication of being the dominant author. Thirdly, whether C.D.S. Inc. or Rapid Systems entered agreements with third parties as if it was the owner of the work. Entering agreements like that is another indication of being the dominant author.[47]

C.D.S. Inc. contends that the data model is a separate work from the Portfoliopad or the Agencpad source code. If you find that the data model is a separate work, then you should separately consider who the dominant author of the data model is. In that event, you must decide

---

[47] *See 16 Casa Duse*, 791 F.3d at 260-261.

who is the dominant author of the entire data model that Portfoliopad, Castingpad and Agencypad use.

### 19.   Rapid Systems' Affirmative Defense of Equitable Estoppel

In the event that you conclude that Rapid Systems CC does not own Agencypad, then you must consider the whether C.D.S. Inc. is equitably estopped from claiming ownership of Agencypad in this case.

The word "estoppel" means barring or preventing someone from taking a position that is inconsistent with an earlier position where doing so would be unfair. In this case, Rapid Systems claims that C.D.S. Inc. should be estopped from asserting its ownership in Agencypad because of C.D.S. Inc. actions.

To prove that C.D.S. Inc. is estopped from asserting ownership of Agencypad, Rapid Systems must prove by a preponderance of the evidence, the following three things:

1.     C.D.S. Inc. through misleading words, conduct, or silence, led Rapid Systems and Mr. Zelter to reasonably infer that C.D.S. Inc. did not intend to assert that it was the owner of Agencypad;

2.     Rapid Systems and Mr. Zetler reasonably relied on C.D.S. Inc.'s conduct; and

3.     Due to C.D.S. Inc. conduct, Rapid Systems and Mr. Zelter will be materially harmed if C.D.S. Inc. is allowed to proceed with its claim of ownership of Agencypad.

In this case Rapid Systems claims that C.D.S. Inc. and Mr. Marechaux continuously represented to him that they were equal partners in a joint enterprise in order to induce Mr. Zetler to develop Agencypad. Mr. Zetler relied upon C.D.S. Inc. and Mr. Marechaux's conduct and would be materially harmed if C.D.S. Inc., after summarily "firing" him in 2016 was allowed to claim ownership of Agencypad.

34

It is important to remember, however, that the ultimate determination of whether an equitable estoppel should apply in this case is a question of fairness given all the facts and circumstances. While you may not find that equitable estoppel applies if the evidence does not establish each of the three elements noted above -- misleading communication, reliance on the communication, and significant harm -- you may find that even though all of the elements have been proved, an equitable estoppel should not apply, in fairness, given all the facts and circumstances in this case.

### 20.  Unauthorized copying

Rapid Systems contends that C.D.S. Inc. and CDS SARL have infringed Rapid Systems' copyright in Portfoliopad by making sales of "unbundled" Agencypad, because those sales include the sale of the parts of Portfoliopad that Agencypad needs in order to function. If you find that the CDS Companies have made sales of "unbundled" Agencypad and you find that those sales include the sale of parts of Portfoliopad, then you should find that the CDS companies have infringed Rapid Systems' copyright in Portfoliopad.

Rapid Systems also contends that the CDS Companies have infringed Rapid Systems' copyright in Portfoliopad by performing "bug fixes" and development work on core Portfoliopad data model tables after having procured the preliminary injunction in this case. If you find that the CDS Companies performed "bug fixes" or development work on core Portfoliopad data model tables following the entry of the preliminary injunction, then you should find that they have infringed Rapid Systems' copyright in Portfoliopad.

Rapid Systems further contends that the CDS Companies has infringed Rapid Systems' copyright in Agencypad. If you found that Rapid Systems is the sole owner of Agencypad's copyright or of the copyright for parts of Agencypad, then you should go on to consider whether the CDS Companies has copied Agencypad, or those parts of Agencypad,

35

without authorization. Rapid Systems contends that there are three ways in which they have copied Agencypad.

First, Rapid Systems contends that C.D.S. Inc. copied Agencypad without authorization in late April 2016, in connection with Diane Treat's request made to Alex Gugnishev for a copy of parts of Agencypad's source code to be delivered to her.

Secondly, Rapid Systems contends that C.D.S. Inc. and CDS SARL have copied Agencypad by performing "bug fixes" and development work on Agencypad source code and data model tables after having procured the preliminary injunction in this case. If you find that they performed "bug fixes" or development work on Agencypad source code or data model tables following the entry of the preliminary injunction, then you should find that they have infringed Rapid Systems' copyright in Agencypad.

Thirdly, Rapid Systems contends that the CDS Companies copied Agencypad by distributing it without Rapid Systems' consent. According to Rapid Systems, the CDS Companies had permission to distribute Agencypad only according to terms identical to those stated in the EDA.

### 21.  Calculation of damages[48]

If you find for Rapid Systems on its copyright infringement claim, you must determine Rapid Systems' damages. Rapid Systems seeks from each counterclaim defendant a statutory damage award, established by Congress for each work infringed. Its purpose is not only to compensate Rapid Systems for its losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

---

[48] <u>Source</u>: Ninth Circuit Manual of Model Civil Jury Instructions § 17.35.

The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed.

However, if you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

### 22.   Damages – willful infringement[49]

Infringement is considered willful if Rapid Systems proves that the defendant knew that its actions constituted infringement of Rapid Systems' copyright or acted with reckless disregard of Rapid Systems' copyright.

### D.   The Meaning of Indirect Copyright Infringement

Besides asserting claims for direct copyright infringement, Rapid Systems CC also asserts claims for indirect copyright infringement. These claims of indirect infringement are against Jerome Marechaux, Christelle Riot, Jerome Viollon, Christophe Racle, and Diane Treat. The indirect infringement claims assume the success of a claim for direct infringement against C.D.S. Inc. or CDS SARL. If you find that either C.D.S. Inc. or CDS SARL has infringed a copyright owned by Rapid Systems CC, then you should also consider whether these other counterclaim defendants have indirectly infringed the copyright. If you find any of these counterclaim defendants indirectly infringed one of Rapid Systems CC's copyright, you should consider the amount of damages to award against each of these counterclaim defendants in the same way you determined damages on the direct infringement claims against C.D.S. Inc. and CDS SARL.

---

[49] <u>Source</u>: Fed. Civil Jury Instructions of the Seventh Circuit § 12.8.4; *see also* Ninth Circuit Manual of Model Civil Jury Instructions § 17.37.

There are two ways to indirectly infringe a copyright. One is called contributory infringement; the other is called vicarious infringement. I am going to explain each to you. First I will tell you about contributory infringement.

### E.     Rapid Systems CC's Claim of Contributory Copyright Infringement[50]

A counterclaim defendant will be liable for contributory infringement if he or she should have known of C.D.S. Inc.'s or CDS SARL's infringing activity and he or she induced or materially contributed to the infringing activity. If you find that any of the counterclaim defendants actually knew of the infringing activity and could have taken simple measures to stop the infringing activity but failed to take such measures, then you should find that the counterclaim defendant materially contributed to the infringing activity and is liable for contributory infringement.

### F.     Rapid Systems CC's Claim of Vicarious Copyright Infringement[51]

Vicarious infringement is different than contributory infringement because it does not require the counterclaim defendant to have known of the infringing conduct. If any of the counterclaim defendants had a financial interest in the infringing activity of C.D.S. Inc. or CDS SARL, and the counterclaim defendant had the right and ability to supervise the infringing activity of C.D.S. Inc. or CDS SARL, then you should find that counterclaim defendant liable for vicarious infringement.

---

[50] <u>Source</u>: 3B Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions § 160:29 (6th ed. 2008); *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017); *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117-118 (2d Cir. 2010).

[51] <u>Source</u>: 3B Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions § 160:28 (6th ed. 2008).

### G.     C.D.S. Inc.'s Claim Regarding the Agencypad Trademark

C.D.S. Inc. claims that it owns the "Agencypad" trademark – that is, that it, rather than Rapid Systems, owns the right to use the word "Agencypad" to identify its product.

A manufacturer or merchant may obtain trademark rights through actual use of any word, name, symbol or device or any combination thereof, to identify and distinguish its goods.[52]

Here, Rapid Systems contends that Agencypad belongs to it, and that it has used the word "Agencypad," which is similar to words for other Rapid Systems products (such as "Portfoliopad" and "Castingpad") to identify and distinguish Agencypad. Rapid Systems contends that it has done this all throughout the world, including in South Africa, where the first sale of Agencypad was made, and including in the United States, where it sold Agencypad through C.D.S. Inc. as an exclusive distributor during the term of the EDA.

C.D.S. Inc. contends that Agencypad belongs to it and therefore its sales of Agencypad were not on behalf of Rapid Systems.

You should decide ownership of the trademark in accordance with your findings on ownership of the copyright for Agencypad.

### H.     Bradley Zetler's, Mainboard LLC's and Rapid Systems CC's Claim of Fraud[53]

Bradley Zetler, Mainboard LLC and Rapid Systems CC seek to recover damages that they claim were caused by a fraud committed by the counterclaim defendants Jerome Marechaux, Christelle Riot, Jerome Viollon, Christophe Racle, and the company CDS SARL. Specifically, Mr. Zetler claims that Mr. Marechaux defrauded him by hiding from him that a new

---

[52] Source: Adapted from 4 Sand et al., *supra*, Instruction 86A-7.

[53] Source: New York Pattern Jury Instruction – Civil 3:20.

booking software was being developed for CDS SARL's ownership – call this the "CDS Online

Project" – and, by hiding the CDS Online Project, Mr. Marechaux deceitfully induced Mr. Zetler

to continue working with Mr. Marechaux and with CDS SARL and C.D.S. Inc. under the name

"CDS Global." Likewise for each of the other counterclaim defendants against whom fraud is

asserted.

Mr. Marechaux and each of the other counterclaim defendants deny that they

committed fraud and contend that [ *state Marechaux's contention* ].

In order to recover for fraud against Mr. Marechaux, it must be proved by clear

and convincing evidence that (1) Mr. Marechaux failed to disclose that the CDS Online Project,

(2) Mr. Marechaux failed to disclose that because he believed that Mr. Zetler would not continue

to do business with C.D.S. Inc. and CDS SARL if Mr. Zetler knew, (3) in fact, Mr. Zetler would

not have continued to do business with C.D.S. Inc. or with CDS SARL if he had known of the

CDS Online Project, and (4) Mr. Zetler sustained damages by continuing to do business with

C.D.S. Inc. and CDS SARL while the CDS Online Project proceeded.

Clear and convincing evidence means evidence that satisfies you that there is a

high degree of probability that there was fraud as I have defined it for you. To decide for Mr.

Zetler by clear and convincing evidence, it is not enough to find that the evidence supporting his

claim more likely represents what actually happened than the evidence that is opposed to it. Mr.

Zetler must satisfy you that it is highly probably that what he claims is what actually happened.

If, upon all the evidence, you are satisfied that there is a high probability that

there was fraud, you must decide for Mr. Zetler. If you are not satisfied that there is such a high

probability, you must decide for Mr. Marechaux. The same analysis that I have just described

must be followed for each of the individual counterclaim defendants, Ms. Riot, Mr. Viollon and Mr. Racle.

In this case, it is not contested that Mr. Marechaux failed to disclose the CDS Online Project. Therefore you should proceed to decide whether Mr. Marechaux failed to disclose it because he believed that Mr. Zetler would not continue to do business with C.D.S. Inc. or CDS SARL if Mr. Zetler knew of it.

As for Ms. Riot and Messrs. Viollon and Racle, you will be asked to decide how long ago they knew of the CDS Online Project. If you decide that Ms. Riot or Mr. Viollon or Mr. Racle knew – as Mr. Marechaux knew – and yet failed to disclose it to Mr. Zetler, the next question you must decide for each is whether she or he failed to disclose that fact to Mr. Zetler because of a belief that Mr. Zetler would not continue to do business with C.D.S. Inc. or CDS SARL if Mr. Zetler knew of the project.

If you decide that Mr. Zetler would have continued to do business with C.D.S. Inc. and with CDS SARL even if he knew of the CDS Online Project, you need proceed no further on the claim of fraud. If you decide that Mr. Zetler would not have continued to do business with C.D.S. Inc. and with CDS SARL if he had known of the CDS Online Project, the next question you must decide is whether Mr. Zetler sustained damages as a result of his continuing to do business with C.D.S. Inc. and CDS SARL.

### I.     Bradley Zetler's, Mainboard LLC's and Rapid Systems CC's Claim of Aiding and Abetting Fraud[54]

In addition to the fraud claim against Mr. Marechaux, CDS SARL, and employees of CDS SARL, Mr. Zetler also asserts a claim against Ms. Treat and C.D.S. Inc. for aiding and abetting fraud. This claim presumes the success of the fraud claim. If you find any of the

---

[54] Source: New York Pattern Jury Instruction – Civil 3:20.

counterclaim defendants liable for fraud, you should consider whether Ms. Treat or C.D.S. Inc. are liable for aiding and abetting the fraud.

To determine Ms. Treat's or C.D.S. Inc.'s aiding and abetting liability, you must consider whether Ms. Treat or C.D.S. Inc. knew of the fraud, and whether either of them substantially assisted to advance the commission of the fraud. Substantial assistance exists where (a) the aiding and abetting party affirmatively assists, helps conceal, or, by virtue of failing to act when required to do so, enables the fraud to proceed and (b) the actions of the aiding and abetting party proximately cause the harm on which the primary liability is based.

**J.     Compensatory Damages for Fraud or Aiding and Abetting Fraud[55]**

If you decide that Mr. Zetler (or Rapid Systems CC or Mainboard LLC) did not sustain damages as a result of continuing to do business with C.D.S. Inc. and CDS SARL, you need proceed no further on the claim of fraud. If you decide that Mr. Zetler did sustain damages as a result, you must next decide the amount of the damages.

Bradley Zetler, Mainboard LLC and Rapid Systems CC seek both compensatory and punitive damages for fraud and for aiding and abetting fraud.

To calculate compensatory damages, you must decide the actual monetary loss sustained. You should consider the actual monetary amounts spent in reliance on the counterclaim defendants' fraud. The burden is on the counterclaim plaintiffs to prove a proper basis for damages, but uncertainty regarding the amount of damages does not preclude recovery where damages can be measured by some practical, just means. If you find this amount cannot be

---

[55] <u>Source</u>: New York Pattern Jury Instruction – Civil 3:20.

ascertained, then you should award a nominal amount as compensatory damages on the fraud or

aiding and abetting fraud claims.[56] A nominal amount would be $10,000.

### K.      Punitive Damages for Fraud or Aiding and Abetting Fraud[57]

If you should find that Mr. Zetler, Mainboard LLC or Rapid Systems CC has

proved by a preponderance of the evidence that he or it is entitled to a verdict for compensatory

damages for fraud, you may, but are not required to, award punitive damages as well.

Punitive damages may be awarded for conduct that represents a high degree of

immorality. The purpose of punitive damages is not to compensate but to punish for wanton and

reckless or malicious acts and thereby to discourage the counterclaim defendant and other people

or companies from acting in a similar way in the future.

An act is malicious if it is done deliberately, with knowledge of another's rights

and with the intent to interfere with those rights.

An act is wanton and reckless when it demonstrates conscious indifference and

utter disregard of its effect upon the rights of others.

If you find that the acts of the counterclaim defendants you are considering were

not wanton or reckless or malicious, you need proceed no further in your deliberations on this

issue. On the other hand, if you find that the acts of the counterclaim defendant you are

considering were wanton and reckless or malicious, you may award Rapid Systems punitive

damages.

In arriving at your decision as to the amount of punitive damages, you should

consider the nature and reprehensibility of what the counterclaim defendant you are considering

---

[56] <u>Source</u>: *Garnet v. Hudson Rent-a-Car*, 276 A.D.2d 524, 525 (N.Y. App. Div. 2d Dep't 2000).

[57] <u>Source</u>: *E.J. Brooks Co. v. Cambridge Sec. Seals*, No. 12-CV-2937, ECF No. 336 (S.D.N.Y. May 20, 2015) (appeal pending).

did. That would include the character of the wrongdoing, whether the conduct demonstrated an indifference to, or a reckless disregard of, the rights of others, whether the acts were done with an improper motive or vindictiveness, whether the act or acts constituted outrageous or oppressive intentional misconduct, how long the conduct went on, whether the defendant you are considering was aware of what harm the conduct caused or was likely to cause, any concealment or covering up of the wrongdoing, how often the defendant you are considering had committed similar acts of this type in the past and the actual and potential harm created by the counterclaim defendant you are considering, including the harm to individuals or entities other than Rapid Systems.

However, although you may consider the harm to individuals or entities other than Rapid Systems in determining the extent to which the conduct of the counterclaim defendant you are considering was reprehensible, you may not add a specific amount to your punitive damages award to punish him for the harm caused to others.

The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by Rapid Systems and to the compensatory damages you award to Rapid Systems.

The reprehensibility of the conduct of the counterclaim defendant you are considering is an important factor in deciding the amount of punitive damages that would be reasonable and proportionate in view of the harm suffered by Rapid Systems and the compensatory damages you have awarded Rapid Systems. You may also consider the financial condition of the defendant you are considering and the impact your punitive damages ward will have on that defendant.

Rapid Systems seeks punitive damages in the amount of $1,000,000.

44

L.       C.D.S. Inc.'s CFAA claim

I have now instructed you on the law as it relates to Rapid Systems' claims against C.D.S. Inc. and the counterclaim defendants. There remain two more sets of claims for you to consider. First, there are C.D.S. Inc.'s claims against Bradley Zetler. Secondly, there are the "derivative" claims: claims that Mr. Zetler asserts C.D.S. Inc. has against the other counterclaim defendants. I will instruct you on the law as it relates to these remaining claims. First I will instruct you on C.D.S. Inc.'s claims against Mr. Zetler.

C.D.S. Inc.'s first claim should be considered by you only if you found that that Agencypad's copyright is wholly owned by C.D.S. Inc. If you made that finding, then C.D.S. Inc. claims that Bradley Zetler violated a federal statute that prohibits unauthorized access to a computer. According to C.D.S. Inc., Mr. Zetler accessed without authorization the Amazon Web Services computer that houses Portfoliopad, houses Castingpad, houses the websites for modeling agencies to which Rapid Systems provides website services, and houses Agencypad. I will call this the "Amazon Computer." To establish this claim, C.D.S. Inc. must prove the following:

*First,* C.D.S. Inc. must prove that Bradley Zetler lacked permission to access the Amazon Computer but he anyway accessed it, or else he had permission to access only some information on the Amazon Computer but he accessed other information on the Amazon Computer that he did not have permission to access.[58]

---

[58] This is the Second Circuit's gloss on the CFAA's ambiguous language, "exceeds authorized access" and "without authorization. *See United States v. Valle*, 807 F.3d 508, 523-528 (2d Cir. 2015); *JBCHoldings NY, LLC v. Pakter*, 931 F.Supp.2d 514, 523 (S.D.N.Y. 2013) ("An employee acts "without authorization" when he accesses a computer without permission to do so; an employee "exceeds authorized access" when he has permission to access certain information on a computer, but accesses other information as to which he lacks permission.").

If C.D.S. Inc. has failed to prove that, then you should stop considering this claim and decide it in Mr. Zetler's favor. But if you do find that Mr. Zetler accessed the Amazon Computer without permission, or that he accessed information on the Amazon Computer that he did not have permission to access, then you should go on to consider, ***second,*** whether C.D.S. Inc. has proved one of the following:

(1) When Mr. Zetler accessed the Amazon Computer without permission, he obtained information and thereby directly caused C.D.S. Inc. to lose $5,000,[59] or

(2) When he accessed the Amazon Computer without permission he had an intent to deceive or cheat,[60] he was furthering that intent by accessing the computer, he obtained something of value, and he thereby directly caused C.D.S. Inc. to lose at least $5,000,[61] or

(3) When he accessed the Amazon Computer without permission, he recklessly impaired the integrity or availability of data, a program, information, or code on the Amazon Computer, and he thereby caused C.D.S. Inc. to lose at least $5,000,[62] or

(4) When he accessed the Amazon Computer without permission, he did both of the following: He impaired the integrity or availability of data, a program, information, or code on the Amazon Computer, and he thereby directly caused C.D.S. Inc. to lose at least $5,000.[63]

If, at the second step, you find that C.D.S. Inc. has proved one of those four things, then you may award C.D.S. Inc. damages. C.D.S. Inc. is limited in its recovery to damages it

---

[59] This is § 1030(a)(2)(C) of the CFAA.

[60] *See* Ninth Circuit Manual of Model Jury Instructions, Instruction 3.16 (Criminal) (defining "intent to defraud").

[61] This is § 1030(a)(4) of the CFAA.

[62] This is § 1030(a)(5)(B) of the CFAA.

[63] This is § 1030(a)(5)(C) of the CFAA.

incurred to remedy damage to the Amazon Computer. C.D.S. Inc. must prove the damages by a preponderance of the evidence, and it is for you to determine what damages, if any, have been proved. Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.[64]

But, under the Computer Fraud and Abuse Act, a plaintiff must commence a legal action within two years from when the alleged wrong took place, or from when the damage reasonably should have been discovered. This lawsuit was commenced on April 29, 2016. So the two-year window stretches back to April 29, 2014. If you find that C.D.S. Inc. has alleged conduct occurring before April 29, 2014, then you may not award any damages with respect to that conduct.[65]

### M.     C.D.S. Inc.'s Trade Secret Misappropriation Claim[66]

C.D.S. Inc. asserts a claim against Mr. Zetler and Mainboard LLC for trade secret misappropriation. C.D.S. Inc. does not seek damages in connection with this claim. You are being asked, however, to make a recommendation as to whether Mr. Zetler and Mainboard LLC have misappropriated a trade secret.

To establish its claims for trade secret misappropriation, C.D.S. Inc. must show two elements.

First C.D.S. Inc. must establish that it possessed a trade secret. A trade secret has been defined as consisting of any formula, pattern, device or compilation of information that is used in one's business and which gives the business an opportunity to obtain an advantage over

---

[64] 18 U.S.C. § 1030(g).

[65] 18 U.S.C. § 1030(g).

[66] Source: Adapted from *E.J. Brooks Co. v. Cambridge Sec. Seals*, No. 12-CV-2937, ECF No. 336 (S.D.N.Y. May 20, 2015) (appeal pending).

competitors who do not know or use it. The term "secret" has two related connotations: first, substantial exclusivity of knowledge of the formula, process, device or compilation of information; absolute secrecy is not required; and, second, employment of precautionary measures to preserve such exclusive knowledge by limiting legitimate access by others.

In determining whether C.D.S. Inc. proved that something was a trade secret it possessed, you may consider the following factors: first, the extent to which the information is known outside C.D.S. Inc.; second, the extent to which it is known by employees and others involved with C.D.S. Inc.; third, the extent of measures taken by C.D.S. Inc. to guard the secrecy of the information; fourth, the value of the information to C.D.S. Inc. and its competitors; fifth, the amount of effort or money expended by C.D.S. Inc. in developing the information; sixth, the ease or difficulty with which the information could be properly acquired or duplicated by others. The restriction against disclosure or use of such information by an employee arises out of the confidential nature of the employment and is not dependent upon an express contract provision.

Next, you should consider whether C.D.S. Inc. has also proved that Mr. Zetler misappropriated a C.D.S. Inc. trade secret: To decide this, you must determine whether C.D.S. Inc. or CDS SARL used the Rapid Systems CC trade secret in breach of an agreement, confidence or duty.

### N.   C.D.S. Inc.'s Conversion Claim[67]

C.D.S. Inc. asserts a claim of "conversion" against Mr. Zetler and Mainboard LLC. You will determine if this claim is established. If so, then I will determine the remedy. To make a finding that C.D.S. Inc. has established by a preponderance of the evidence that Mr. Zetler engaged in conversion, you must find that C.D.S. Inc. owns and has a right to property

---

[67] <u>Source</u>: *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (N.Y. App. Div. 1st Dep't 1995).

that is in the unauthorized possession of Mr. Zetler and that Mr. Zetler has acted to exclude

rights of C.D.S. Inc. You must decide whether C.D.S. Inc. has proved these elements by a

preponderance of the evidence.

      **O.**      **C.D.S. Inc.'s Unjust Enrichment/Constructive Trust Claim**

C.D.S. Inc. asserts a claim of "unjust enrichment" and "constructive trust" against

Mr. Zetler and Mainboard LLC. You will determine if this claim is established. If so, then I will

determine the remedy.

Unjust enrichment occurs when one person has obtained money or a benefit from

another person under such circumstances that, in fairness and good conscience, the money or

benefit should not be retained. In those circumstances, the law requires that person to repay,

return to or compensate the other person. You must decide whether C.D.S. Inc. has proved these

elements by a preponderance of the evidence.

      **P.**      **C.D.S. Inc.'s Fiduciary Duty Claims Against Bradley Zetler**[68]

C.D.S. Inc. claims that Mr. Zetler is liable for benefitting himself while he was

acting as President of C.D.S. Inc. by causing C.D.S. Inc. to pay certain expenses and charges. To

establish this claim, C.D.S. Inc. must show that the actions were not fair to C.D.S. Inc. It is your

responsibility to determine whether the payments were fair to C.D.S. Inc., based upon all the

facts bearing on Mr. Zetler's relation to C.D.S. Inc. and bearing on his actions.

---

[68] Delaware does not have a "faithless servant" doctrine, and therefore no instruction on C.D.S. Inc.'s eleventh claim should be given. If the Court does give an instruction on C.D.S. Inc.'s claim for relief styled "faithless servant," it should be included in the fiduciary duty instruction. To the extent that there is a "faithless servant" doctrine under Delaware law (and there is not), it should be applied as the Second Circuit stated in *Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006): it is a remedy for disloyal acts, to be applied on a transaction-by-transaction basis where the faithless servant was not salaried. *Id.* at 301 (discussing New York law).

Q.    **Various Affirmative Defenses Asserted by Rapid Systems**

1.    **Mr. Zetler's Affirmative Defense of Acquiescence**

C.D.S. Inc.'s claim for breach of fiduciary duty against Mr. Zetler will be barred if C.D.S. Inc. acquiesced in Mr. Zetler's acts that C.D.S. Inc. now claims were a breach of fiduciary duty. To find that C.D.S. Inc. acquiesced in the acts, you have to find the following.

First, you have to find that all information necessary for an assessment of C.D.S. Inc.'s rights was available to C.D.S. Inc. [69] Mr. Zetler claims that all the information was available because Jerome Viollon and Jerome Marechaux had access to all C.D.S. Inc.'s information and Mr. Viollon acted as C.D.S. Inc.'s bookkeeper.

Next, you have to find that C.D.S. Inc. did any one of the following: either (1) C.D.S. Inc. remained inactive for a considerable time after the acts of which it now complains, or (2) C.D.S. Inc. freely did what amounted to a recognition of the complained-of act, or (3) C.D.S. Inc. acted in a manner inconsistent with its repudiation of Mr. Zetler's acts, which led Mr. Zetler to believe the complained-of acts had been approved. [70]

I remind you that C.D.S. Inc. had no board of directors. For purposes of these claims, you should impute to C.D.S. Inc. knowledge of information that was available to Mr. Marechaux and his agents, such as Mr. Viollon. You should also impute to C.D.S. Inc. the actions of Mr. Marechaux and his agents.

---

[69]  *Cf. In re Lehman Bros. Holdings Inc. v. Spanish Broad. Sys.*, Civ. Action No. 8321-VCG, 2014 WL 718430, at *10 (Del. Ch. Feb. 25, 2014) ("[W]here all information necessary for the Plaintiffs' assessment of their rights was contained in publically-available documents and disclosures, and where the crucial fact . . . is uniquely within the interest of the Plaintiffs . . . the Plaintiffs' knowledge of the circumstances affecting their rights . . . must be imputed to them.").

[70] *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014).

If you find that C.D.S. Inc. acquiesced in the acts it now claims were a breach of fiduciary duty, then you must find in Mr. Zetler's favor on these claims.

### 2.    Mr. Zetler's Affirmative Defense of Ratification

C.D.S. Inc. cannot complain that Mr. Zetler took an act without authority if C.D.S. Inc. ratified the act. Since C.D.S. Inc. had no board of directors, you may consider the knowledge and actions of Mr. Marechaux and his agents to determine whether C.D.S. Inc. ratified Mr. Zetler's acts. You should find that Mr. Zetler's acts were ratified by Mr. Marechaux or his agents if they indicated consent to Mr. Zetler's acts. You should determine from the context whether certain actions, or certain inaction, by Mr. Marechaux or his agents indicated consent.[71]

If you find that Mr. Zetler's acts were ratified, then you must find in Mr. Zetler's favor on these claims.

### 3.    Mr. Zetler's Affirmative Defense of Participation

C.D.S. Inc. cannot complain about acts of Mr. Zetler's in which C.D.S. Inc. actively participated. Here, once again, you may consider the participation of Mr. Marechaux or Mr. Marechaux's agents in an act as the participation of C.D.S. Inc.

If you find that Mr. Marechaux or his agents participated in the acts of which C.D.S. Inc. now complains, then you should find in Mr. Zetler's favor on these claims.

### 4.    Rapid Systems' Affirmative Defense of Waiver

To prevail on an affirmative defense of waiver, Mr. Zetler must prove by a preponderance of the evidence that C.D.S. Inc. (i) had full knowledge of the actions of Mr. Zetler that it now complains of in this lawsuit; and (ii) remained inactive for a considerable time or

---

[71] *See generally Lewis v. Vogelstein*, 699 A.2d 327, 334-336 (Del. Ch. Mar. 11, 1997).

freely gave recognition of the act and conducted itself in a manner inconsistent with any

subsequent repudiation of the act, thereby leading Mr. Zetler to believe that the act had been

approved.

It is Mr. Zetler's position that C.D.S. Inc. was fully aware of the financial

transactions and vendor arrangements that he made while serving as President of C.D.S. Inc. and

that these transactions continued for a considerable amount of time without objection by C.D.S.

Inc. that he believed that all such payments and arrangements had been approved by C.D.S. Inc.

If you find that Rapid Systems and Mr. Zetler have proven each of the above two

elements of their waiver defense, then you will find that C.D.S. Inc.'s claims for unjust

enrichment, conversion and breach of fiduciary duty are barred by the doctrine of waiver.  If you

find by a preponderance of evidence that Mr. Zelter has not proven each of these elements, then

you will find that C.D.S. Inc.'s claims are not barred by the doctrine of waiver.

### 5.   Rapid Systems' Affirmative Defense of Unclean Hands

Rapid Systems has asserted an affirmative defense of unclean hands to the claims

asserted by C.D.S. Inc. Under the doctrine of unclean hands, C.D.S. Inc. may be barred from

recovering on its claims if it acted inequitably, unfairly, or deceitfully towards Rapid Systems in

a way that has immediate and necessary relation to the relief that C.D.S. Inc. seeks in this lawsuit.

This is referred to as "unclean hands," and it is a defense that Rapid Systems contends precludes

any recovery by C.D.S. Inc. in this lawsuit. There is no set formula for determining whether

unclean hands applies in this lawsuit. Rather, you must consider and weigh all the facts and

circumstances in view of the principles noted above to determine whether you believe that, on

balance, C.D.S. Inc. acted in such an unconscionable way towards Mr. Zetler in the matters

relating to the controversy between C.D.S. Inc. and Rapid Systems that, in fairness, C.D.S. Inc.

should be denied the relief it seeks in this lawsuit. In order to prove unclean hands, Rapid

Systems must prove the following three things: (1) C.D.S Inc.'s conduct was inequitable or in bad faith; (2) C.D.S Inc.'s conduct is directly related to the subject matter of its claims; and (3) Rapid Systems has clean hands, or in other words, Rapid Systems' conduct was in good faith. If you find that Rapid Systems has proven that C.D.S. Inc.  has come into court with "unclean hands," and that its "unclean hands" are related to the case at hand, you may deny C.D.S. Inc. relief on its claims.

### 6.    Affirmative Defense: Laches

Rapid Systems and Mr. Zetler contend that C.D.S. Inc. is not entitled to recover damages for acts that occurred before it filed a lawsuit because: (1) C.D.S Inc delayed brining this the lawsuit for the acts complained of in for an unreasonably long and inexcusable period of time, and (2) Rapid Systems and Mr. Zetler have been or will be prejudiced in a significant way due to C.D.S. Inc.s delay in filing the lawsuit. This is referred to as laches. Rapid Systems and Mr. Zetler must prove delay and prejudice by a preponderance of the evidence.

Whether C.D.S. Inc.'s delay in asserting the claims in this lawsuit was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches.

Facts and circumstances that can justify a long delay can include:

(1)        being involved in other litigation during the period of delay;

(2)        being involved in negotiations with Rapid Systems during the period of delay;

(3)        poverty or illness during the period of delay;

(4)        wartime conditions during the period of delay;

(5)        being involved in a dispute about ownership of the patent during the period of delay; or

(6)        minimal amounts of allegedly infringing activity by Rapid Systems during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if Rapid Systems and Mr. Zelter suffered material prejudice as a result of the delay. Prejudice to Rapid Systems can be evidentiary or economic. Whether Rapid Systems suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in Rapid Systems and Mr. Zetler not being able to present a full and fair defense on the merits to C.D.S. Inc.'s claims. Not being able to present a full and fair defense on the merits to a claim can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Economic prejudice is determined by whether or not Rapid Systems and Mr. Zetler changed their economic position in a significant way during the period of delay resulting in losses that could have avoided if sued earlier, and also whether Rapid Systems's and Mr. Zetler's losses as a result of that change in economic position likely would have been avoided if C.D.S. Inc. had asserted these claims sooner. In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is no evidence establishing each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice). You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.

### 7.   Statute of Limitations Defense: Breach of Fiduciary Duty

There is a three-year statute of limitations period for claims of breach of fiduciary duty.[72] I remind you that this action was commenced on April, 29, 2016. Going back three years from that date takes us to April 29, 2013. Therefore, any claims against Mr. Zetler for breach of fiduciary duty must be for actions taken by Mr. Zetler after April 29, 2013. If you find that C.D.S. Inc. has alleged conduct that occurred before April 29, 2013, you may not consider that conduct in connection with the breach of fiduciary duty claim against Mr. Zetler.

### 8.   Statute of Limitations: Conversion

You may not, however, find Mr. Zetler or Mainboard LLC liable for any alleged acts of conversion occurring prior to April 29, 2013.

### 9.   Statute of Limitations: Unjust Enrichment/Constructive Trust[73]

You may not find Mr. Zetler or Mainboard LLC were "unjustly enriched" by any conduct occurring prior to April 29, 2013.

### 10.   Statute of Limitations: Trade Secret Misappropriation

You may not find Mr. Zetler or Mainboard LLC are liable for trade secret misappropriation in connection with any conduct occurring prior to April 29, 2013.

### R.   Damages Against Mr. Zetler for Breach of Fiduciary Duty

If you found that any of the transactions occurring after April 29, 2013, were not fair to C.D.S. Inc., and, for each such transaction, having considered whether Mr. Marechaux acquiesced in the transaction or ratified the transaction or participated in the transaction, you did not find acquiescence or ratification or participation, nor did you find any of the other affirmative

---

[72] *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007); *see also Barbara v. MarineMax, Inc.*, No. 12-CV-0368, 2012 WL 6025604, at *9 (E.D.N.Y. 2012) (applying Delaware limitations period).

[73] <u>Source</u>: *Blumenstyk v. Singer*, 2015 WL 8488818, at *2 (N.Y. Sup. Ct. Dec. 8, 2015).

defenses established, then you should consider the amount of damages to award against Mr. Zetler. You should make a reasonable estimate of the amount of profit that Mr. Zetler gained from the specific transaction.

**S.**    **Nature of Derivative Claims**

In this case, there are several claims asserted derivatively by Bradley Zetler as a shareholder of C.D.S. Inc. This means that the claim is C.D.S. Inc.'s claim. It is being pursued for C.D.S. Inc.'s benefit by a C.D.S. Inc. shareholder instead of by C.D.S. Inc. itself. The shareholder, Bradley Zetler, is pursuing the claim for C.D.S. Inc. because he alleges that C.D.S. Inc.'s directors have a conflict of interest preventing them from making C.D.S. Inc. itself pursue the claim.

If you decide against the counterclaim defendant on any of these derivative claims brought by Mr. Zetler, then you will be deciding in favor of C.D.S. Inc. Because the claim is on behalf of C.D.S. Inc., the monetary judgment against the counterclaim defendants, if there is any, will be a judgment in favor of C.D.S. Inc.: that is, the judgment would be payable to C.D.S. Inc.

**T.**    **Instruction on Pleading in the Alternative**

Certain claims asserted derivatively by Bradley Zetler as a C.D.S. Inc. shareholder are pleaded "in the alternative" to the copyright infringement claim described above. Specifically, as you will see when I instruct you on them, the claims that are pleaded in the alternative are to be considered only if you decide that C.D.S. Inc. is an owner of Agencypad.

U.    **Bradley Zetler's Derivative Claims on behalf of C.D.S. Inc. for Unjust Enrichment (Ninth and Eleventh Counterclaims)[74]**

Mr. Zetler claims, on C.D.S. Inc.'s behalf, that CDS SARL has been unjustly enriched at C.D.S. Inc.'s expense. There are two bases for C.D.S. Inc.'s unjust enrichment claim against CDS SARL. One unjust enrichment claim is that CDS SARL has been unjustly enriched by selling the CDS6 software without compensating C.D.S. Inc. The other unjust enrichment claim is that CDS SARL has been unjustly enriched by selling Agencypad without compensating C.D.S. Inc. These are two separate unjust enrichment claims. You must decide each one separately.

Unjust enrichment occurs when one person has obtained money or a benefit from another person under such circumstances that, in fairness and good conscience, the money or benefit should not be retained. In those circumstances, the law requires that person to repay, return to or compensate the other person.

Consider the unjust enrichment claim relating to the CDS6 software. Mr. Zetler contends that the very arguments advanced by C.D.S. Inc. to support C.D.S. Inc.'s claim that it owns the Agencypad software are arguments that, when applied to the case of the CDS6 software, establish that C.D.S. Inc. owns parts of the CDS6 software made by Alex Gugnishev. Hence Mr. Zetler contends that this is a C.D.S. Inc. asset, and he contends that CDS SARL has been unjustly enriched by selling the CDS6 software. To establish this claim, you must find three things established by a preponderance of the evidence: first, CDS SARL, by selling the CDS6 software, received a benefit provided by C.D.S. Inc.; second, CDS SARL benefited from the selling the CDS6 software; third, under the principles of equity and good conscience, CDS

---

[74] Source: *E.J. Brooks Co. v. Cambridge Sec. Seals*, No. 12-CV-2937, ECF No. 336 (S.D.N.Y. May 20, 2015) (appeal pending); New York Pattern Jury Instructions – Civil 4:2.

SARL should not be permitted to retain the benefit. If all three of these elements are satisfied, you should find that CDS SARL was unjustly enriched by its sales of the CDS6 software and you should consider the amount of damages to award C.D.S. Inc.

Consider now the unjust enrichment claim relating to Agencypad. This claim is pleaded on behalf of C.D.S. Inc. in the alternative: It is an alternative to the claim that Rapid Systems CC owns Agencypad. You should consider this claim only if you decide that Rapid Systems CC does not own Agencypad. In that event, you must decide whether CDS SARL is liable to C.D.S. Inc. for unjust enrichment. To establish that claim, you must find: first, CDS SARL, by selling Agencypad, received a benefit provided by C.D.S. Inc.; second, CDS SARL benefited from selling Agencypad; third, under the principles of equity and good conscience, CDS SARL should not be permitted to retain the benefit.  If all three of these elements are satisfied, you should find that CDS SARL was unjustly enriched by its sales of Agencypad and you should consider the amount of damages to award C.D.S. Inc.

### V.      C.D.S. Inc.'s Damages for Unjust Enrichment

I will instruct you now on how to determine C.D.S. Inc.'s damages in the event that you find CDS SARL was unjustly enriched either by its sales of CDS6 or by its sales of Agencypad. Just as when I instructed you on damages earlier, the fact that I am giving you this instruction should not be considered as an indication of any view of mine as to whether CDS SARL was unjustly enriched.

If you find that CDS SARL was unjustly enriched either by its sales of CDS6 or by its sales of Agencypad, then in either case you should determine the amount that would have been a fair licensing price for CDS SARL to pay C.D.S. Inc. to license the relevant software

product. This amount should be the amount that you find C.D.S. Inc. and CDS SARL would have agreed to as a fair licensing price at the time that the sales began.[75]

### W.   Bradley Zetler's Derivative Claim for C.D.S. Inc. of Corporate Waste (Eighth and Tenth Counterclaims)

Mr. Zetler claims, on C.D.S. Inc.'s behalf, that C.D.S. Inc.'s directors, officers and controlling shareholder are liable to C.D.S. Inc. for wasting C.D.S. Inc.'s assets. There are two bases for C.D.S. Inc.'s claim of waste. One is that C.D.S. Inc.'s assets have been wasted in connection with CDS SARL's sales of the CDS6 software. The other is that C.D.S. Inc.'s assets have been wasted in connection with C.D.S. Inc.'s sales of Agencypad. These are two separate claims of corporate waste. You must decide each one separately.

A corporate director, officer or controlling shareholder is liable to the corporation for waste if he or she causes the corporation to enter a transaction which no person of ordinary sound business judgment would say was fair to the corporation.[76]

Consider the claim of waste relating to the CDS6 software. Mr. Zetler contends that the very arguments advanced by C.D.S. Inc. to support C.D.S. Inc.'s claim that it owns the Agencypad software are arguments that, when applied to the case of the CDS6 software, imply that C.D.S. Inc. owns parts of the CDS6 software made by Alex Gugnishev. Hence Mr. Zetler contends that this is a C.D.S. Inc. asset, and he contends that the individual counterclaim defendants are liable for wasting the asset. You must decide this claim of corporate waste for each of the individual counterclaim defendants. For each one, you must decide whether the counterclaim defendant caused C.D.S. Inc. to allow CDS SARL to sell the CDS6 software

---

[75] Source: *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 186 (S.D.N.Y. 2002).

[76] Source: *Kaufman v. Shoenberg*, 91 A.2d 786, 221 (Del. Ch. 1952); *see also Sample v. Morgan*, 914 A.2d 647, 699 (Del. Ch. 2007).

without C.D.S. Inc. obtaining anything in exchange that a person of ordinary sound business judgment would say was fair to C.D.S. Inc.

Consider now the unjust enrichment claim relating to Agencypad. This claim is pleaded on behalf of C.D.S. Inc. in the alternative: It is an alternative to the claim that Rapid Systems CC owns Agencypad. You should consider this claim only if you decide that Rapid Systems CC does not own Agencypad. In that event, you must decide this claim for corporate waste. Just like the other claim of waste, you must decide this claim for each of the individual counterclaim defendants. For each one, you must decide whether the counterclaim defendant caused C.D.S. Inc. to allow CDS SARL to sell Agencypad without C.D.S. Inc. obtaining anything in exchange that a person of ordinary sound business judgment would say was fair to C.D.S. Inc.

### X.   Bradley Zetler's Derivative Claims  for C.D.S. Inc. of Breach of Fiduciary Duty by Misappropriating a Business Opportunity

Mr. Zetler claims, derivatively on behalf of C.D.S. Inc., that C.D.S. Inc.'s directors, officer and controlling shareholder have misappropriated a business opportunity from C.D.S. Inc.

As members of C.D.S. Inc.'s board of directors, counterclaim defendants Viollon, Riot and Racle owe duties to C.D.S. Inc. to inform themselves of C.D.S. Inc.'s business and to exercise their judgment to promote C.D.S. Inc.'s interests even when C.D.S. Inc.'s interests conflict with their own personal interests.[77] Counterclaim defendant Treat, as an officer of C.D.S. Inc., owes the same duties to C.D.S. Inc.[78] As for counterclaim defendant Jerome Marechaux, he

---

[77] <u>Source</u>: *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001) ("The directors of Delaware corporations have a triad of primary fiduciary duties: due care, loyalty, and good faith.").

[78] <u>Source</u>: *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009) ("[T]he fiduciary duties of officers are the same as those of directors.").

is a shareholder, not a director or an officer of C.D.S. Inc., therefore the duties owed by him to C.D.S. Inc. depend on whether he is a "controlling shareholder." Whenever Mr. Marechaux exercises control over the actions of C.D.S. Inc., he assumes the same duties to C.D.S. Inc. that the board of directors and officers of C.D.S. Inc. owe it.[79]

Among the duties that a fiduciary owes to a corporation is the duty not to usurp corporate opportunities. Under this "doctrine of corporate opportunity," the individual counterclaim defendants cannot take a business opportunity away from C.D.S. Inc. for themselves. Mr. Zetler contends that, by initiating and supporting the CDS Online Project, each individual counterclaim defendant has taken a business opportunity away from C.D.S. Inc. for himself or herself.

To determine whether this claim has been established against any individual counterclaim defendant, you must find, by a preponderance of the evidence, each of the following four elements: First, C.D.S. Inc. was financially able to exploit the opportunity presented by the CDS Online Project. Second, the opportunity presented by the CDS Online Project is within C.D.S. Inc.'s line of business. Third, C.D.S. Inc. had an interest or expectancy in the opportunity presented in the CDS Online Project. And, fourth, by taking the opportunity for his or her own, the individual counterclaim defendant was thereby placed in a position contrary to his or her duties to promote C.D.S. Inc.'s interests.[80] If you find each of those four

---

[79] Source: *See, e.g.*, *Cinerama, Inc. v. Technicolor Inc.*, 1991 WL 111134, at *19 (Del. Ch. June 24, 1991) ("[W]hen a shareholder, who achieves power through the ownership of stock, exercises that power by directing the actions of the corporation, he assumes the duties of care and loyalty of a director of the corporation."), *aff'd in part and rev'd on other grounds*, *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 372 (Del. 1993).

[80] Source: *Broz v. Cellular Information Sys., Inc.*, 673 A.2d 148, 154-55 (Del. 1996).

elements is satisfied with respect to any of the individual counterclaim defendants, you must find that counterclaim defendant liable to C.D.s. Inc. for misappropriating a business opportunity.

### Y.    Bradley Zetler's Derivative Claims for C.D.S. Inc. of Aiding and Abetting another's Breach of Fiduciary Duty by Misappropriating a Business Opportunity[81]

Mr. Zetler also asserts a claim on C.D.S. Inc.'s behalf of aiding and abetting a breach of fiduciary duty against C.D.S. Inc. This claim is asserted against CDS SARL, the three directors Christelle Riot, Jerome Viollon and Christophe Racle, and against Diane Treat. This claim presumes a breach of fiduciary duty by Jerome Marechaux. Only if you find that Jerome Marechaux breached his duty to C.D.S. Inc. by misappropriating a business opportunity, then you should determine whether these other counterclaim defendants aided and abetted the breach of fiduciary duty.

To find the claim for aiding and abetting has been established, you must find that the counterclaim defendant knowingly participated in the misappropriation of the business opportunity and that the participation proximately caused damages to C.D.S. Inc. Knowingly advocating or assisting the misappropriation of the business opportunity constitutes knowing participation.

### Z.    Bradley Zetler's Derivative Claim for C.D.S. Inc. of Breach of the Duty of Good Faith

Mr. Zetler claims, on C.D.S. Inc.'s behalf, that C.D.S. Inc.'s board of directors and Ms. Treat, as C.D.S. Inc.'s President, are liable to C.D.S. Inc. for breaching the duty of good faith that they owe to C.D.S. Inc. A corporate director or officer breaches his or her duty of good faith to the corporation if he or she consciously disregards her responsibility to the corporation. By deliberately failing to act in the face of a duty to act, he or she breaches her duty of good

---

[81] Source: *In re Del Monte Foods Co. Shareholders Litig.*, 25 A.3d 813, 836 (Del. Ch. 2011).

faith.[82] Mr. Zetler claims that, by deliberately promoting CDS SARL's interests at the expense of

C.D.S. Inc.'s interests, the board of directors and President of C.D.S. Inc. have breached their

duty of good faith to C.D.S. Inc.

### AA.   C.D.S. Inc.'s Damages for Corporate Waste, for Misappropriation of a Business Opportunity, or for Breach of the Duty of Good Faith

If you find any counterclaim defendant liable to C.D.S. Inc. for corporate waste,

for misappropriating a business opportunity or aiding and abetting the misappropriation or for

breaching his or her duty of good faith, you must consider the amount of damages to award

C.D.S. Inc. against that counterclaim defendant. The law provides that a fiduciary, such as a

corporate director, officer or controlling shareholder, should not profit personally from his or her

breach of her duty.[83] In each instance, you should attempt to make a reasonable estimate of the

amount of profit the counterclaim defendant unlawfully gained. Uncertainties in awarding

damages are generally resolved against the wrongdoer.[84]

The law provides that where a typical damage award to remedy a breach of

fiduciary duty is unascertainable, the Court may award to the plaintiff or counterclaim plaintiff

the attorneys' fees that were incurred to bring the claim against the fiduciary. This is not a form

of punitive damages. Rather, the award of attorneys' fees would be to serve fairness and equity.

If you find that, for any of C.D.S. Inc.'s claims of waste, misappropriation of business

opportunity, or breach of the duty of good faith, you cannot ascertain the amount of a

counterclaim defendant's profits to be awarded to C.D.S. Inc., then you may make a finding that,

---

[82] Source: *In re Walt Disney Deriv. Litig.*, 906 A.2d 27, 62 (Del. 2006).

[83] Source: *Thorpe v. CERBCO, Inc.*, 676 A.2d 436, 445 (Del. 1996).

[84] Source: *Shocking Techs., Inc. v. Michael*, C.A. No. 7164-VCN, 2012 WL 4482838, at *12 (Del. Ch. Oct. 1, 2012).

as a matter of fairness and equity, a damages award against that counterclaim defendant should

be entered in the amount of the attorneys' fees incurred to bring the claim against that

counterclaim defendant. The Court will then consider whether and how much to award as

attorneys' fees.[85]


Dated: New York, New York
   January 12, 2018

           */s/ Ihsan Dogramaci*
           Ihsan Dogramaci
            e-mail: idogramaci@dklitigation.com
           DOGRAMACI KUSHNER LLP
           1120 Avenue of the Americas, 4th Floor
           New York, NY 10036
           tel: (212) 309-7580
           fax: (646) 568-3727

           *Counsel for Rapid Systems CC, Mainboard LLC*
           *(formerly named CDS LLC), and Bradley Zetler*

---

[85] <u>Source</u>: *William Penn P'ship v. Saliba*, 13 A.3d 749, 758-759 (Del. 2011).